# **EXHIBIT A**

## SUMMONS

Attorney(s) Pankaj Maknoor, Esq (Wiley Lavender, P.C.)

Office Address  216 Amboy Avenue

Town, State, Zip Code  Metuchen, New Jersey 08840

Telephone Number  (732) 494-6099

Attorney(s) for Plaintiff  Shree Ji Inc.

Shree Ji Inc.

Plaintiff(s)

vs.

Travelers Casualty Insurance Company of America

Defendant(s)

# Superior Court of New Jersey

Union      County

Law          Division

Docket No: UNN-L-3582-21

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

s/ Michelle M. Smith

Clerk of the Superior Court

DATED:  11/03/2021

Name of Defendant to Be Served:  Travelers Casualty Insurance Company of America

Address of Defendant to Be Served:  1 Tower Square, Hartford, CT 06183

WILEY LAVENDER, P.C.
LARRY A. LAVENDER, JR., ESQ. (039642002)
PANKAJ MAKNOOR, ESQ. (175292016)
216 AMBOY AVENUE
METUCHEN, NJ 08840
(732) 494-6099
larry@wileylavender.com/ pankaj@wileylavender.com
Attorney for Plaintiff, Shree Ji Inc.

| | |
|---|---|
| **SHREE JI INC.** | ) SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | ) UNION COUNTY |
| | ) LAW DIVISION |
| -vs- | ) |
| | ) CIVIL ACTION |
| **TRAVELERS CASUALTY** | ) DOCKET NO: UNN-L-3582-21 |
| **INSURANCE COMPANY OF** | ) |
| **AMERICA** | ) |
| Defendant | ) **FIRST AMENDED COMPLAINT** |
| | ) **AND JURY DEMAND** |

Plaintiff, Shree Ji Inc. ("Shree Ji"), by way of First Amended Complaint against

Travelers Casualty Insurance Company of America ("Travelers"), hereby says:

## INTRODUCTION

1. This is an action for declaratory relief, pursuant to <u>N.J.S.A.</u> 2A:16-50 to :16-62, for the purpose

   of determining an actual controversy between the parties regarding insurance coverage under

   a commercial general liability policy Travelers had issued to Shree Ji.

2. Shree Ji seeks such a declaration of coverage under the policy issued by Travelers with respect

   to certain claim(s) Shree Ji had submitted to Travelers for property damage and other losses

   incurred by Shree Ji during the policy period.

3. By failing to provide coverage for Shree Ji's claim(s), Travelers has not provided the coverage

   afforded to Shree Ji under the policy and thereby has breached the terms of said policy.

## PARTIES

4.  Shree Ji is a New Jersey corporation, with a place of business at 106-112 Watchung Avenue, Plainfield, New Jersey 07060. Shree Ji's primary business is the ownership and management of commercial and residential real estate properties in the State of New Jersey.

5.  Upon information and belief, Travelers's business address is 1 Tower Square, Hartford, Connecticut and it is licensed do business as an insurance company in the State of New Jersey.

6.  Travelers issued the relevant policy to Shree Ji in New Jersey under which Shree Ji seeks a declaration of coverage.

## JURISDICTION & VENUE

7.  This Court has jurisdiction over Travelers because it is either licensed or authorized to do business in New Jersey and provided insurance services and/or coverage for property and persons located in New Jersey and issued insurance policies in New Jersey including the policies issued to Shree Ji at issue herein.

8.  Venue is proper in Union County, pursuant to R. 4:3-2(a)(2) and (b), because the cause of action and the facts relevant to the cause of action occurred in Union County and because Shree Ji's primary place of business is located in Union County.

## FACTUAL BACKGROUND

**Building/Rental and History of Tenancy**

9.  Shree Ji is the owner of the commercial which included the property located at 106-112 Watchung Ave., Plainfield, NJ 07060 (the "Building").

10. The Building is a two story building compromised of multiple commercial rental units, one of which is addressed as 108 Watchung Ave., Plainfield, NJ 07060 ("108 Watchung").

11. On or about May 22, 1998, Shree Ji, as the landlord, and Plainfield Liquors, Inc. ("Plainfield Liquors") as tenant, entered into a written lease agreement and first addendum (known collectively as "Lease") whereby Plainfield Liquors agreed to lease 108 Watchung for use as a "retail liquor store" for a term of twenty (20) years commencing on June 1, 1998 and ending on May 1, 2018. <u>See</u> true and accurate copy of the Lease attached hereto as **Exhibit A**.

12. The Lease outlines the monthly rents and additional rents Plainfield Liquor was required to pay to Shree Ji. <u>See</u> ¶¶1, 14, 28, and 37 of Lease.

13. The Lease also states that Plainfield Liquor is responsible for paying any and all utilities assessed to the Rental Unit and is responsible for maintaining and repairing all electrical fixtures electrical system, plumbing fixtures in restrooms, heating and air conditioning systems on the premises. <u>See</u> ¶¶32 and 35 of Lease).

14. Lastly the Lease states that the following regarding alterations, additions and improvements:

> "No alterations, additions, or improvements shall be made, and no climate regulating, air conditioning, cooling, heating or sprinkler systems, television or radio antennas, heavy equipment, apparatus and fixtures, shall be installed in or attached to the leased premises, without the written consent of the Landlord. **Unless otherwise provided herein, all such alterations, additions, or improvements and systems, when made, installed in or attached to the said premises, shall belong to and become the property of the Landlord and shall be surrendered with the premises and as part thereof upon the expiration or sooner termination of this lease, without hinderance, molestation or injury."** <u>See</u> ¶4 of Lease (emphasis added).

15. Sometime in or around 2001, Shree Ji was notified that Plainfield Liquor was selling its assets to defendant/tenant, Watchung Liquors, Inc. ("Watchung Liquors") and that Watchung Liquors wished to continue operation of a retail liquor store in the Rental Unit.

16. After discussions between the interested parties, Shree Ji agreed to release Plainfield Liquor

from the Lease and agreed to assign the Lease to Watchung Liquors.

17. On June 6, 2001, Shree Ji's principal Harshad Shah and Watchung Liquors' principal, Anil Kumar ("Mr. Kumar") executed an addendum ("Assignment") outlining the terms of the assignment. See copy of "Assignment" attached hereto as **Exhibit B**.

18. On March 4, 2019, Shree Ji initiated a summary dispossess action against Watchung Liquors alleging nonpayment of rents. Said action was filed with the Special Civil Part-Landlord/Tenant Division of the Superior Court of New Jersey- Union County Vicinage and was assigned the following Docket No: UNN-LT-1786-19 ("L/T Action").

19. On or about April 5, 2019, Watchung Liquors, by and through its counsel, filed a motion to transfer the L/T Action to the Law Division for the Superior Court of New Jersey- Union County Vicinage ("Motion to Transfer").

20. On April 8, 2019, an Order was issued granting Watchung Liquors' Motion to Transfer, and as a result the L/T Action was transferred to the Law Division and assigned the following Docket No: UNN-L-1342-19) ("Law Div. Action").

21. On September 27, 2019, Shree Ji filed a Motion for Summary Judgment under the Law Division Action. After reviewing Shree Ji's initial motion, Watchung Liquors' opposition, Shree Ji's reply, and the oral arguments of the Parties' respective counsel, the Court on November 8, 2019, issued an Order granting the following relief ("Nov. 8th Order"):

    a. "Judgment for possession over 108 Watchung Ave., Plainfield, NJ 07060 ("Rental Unit") shall be awarded to Shree Ji Inc. effective January 1, 2020; Defendants shall make their November 2019 and December 2019 rent payments to [Shree Ji' counsel] Mr. Maknoor and said payments shall be held in his firm's trust account."

    b. "The rent payments currently on deposit with the Court shall be turned over to Pankaj Maknoor, Esq., counsel for plaintiff to be held in his firm's trust account

pending the resolution of this matter. Any withdrawal from the account must be made through an application to the court or by a submission of a consent order." See copy of the Nov. 8th Order attached hereto as **Exhibit C**

22. Based on the Nov. 8 Order, Watchung Liquors vacated the Rental Unit during the last week of December 2019 and relocated his liquor store business to 131 Park Avenue, Plainfield, New Jersey 07060 ("Park Ave. Location").

23. Unfortunately, once possession of the Rental Unit was returned to Shree Ji, it was discovered that Watchung Liquors had removed certain alterations, additions and improvements which were attached to and part of the Rental Unit. These items unlawfully removed by Watchung Liquors, include but are not limited to the walk-in cooler, security system, storage shelving, display cases, and outdoor signage.

24. Additionally, it was discovered by Shree Ji that Watchung Liquors had intentionally damaged various systems and areas of the Rental Unit during its move-out. These damaged systems included the Rental Unit's HVAC Unit and Electrical Systems, and these damaged areas include certain walls, doors, and portions of the ceiling.

25. On January 7, 2020 Shree Ji filed a complaint with the Plainfield Police Department for Watchung Liquors' theft and vandalism at the Rental Unit. See Police Report attached hereto **Exhibit D**.

**Travelers' Commercial General Liability Policy**

26. At all times relevant, Shree Ji and its principal Harshad Shah maintained a commercial general liability insurance policy for the Building and Rental Unit. For the period of December 15, 2019 to December 15, 2020, the commercial general liability insurance policy in place was issued by insurer Travelers and designated at Policy No. 680-0N725897-19-42 (the "Policy").

<u>See</u> copy of the Policy attached hereto as **<u>Exhibit E</u>**.

27. Under Section I (Coverages), subsection 1(a), of the Policy, it states that:

> "We [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies."

28. Under Section I (Coverages), subsection 1(b), of the Policy, it states that:

> "(b) This insurance applies to "bodily injury" and "property damage" only if:
>
> The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;
>
> The "bodily injury" or "property damage" occurs during the policy period;"

29. Under Section II (Who is an Insured) subsection 1(c) of the Policy, it states that:

> "If you are designated in the Declaration as:
>
> "A limited liability company [Shree Ji Inc.], you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers."

30. Under Section V (Definitions) subsection 22(a) of the Policy, the term "Property damage" means:

> "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it;"

31. Subject to certain terms and conditions, the Policy provides coverage in the event of arson and theft and "property damage." <u>See</u> Pg. 3 of 16 of Policy (MP T3 63 03 15).

32. On or about January 2, 2020, Shree Ji submitted a claim under the Policy for the losses arising from Watchung Liquors' breach of the Lease and Assignment; Watchung Liquors' unlawful removal/theft of certain alterations, additions and improvements attached to and part of the

Rental Unit; and the property damage Watchung Liquors intentionally caused to the Rental Unit. The claim was received and acknowledged by Travelers and assigned the following Claim Number: CFY4040001H ("Claim").

33. On or about February 14, 2020, Travelers completed its initial investigation of the Claim and issued an estimate of damages to Shree Ji which served as the basis for Traveler's determination of benefits. ("Travelers Feb. 14th Report") See copy of Travelers Feb. 14th Report attached hereto as **Exhibit F**.

34. According to the Feb. 14th Report, Travelers paid Shree Ji only $20,746.99 to cover damages to the Rental Unit occurring during Watchung Liquors' move, and provided Shree Ji the right to make a claim for to recover the temporarily withheld deprecation of $11,341.41 upon completion of repairs and proof that the amounts were incurred by you

35. A review of the Travelers Feb. 14th Report shows that Travelers decided that the Policy did not cover Shree Ji's Claim for any losses arising from Watchung Liquors' vandalism of the Rental Unit and Watchung Liquors' theft of the walk-in cooler, security system, storage shelving, display cases, and outdoor signage, which were all affixed to and part of the Rental Unit.

36. Based on Traveler's decision not to cover the aforementioned losses, Shree Ji appealed Travelers' position and requested that the Claim be revaluated and that the Rental Unit be reinspected. Pursuant to Shree Ji's request Travelers' retained the Recon Group, Inc. ("Recon") to conduct the re-inspection, which was done on January 22, 2020 and took no more than 2 hours.

37. On January 29, 2020, Recon issued a report of its findings ("Recon Jan. 29th Report") and in it were the following conclusions: (a) the damages to the Rental Unit were normal wear and tear

and not the result of vandalism by Watchung Liquors; and (b) the walk-in cooler, security system, storage shelving, display cases, and outdoor signage, where Watchung Liquors' personal property and not part of the Rental Unit. <u>See</u> copy of Recon's Jan. 29th Report attached hereto as **<u>Exhibit G</u>**.

38. Shree Ji disputes the conclusions in the Recon Jan. 29th Report and hired its own adjustor, Strategic Claims Consultants ("Strategic"), to inspect the Rental Unit and determine the true amount of Shree Ji's Claim. Strategic conducted its inspection on February 29, 2020 and issued an estimate of damages on April 14, 2020 ("Strategics' Apr. 14th Report"). According to Strategics' Apr. 14th Report, Shree Ji's covered losses arising from Watchung Liquors' move, vandalism, and theft total $206,756.80 after depreciation. <u>See</u> copy of Strategics' Apr. 14th Report is attached hereto as **<u>Exhibit H</u>**.

39. Travelers disputes the findings in Strategics' Apr. 14th Report and refuses to reverse its position on not covering the losses arising from Watchung Liquors' vandalism of the Rental Unit and Watchung Liquors' theft of the walk-in cooler, security system, storage shelving, display cases, and outdoor signage, which were all affixed to and part of the Rental Unit.

40. Shree Ji continued to supply Travelers with additional proofs and information in support of its Claim. After months of communications back and forth failed to yield an amicable resolution, Shree Ji filed a complaint against Travelers with State of the New Jersey's Office of the Insurance Ombudsman to escalate the matter.

41. The foregoing complaint compelled Travelers to conduct a more thorough on-site inspection of the Rental Unit on March 29, 2021; more than a year after the Claim was first submitted. This inspection was conducted by Recon and a report of its findings was issued on April 19,

2021 ("Recon Apr. 19th Report"). <u>See</u> copy of the Recon Apr. 19th Report attached hereto as **Exhibit I**.

42. Relying on the Recon Apr. 19th Report, Travelers' once again maintains the position not to cover the losses arising from Watchung Liquors' vandalism of the Rental Unit and Watchung Liquors' theft of the walk-in cooler, security system, storage shelving, display cases, and outdoor signage, which were all affixed to and part of the Rental Unit.

43. Travelers' claims that damage to the Rental Unit's electrical and HVAC systems were normal wear and tear and therefore not covered under the Policy. Travelers' takes this position despite the following facts:

    a. **Lease-** The Lease explicitly states that Watchung Liquors, must maintain and repair all electrical fixtures electrical system, plumbing fixtures in restrooms, heating and air conditioning systems on the premises. <u>See</u> ¶35 of Lease.

    b. **Electrical System-** Photos taken by Recon on March 29, 2021 show circuit breakers which had been broken, and wires which were disconnected. This constitutes vandalism. <u>See</u> Image 59 and 173 of Recon Apr. 19th Report; and Police Report.

    c. **HVAC-** An inspection of the HVAC system by Connect Plumbing & HVAC ("Connect"), revealed that Watchung Liquor had dismantled the system and attempted to the fix certain components of the duct tape, had caused irreparable damage to the ductwork, and tampered with the thermostats. These findings were provided in a quote from Connect dated April 22, 2021 ("Connect Quote") and sad quote was provided to Travelers. This constitutes vandalism. <u>See</u> copy of Connect Quote attached hereto as **Exhibit J**; and Police Report.

44. Travelers' claims that the walk-in cooler, security system, storage shelving and display cases, and outdoor signage, are not part of the Rental Unit despite the following undisputed facts:

    a. **Lease-** The Lease explicitly states that "alterations, additions, or improvements and systems, when made, installed in, or attached to the said premises, shall belong to and become the property of the Landlord and shall be surrendered with the premises…" <u>See</u> ¶4 of Lease.

    b. **Walk-in Cooler-** The walk-in cooler was purchased and installed inside the Rental Unit. The walk-in cooler was connected to the Rental Unit's electrically and plumbing systems, bolted to the floor, and had its compressor lines running throughout the Building. This walk-in cooler was removed by Watchung Liquors during the term of the Policy without Shree Ji's consent. This constitutes as theft under the Policy. See Pg.3, ¶1 of Recon Apr. 19th Report; Pg. 2 of Recon Jan. 29th Report; and Police Report.

    c. **Surveillance System-** The system included four motion sensors, a security alarm box, nine security cameras, one monitor and one recorded. The systems' components were mounted to the walls of the Rental Unit and its wiring ran throughout the Building before being removed by Watchung Liquors with Shree Ji's consent. This constitutes as theft under the Policy. See Pg. 4, ¶6 of Recon Apr. 19th Report.; Pg. 1 of Recon Jan. 29th Report; and Police Report.

    d. **Storage shelving and display cases-** These items were affixed to the floor and walls of the Rental Unit through screws and other hardware and were removed by Watchung Liquors during the term of the Policy without Shree Ji's consent. This constitutes as theft under the Policy. See Pg. 4, ¶3 of Recon Apr. 19th Report.; and Police Report.

    e. **Outdoor Signage-** The "Liquor Store" on the front of the Building was bolted into the exterior wall and it was removed by Watchung Liquors during the term of the Policy without Shree Ji's consent. This constitutes theft under the Policy.

45. Travelers' failure to compensate Shree Ji for certain covered losses set forth in the Claim, has caused Shree Ji to suffer significant harm.

## **COUNT I- DECLARATORY JUDGMENT**

46. Shree Ji incorporates by reference the foregoing paragraphs as if fully set forth herein.

47. Shree Ji requests that this Curt determine its rights under the Policy issued by Travelers.

48. A declaratory judgment determining Shree Ji's right to coverage under the Policy will ensure that Shree Ji will receive the coverage it paid for at the time it is needed. Shree Ji is suffering significant business losses and extra expenses as a result Travelers' refusal to failure to compensate Shree Ji for certain covered losses set forth in the Claim, and coverage is vital to Plaintiff's ability to continue as a business.

**WHEREFORE**, Shree Ji respectfully demands judgment in its favor and against Travelers as follows:

a.  Declaring that Travelers' is obligated to provide coverage to Shree Ji for vandalism caused to the Rental Unit's electrical and HVAV systems;

b.  Declaring that Travelers' is obligated to provide coverage to Shree Ji for the theft of the walk-in cooler, security system, storage shelving, display cases, and outdoor signage, which were all affixed to and part of the Rental Unit;

c.  Awarding Shree damages, together with interest, attorney's fees and costs of suit; and

d.  For such other and further relief as the Court deems just and proper.

## COUNT II- BREACH OF CONTRACT

49. Shree Ji repeats and realleges the allegations contained in the preceding  paragraphs as if set forth at length herein.

50. The Policy Travelers issued to Shree Ji constitutes a contract pursuant to which Travelers agreed  to  provide insurance coverage for certain covered losses arising during the Policy's term.

51. Based on the aforementioned conduct, Travelers has breached the terms of the contract by refusing to compensate Shree Ji for certain covered losses set forth in the Claim.

52. As a result of the aforementioned breach, Shree Ji has suffered significant damages.

**WHEREFORE**, Shree Ji demands judgment in its favor and against Travelers for damages, together with interest, attorney's fees, costs of suit, and  such other relief as the Court deems just and proper.

## COUNT III- BAD FAITH

53. Shree Ji repeats and realleges the allegations contained in the preceding paragraphs as if set forth at length herein.

54. Travelers has acted in bad faith by breaching it fiduciary responsibility its insured, by denying Shree Ji coverage for certain losses which are clearly covered by the Policy.

55. Travelers has failed to resolve the Claim in a timely and fair basis to the detriment of its insured, Shree Ji.

56. Due to Travelers' bad faith conduct, Shree Ji has spent significant time and incurred significant legal fees and costs to enforce its rights as the insured under the Policy.

**WHEREFORE**, Shree Ji demands judgment in its favor and against Travelers for compensatory, consequential and punitive damages, together with interest, attorney's fees, costs of suit, and such other relief as the Court deems just and proper.

WILEY LAVENDER, P.C.
Attorneys for Plaintiff

Dated: November 1, 2021                    s/ *Pankaj Maknoor*
                                            PANKAJ MAKNOOR, ESQ.

## DESIGNATION OF TRIAL COUNSEL

Pankaj Maknoor, Esq., from the law firm of Wiley Lavender, P.C. is hereby designated trial counsel for Shree Ji Inc., the plaintiffs in the controversy at bar.

## CERTIFICATION

Pursuant to R. 4:5-1(b)(2), the matter in controversy is related to the following action: Shree Ji Inc. v. Watchung Liquors, Inc. Docket No: UNN-L-1342-19. Other than said action, the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief.  Also, to the best of our knowledge or belief, no other action or arbitration is contemplated. Furthermore, other than the parties set forth in this pleading, we know of no other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

WILEY LAVENDER, P.C.
Attorneys for Plaintiff

Dated: November 1, 2021                s/ *Pankaj Maknoor*
                                       PANKAJ MAKNOOR, ESQ.

# Exhibit A

258 LEASE FOR BUSINESS PREMISES
(Not OR CORP.) (Revised 7/90)
(Not for Residential Use - N.J.S.A.   2-1; 46:8-48)
One Commerce Drive, Cranford, N.J. 07016

# This Lease Agreement, *made the* *day of* *19* ,

### Between

**Landlord**

SHREE JI INC.

*residing or located at* 106 - 112 Watchung Avenue, Plainfield, N.J. 07060
*in the* City *of* Plainfield *in the County of*
Union *and State of* New Jersey , *herein designated as the Landlord,*
**And**

**Tenant**

PLAINFIELD LIQUORS, INC. .

*residing or located at* 62 D Dayton Drive, Edison, N.J. 08820
*in the* City *of* Edison *in the County of*
Middlesex *and State of* New Jersey , *herein designated as the Tenant;*
**Witnesseth that,** *the Landlord does hereby lease to the Tenant and the Tenant does hereby rent from the Landlord, the following described premises:*

**Premises**

Approximately 5000 square feet at 108 Watchung Avenue, Plainfield, N.J.
Rear room is excluded

**Term**

*for a term of* 20 years
*commencing on* 1st June 19 98 , *and ending on* May 1st, 2018 XX ,
*to be used and occupied only and for no other purpose than*

**Use**

LIQUOR STORE

### Upon the following Conditions and Covenants:

*1st:   The Tenant covenants and agrees to pay to the Landlord, as rent for and during the term hereof, the sum of*
**$ 660,000.00 SIX HUNDRED SIXTY SIX THOUSAND AND 00/100** *in the following manner:*

**Payment of Rent**

1st   Through 24th   month the monthly rent shall be $2500.00
25th   Through 60th   month the monthly rent shall be $2600.00
61st   Through 121th   month the monthly rent shall be $2700.00
122th   Through 181th   month the monthly rent shall be $2850.00
182th   Through 240th   month the monthly rent shall be $3000.00

**Repairs and Care**

*2nd:   The Tenant has examined the premises and has entered into this lease without any representation on the part of the Landlord as to the condition thereof. The Tenant shall take good care of the premises and shall at the Tenant's own cost and expense, make all repairs, including painting and decorating, and shall maintain the premises in good condition and state of repair, and at the end or other expiration of the term hereof, shall deliver up the rented premises in good order and condition, wear and tear from a reasonable use thereof, and damage by the elements not resulting from the neglect or fault of the Tenant, excepted. The Tenant shall neither encumber nor obstruct the sidewalks, driveways, yards, entrances, hallways and stairs, but shall keep and maintain the same in a clean condition, free from debris, trash, refuse, snow and ice.*

**Glass, etc. Damage Repairs**

*3rd:   In case of the destruction of or any damage to the glass in the leased premises, or the destruction of or damage of any kind whatsoever to the said premises, caused by the carelessness, negligence or improper conduct on the part of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors, the Tenant shall repair the said damage or replace or restore any destroyed parts of the premises, as speedily as possible, at the Tenant's own cost and expense.*

**Alterations Improvements**

*4th:   No alterations, additions or improvements shall be made, and no climate regulating, air conditioning, cooling, heating or sprinkler systems, television or radio antennas, heavy equipment, apparatus and fixtures, shall be installed in or attached to the leased premises, without the written consent of the Landlord. Unless otherwise provided herein, all such alterations, additions or improvements and systems, when made, installed in or attached to the said premises, shall belong to and become the property of the Landlord and shall be surrendered with the premises and as part thereof upon the expiration or sooner termination of this lease, without hindrance, molestation or injury.*

**Signs**

*5th:   The Tenant shall not place nor allow to be placed any signs of any kind whatsoever, upon, in or about the said premises or any part thereof, except of a design and structure and in or at such places as may be indicated and consented to by the Landlord in writing. In case the Landlord or the Landlord's agents, employees or representatives shall deem it necessary to remove any such signs in order to paint or make any repairs, alterations or improvements in or upon said premises or any part thereof, they may be so removed, but shall be replaced at the Landlord's expense when the said repairs, alterations or improvements shall have been completed. Any signs permitted by the Landlord shall at all times conform with all municipal ordinances or other laws and regulations applicable thereto.*

**Utilities**

*6th:   The Tenant shall pay when due all the rents or charges for water or other utilities used by the Tenant, which are or may be assessed or imposed upon the leased premises or which are or may be charged to the Landlord by the suppliers thereof during the term hereof, and if not paid, such rents or charges shall be added to and become payable as additional rent with the installment of rent next due or within 30 days of demand therefor, whichever occurs sooner.*

**Compliance with Laws etc.**

*7th:   The Tenant shall promptly comply with all laws, ordinances, rules, regulations, requirements and directives of the Federal, State and Municipal Governments or Public Authorities and of all their departments, bureaus and subdivisions, applicable to and affecting the said premises, their use and occupancy, for the correction, prevention and abatement of nuisances, violations or other grievances in, upon or connected with the said premises, during the term hereof; and shall promptly comply with all orders, regulations, requirements and directives of the Board of Fire Underwriters or similar authority and of any insurance companies which have issued or are about to issue policies of insurance covering the said premises and its contents, for the prevention of fire or other casualty, damage or injury, at the Tenant's own cost and expense.*

**Liability Insurance**

*8th:   The Tenant, at Tenant's own cost and expense, shall obtain or provide and keep in full force for the benefit of the Landlord, during the term hereof, general public liability insurance, insuring the Landlord against any and all liability or claims of liability arising out of, occasioned by or resulting from any accident or otherwise in or about the leased premises, for injuries to any person or persons, for limits of not less than $100,000.00 for injuries to one person and $ 500,000.00 for injuries to more than one person, in any one accident or occurrence, and for loss or damage to the property of any person or persons, for not less than $100,000.00 . The policy or policies of insurance shall be of a company or companies authorized to do business in this State and shall be delivered to the Landlord, together with evidence of the payment of the premiums therefor, not less than fifteen days prior to the commencement of the term hereof or of the date when the Tenant shall enter into possession, whichever occurs sooner. At least fifteen days prior to the expiration or termination date of any policy, the Tenant shall deliver a renewal or replacement policy with proof of the payment of the premium therefor. The Tenant also agrees to and shall save, hold and keep harmless and indemnify the Landlord from and for any and all payments, expenses, costs, attorney fees and from and for any and all claims and liability for losses or damage to property or injuries to persons occasioned wholly or in part by or resulting from any acts or omissions by the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors, or for any cause or*

**Indemnification**
SJI
R.P.

nor sublet or sublease the premises, or any part thereof.

**Assignment**

**Restriction of use**

**10th:** The Tenant shall not occupy or use the leased premises or any part thereof, nor permit or suffer the same to be occupied or used for any purpose other than as herein limited, nor for any purpose deemed unlawful, disreputable, or extra hazardous, on account of fire or other casualty.

**Mortgage Priority**

**11th:** This lease shall not be a lien against the said premises in respect to any mortgages that may hereafter be placed upon said premises. The recording of such mortgage or mortgages shall have preference and precedence and be superior and prior in lien to this lease, irrespective of the date of recording and the Tenant agrees to execute any instruments, without cost, which may be deemed necessary or desirable, to further effect the subordination of this lease to any such mortgage or mortgages. A refusal by the Tenant to execute such instruments shall entitle the Landlord to the option of cancelling this lease, and the term hereof is hereby expressly limited accordingly.

**Condemnation Eminent Domain**

**12th:** If the land and premises leased herein, or of which the leased premises are a part, or any portion thereof, shall be taken under eminent domain or condemnation proceedings, or if suit or other action shall be instituted for the taking or condemnation thereof, or if in lieu of any formal condemnation proceedings or actions, the Landlord shall grant an option to purchase and or shall sell and convey the said premises or any portion thereof, to the governmental or other public authority, agency, body or public utility, seeking to take said land and premises or any portion thereof, then this lease, at the option of the Landlord, shall terminate, and the term hereof shall end as of such date as the Landlord shall fix by notice in writing; and the Tenant shall have no claim or right to claim or be entitled to any portion of any amount which may be awarded as damages or paid as the result of such condemnation proceedings or paid as the purchase price for such option, assigned to the Landlord. The Tenant agrees that all rights of the Tenant to damages, if any, are hereby be deemed necessary or required to expedite any condemnation proceedings or to effectuate a proper transfer of title to such governmental or other public authority, agency, body or public utility seeking to take or acquire the said lands and premises or any portion thereof. The Tenant covenants and agrees to vacate the said premises, remove all the Tenant's personal property therefrom and deliver up peaceable possession thereof to the Landlord or to such other party designated by the Landlord in the aforementioned notice. Failure by the Tenant to comply with any provisions in this clause shall subject the Tenant to such costs, expenses, damages and losses as the Landlord may incur by reason of the Tenant's breach hereof.

**Fire and other Casualty**

**13th:** In case of fire or other casualty, the Tenant shall give immediate notice to the Landlord. If the premises shall be partially damaged by fire, the elements or other casualty, the Landlord shall repair the same as speedily as practicable, but the Tenant's obligation to pay the rent hereunder shall not cease. If, in the opinion of the Landlord, the premises be so extensively and substantially damaged as to render them untenantable, then the rent shall cease until such time as the premises shall be made tenantable by the Landlord. However, if, in the opinion of the Landlord, the premises be totally destroyed or so extensively and substantially damaged as to require practically a rebuilding thereof, then the rent shall be paid up to the time of such destruction and then and from thenceforth this lease shall come to an end. In no event however, shall the provisions of this clause become effective or be applicable, if the fire or other casualty and damage shall be the result of the carelessness, negligence or improper conduct of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors. In such case, the Tenant's liability for the payment of the rent and the performance of all the covenants, conditions and terms hereof on the Tenant's part to be performed shall continue and the Tenant shall be liable to the Landlord for the damage and loss suffered by the Landlord. If the Tenant shall have been insured against any of the risks and expenses to make the repairs hereunder, and such insurance carriers shall have no recourse against the Landlord for reimbursement.

**Reimbursement of Landlord**

**14th:** If the Tenant shall fail or refuse to comply with and perform any conditions and covenants of the within lease, the Landlord may, if the Landlord so elects, carry out and perform such conditions and covenants, at the cost and expense of the Tenant, and the said cost and expense shall be payable on demand, or at the option of the Landlord shall be added to the installment of rent due immediately thereafter but in no case later than one month after demand, whichever occurs sooner, and shall be due and payable as such. This remedy shall be in addition to such other remedies as the Landlord may have hereunder by reason of the breach by the Tenant of any of the covenants and conditions in this lease contained.

**Inspection and Repair**

**15th:** The Tenant agrees that the Landlord and the Landlord's agents, employees or other representatives, shall have the right to enter into and upon the said premises or any part thereof, at all reasonable hours, for the purpose of examining the same or making such repairs or alterations therein as may be necessary for the safety and preservation thereof. This clause shall not be deemed to be a covenant by the Landlord nor be construed to create an obligation on the part of the Landlord to make such inspection or repairs.

**Right to Exhibit**

**16th:** The Tenant agrees to permit the Landlord and the Landlord's agents, employees or other representatives to show the premises to persons wishing to rent or purchase the same, and Tenant agrees that on and after the next preceding the expiration of the term hereof, the Landlord or the Landlord's agents, employees or other representatives shall have the right to place notices on the front of said premises or any part thereof, offering the premises for rent or for sale; and the Tenant hereby agrees to permit the same to remain thereon without hindrance or molestation.

**Increase of Insurance Rates**

**17th:** If for any reason it shall be impossible to obtain fire and other hazard insurance on the buildings and improvements on the leased premises, in an amount and in the form and in insurance companies acceptable to the Landlord, the Landlord may, if the Landlord so elects at any time thereafter, terminate this lease and the term hereof, upon giving to the Tenant fifteen days notice in writing of the Landlord's intention so to do, and upon the giving of such notice, this lease and the term thereof shall terminate. If by reason of the use to which the premises are put by the Tenant or character of the business in which the Tenant's business is carried on, the insurance rates for fire and other hazards shall be increased, the Tenant shall upon demand, pay to the Landlord, as rent, the amounts by which the premiums for such insurance are increased. Such payment shall be paid with the next installment of rent but in no case later than one month after such demand, whichever occurs sooner.

**Removal of Tenant's Property**

**18th:** Any equipment, fixtures, goods or other property of the Tenant, not removed by the Tenant upon the termination of this lease, or upon any quitting, vacating or abandonment of the premises by the Tenant, or upon the Tenant's eviction, shall be considered as abandoned and the Landlord shall have the right, without any notice to the Tenant, to sell or otherwise dispose of the same, at the expense of the Tenant, and shall not be accountable to the Tenant for any part of the proceeds of such sale, if any.

**Remedies upon Tenant's Default**

**19th:** If there should occur any default on the part of the Tenant in the performance of any conditions and covenants herein contained, or if during the term hereof the premises or any part thereof shall be or become abandoned or deserted, vacated or vacant, or should the Tenant be evicted by summary proceedings or otherwise, the Landlord, in addition to any other remedies herein contained or as may be permitted by law, may either by force or otherwise, without being liable for prosecution therefor, or for damages, re-enter the said premises and the same have and again possess and enjoy; and as agent for the Tenant or otherwise, re-let the premises and receive the rents therefor and apply the same, first to the payment of such expenses, reasonable attorney fees and costs, as the Landlord may have been put to in re-entering and repossessing the same and in making such repairs and alterations as may be necessary; and second to the payment of the rents due hereunder. The Tenant shall remain liable for such rents as may be in arrears and also the rents as may accrue subsequent to the re-entry by the Landlord, to the extent of the difference between the rents reserved hereunder and the rents, if any, received by the Landlord during the remainder of the unexpired term hereof, after deducting the aforementioned expenses, fees and costs; the same to be paid as such deficiencies arise and are ascertained each month.

**Termination on Default**

**20th:** Upon the occurrence of any of the contingencies set forth in the preceding clause, or should the Tenant be adjudicated a bankrupt, insolvent or placed in receivership, or should proceedings be instituted by or against the Tenant for bankruptcy, insolvency, receivership, agreement of composition or assignment for the benefit of creditors, or if this lease or the estate of the Tenant hereunder shall pass to another by virtue of any court proceedings, writ of execution, levy, sale, or by operation of law, the Landlord may, if the Landlord so elects, at any time thereafter, terminate this lease and the term hereof, upon giving to the Tenant or to any trustee, receiver, assignee or other person in charge of or acting as custodian of the assets or property of the Tenant, five days notice in writing, of the Landlord's intention so to do. Upon the giving of such notice, this lease and the term hereof shall end on the date fixed in such notice as if the said date was the date originally fixed in this lease for the expiration hereof; and the Landlord shall have the right to remove all persons, goods, fixtures and chattels therefrom, by force or otherwise, without liability for damages.

**Non-Liability of Landlord**

**21st:** The Landlord shall not be liable for any damage or injury which may be sustained by the Tenant or any other person, as a consequence of the failure, breakage, leakage or obstruction of the water, plumbing, steam, sewer, waste or soil pipes, roof, drains, leaders, gutters, valleys, downspouts or the like or of the electrical, gas, power, conveyor, refrigeration, sprinkler, airconditioning or heating systems, elevators or hoisting apparatus; or by reason of the elements; or resulting from the carelessness, negligence or improper conduct on the part of any other Tenant or of the Landlord or the Landlord's or this or any other Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors; or attributable to any interference with, interruption of or failure, beyond the control of the Landlord, of any services to be furnished or supplied by the Landlord.

**Non-Waiver by Landlord**

**22nd:** The various rights, remedies, options and elections of the Landlord, expressed herein, are cumulative, and the failure of the Landlord to enforce strict performance by the Tenant of the conditions and covenants of this lease or to exercise any election or option or to resort or have recourse to any remedy herein conferred or the acceptance by the Landlord of any installment of rent after any breach by the Tenant, in any one or more instances, shall not be construed or deemed to be a waiver or a relinquishment for the future by the Landlord of any such conditions and covenants, options, elections or remedies, but the same shall continue in full force and effect.

R.P.

<table>
<tr><td>tance Landlord</td><td>conditions hereof, shall not be affected, impaired or excused because of the Landlord's inability to supply any service or material called for herein, by re... of any rule, order, regulation or prescription ... any governmental entity, authority, department, agency or subdivision or for any delay which may arise by reason of negotiations for the adjustment of any fire or other casualty loss or because of strikes or other labor trouble or for any cause beyond the control of the Landlord.</td></tr>
</table>

**24th:** The terms, conditions, covenants and provisions of this lease shall be deemed to be severable. If any clause or provision herein contained shall be adjudged to be invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause or provision herein, but such other clauses or provisions shall remain in full force and effect.

**25th:** All notices required under the terms of this lease shall be given and shall be complete by mailing such notices by certified or registered mail, return receipt requested, to the address of the parties as shown at the head of this lease, or to such other address as may be designated in writing, which notice of change of address shall be given in the same manner.

**26th:** The Landlord owns and represents that the Landlord is the owner of the premises herein leased and has the right and authority to enter into, execute and deliver this lease; and does further covenant that the Tenant on paying the rent and performing the conditions and covenants herein contained, shall and may peaceably and quietly have, hold and enjoy the leased premises for the term aforementioned.

**27th:** This lease contains the entire contract between the parties. No representative, agent or employee of the Landlord has been authorized to make any representations or promises with reference to the within letting or to vary, alter or modify the terms hereof. No additions, changes or modifications, renewals or extensions hereof, shall be binding unless reduced to writing and signed by the Landlord and the Tenant.

**28th:** If in any calendar year during the term and of any renewal or extension of the term hereof, the annual municipal taxes assessed against the land and improvements leased hereunder or of which the premises herein leased are a part, shall be greater than the municipal taxes assessed against the said lands and improvements for the calendar year 1997, which is hereby designated as the base year, then, in addition to the rent herein fixed, the Tenant agrees to pay a sum equal to 50%
of the amount by which said tax exceeds the annual tax for the base year, inclusive of any increase during any such calendar year. The said sum shall be considered as additional rent and shall be paid in as many equal installments as there are months remaining in the calendar year in which said taxes exceed the taxes for the base year, on the first day of each month in advance, during the remaining months of that year. If the term hereof shall commence after the first day of January or shall terminate prior to the last day of December in any year, then such additional rent resulting from a tax increase shall be proportionately adjusted for the fraction of the calendar year involved.

**29th:** If any mechanics' or other liens shall be created or filed against the leased premises by reason of labor performed or materials furnished for the Tenant in the erection, construction, completion, alteration, repair or addition to any building or improvement, the Tenant shall upon demand, at the Tenant's own cost and expense, cause such lien or liens to be satisfied and discharged of record together with any Notices of Intention that may have been filed. Failure so to do, shall entitle the Landlord to resort to such remedies as are provided herein in the case of any default of this lease, in addition to such as are permitted by law.

**30th:** The Tenant waives all rights of recovery against the Landlord or Landlord's agents, employees or other representatives, for any loss, damages or injury of any nature whatsoever to property or persons for which the Tenant is insured. The Tenant shall obtain from Tenant's insurance carriers and will deliver to the Landlord, waivers of the subrogation rights under the respective policies.

**31st:** The Tenant has this day deposited with the Landlord the sum of $ 5,000.00 as security for the payment of the rent hereunder and the full and faithful performance by the Tenant of the covenants and conditions on the part of the Tenant to be performed. Said sum shall be returned to the Tenant, without interest, after the expiration of the term hereof, provided that the Tenant has fully and faithfully performed all such covenants and conditions and is not in arrears in rent. During the term hereof, the Landlord may, if the Landlord so elects, have recourse to such security, to make good any default by the Tenant, in which event the Tenant shall, on demand, promptly restore said security to its original amount. Liability to repay said security to the Tenant shall run with the reversion and title to said premises, whether any change in ownership thereof be by voluntary alienation or as the result of judicial sale, foreclosure or other proceedings, or the exercise of a right of taking or entry by any mortgagee. The Landlord shall assign or transfer said security, for the benefit of the Tenant, to any subsequent owner or holder of the reversion or title to said premises, in which case the assignee shall become liable for the repayment thereof as herein provided, and the assignor shall be deemed to be released by the Tenant from all liability to return such security. This provision shall applicable to every alienation or change in title and shall in no wise be deemed to permit the Landlord to retain the security after termination of the Landlord's ownership of the reversion or title. The Tenant shall not mortgage, encumber or assign said security without the written consent of the Landlord.

The Landlord may pursue the relief or remedy sought in any invalid clause, by conforming the said clause with the provisions of the statutes or the regulations of any governmental agency in such case made and provided as if the particular provisions of the applicable statutes or regulations were set forth herein at length.

In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require. All the terms, covenants and conditions herein contained shall be for and shall inure to the benefit of and shall bind the respective parties hereto, and their heirs, executors, administrators, and their legal representatives, successors and assigns.

In Witness Whereof, the parties hereto have hereunto set their hands and seals, or caused these presents to be signed by their proper corporate officers and their proper corporate seal to be hereto affixed, the day and year first above written.

Signed, Sealed and Delivered
in the presence of
or Attested by

_____     _Shahiear Shah_ 5/22/98
                                                          Landlord

_____     _Rais Prasad_ 5/22/98
                                                          Tenant

State of New Jersey, County of
   I Certify that on            , 19        ss.:

and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):    personally came before me
   (a) is named in and personally signed this document; and
   (b) signed, sealed and delivered this document as his or her act and deed.

.................................................
(Print name and title below signature)

State of New Jersey, County of
   I Certify that on            , 19        ss.:

personally came before me, and this person acknowledged under oath, to my satisfaction, that:
   (a) this person is the                secretary of
                           the corporation named in this document;
   (b) this person is the attesting witness to the signing of this document by the proper corporate officer who is
                   the                 President of the corporation;
   (c) this document was signed and delivered by the corporation as its voluntary act duly authorized by a proper
      resolution of its Board of Directors;
   (d) this person knows the proper seal of the corporation which was affixed to this document; and
   (e) this person signed this proof to attest to the truth of these facts.

Signed and sworn to before me on
          , 19

.................................................
(Print name of attesting witness below signature)

**Lease**

TO

Dated,        , 19

Expires,

Rent, $

Prepared by:

## ASSIGNMENT OF LEASE

   For one dollar and other good and valuable consideration, the Tenant as Assignor, assigns this Lease and all the Assignor's rights and privileges therein, including any and all monies deposited with the Landlord as security, subject to all the terms, covenants and conditions contained therein; and the Assignee accepts this Assignment of Lease and assumes and agrees to comply with and be bound by the terms, covenants and conditions in said Lease contained. The signature of the Landlord hereto is evidence of the Landlord's consent to and acceptance of this Assignment of Lease.

.................................................       .................................................
          *Assignee*                                  *Assignor*

                                           .................................................
                                           *Landlord*

ADDENDUM

32nd:   The Tenant is responsible for gas, electric, garbage removal and snow removal (in front & back of the store). Landlord will be responsible for water & sewer charges.

33rd:   There is one parking space available in the back of the building.

34th:   The Tenant shall obtain glass plate insurance as per replacement value of damaged glass.  The Landlord shall be named the beneficiary of the policy.  The Tenant will also provide a copy of the insurance policy.

35th:   The Tenant will maintain & repair all electrical fixtures, electrical system, plumbing fixtures in restrooms, heating & air conditioning system on the premises.  Landlord will provide all plumbing & electrical fixture in working condition initially.

36th:   The Landlord will not be liable for any water damage to the carpet, furniture equipments, etc., owned by the Tenant. The Tenant must carry other necessary insurance to cover those damages

37th:   The rent is due in advance on the first of each and every month.  Then a late charge of $100.00 will be imposed for first week and $100.00 will be imposed for each additional week & legal cost if any includable as rent.  For each returned check, charge of $100.00 will be imposed and legal cost if any.  Once the check from the Tenant is returned for any reasons, all future rent payments will be by certified check or in cash only.

38th:   The premises is available in "as is" conditions.  the Tenant will not damage or remove the carpet in the premises without written permission of the Landlord.  The Tenant will maintain the carpet in good condition.  The Tenant shall obey all city codes for conducting business on the leased premise. The Tenant will not do any improvement for any of the electrical and or heating system without Landlord's consent.

39th:   The lease will be voided if the Tenant does not get necessary permit from city of Plainfield to open Liquor store. The security deposit of $5,000.00 will be refunded to the Tenant which will be held in escrow account with John Wiley, Jr. on signing of this lease.

40th:   Tenant has applied for township approval for Liquor Business.  If the approval of Liquor store is obtained Before August 31, 1997 then the rent will start as per terms of Lease, 15 days after the approval date.

If the approval is not obtained before August 31, 1997, the tenant will pay $1,250.00 interest to the Landlord for September and then full rent thereafter.

If the Liquor License approval can not be obtained before September 31, 1997, the Tenant must either terminate the Lease of the provisions of Paragraph 40 are void.

41st: The Assignment of the Lease will not be unreasonably witheld, however Assignee must have good credit and sufficient business experience. In the event that Assignment takes place, base rent shall be increased by $200.00 per month. Transfer of more than 50% of the shares of Plainfield Liquor Inc., constitutes an assignment. Shares are presently held by Raini Prasad.

42nd: Tenant shall have right to terminate the lease after the 24th, 60th, 120, 180 month of lease if he provides written notice to Landlord by certified mail/return receipt requested, 90 days prior to end of the 24th, 60th, 120th, 180th month of lease.

FOR SHREE JI INC.:

HARSHAD SHAH, PRESIDENT    5/22/98

FOR PLAINFIELD LIQUOR, INC.

RANI PRASAD, PRESIDENT    5/22/98

# Exhibit B

# ADDENDUM

FOLLOWING AMENDMENTS ARE TO THE LEASE OF PLAINFIELD LIQUORS, INC WITH SHREE JI INC. (LANDLORD) :

1) THIS ADDENDUM IS VALID ONLY IF THIS ADDENDUM IS SIGNED BEFORE JUNE 8TH, 2001, BY HARSHAD SHAH, PRESIDENT OF SHREE JI INC. (LANDLORD) AND ANIL KUMAR, PRESIDENT OF WATCHUNG LIQUORS, INC. AND ANIL KUMAR WILL DO CLOSING OF BUSINESS ON OR BEFORE 6/8/01.

2) ALL TERMS AND CONDITIONS OF THE LEASE OF PLAINFIELD LIQUORS, INC. WILL BE TAKEN OVER BY WATCHUNG LIQUORS, INC. EXCEPT CHANGES MENTIONED IN THIS ADDENDUM.

3) NOW THE TENANT NAME WILL BE WATCHUNG LIQUORS, INC. INSTEAD OF PLAINFIELD LIQUORS, INC.

4) NOW THE REAR ROOM, IN "AS IS" CONDITION, IS INCLUDED AND THERE WILL BE AN ADDITIONAL RENT OF $100.00 PER MONTH PLUS MONTHLY BASE RENT AS PER THE TERMS OF THE LEASE.

5) CLAUSE NO. 41ST OF THE LEASE NOW READ AS " THE ASSIGNMENT OF THE LEASE WILL NOT BE UNREASONABLY WITHHELD, HOWEVER ASSIGNEE MUST HAVE GOOD CREDIT AND SUFFICIENT BUSINESS EXPERIENCE. IN THE EVENT THAT ASSIGNMENT TAKES PLACE, BASE RENT SHALL BE INCREASED BY $200.00 PER MONTH. TRANSFER OF ANY PERCENTAGE SHARES OF WATCHUNG LIQUORS, INC. EXCEPT TRANSFER TO KAMAL KUMAR, CONSTITUES AN ASSIGNMENT. AFTER CLOSING, 100 % SHARES OF WATCHUNG LIQUORS, INC. WILL BE HELD BY ANIL KUMAR.

6) ANIL KUMAR IS ASSUMING THE RESPONSIBILITIESOF THE LEASE AND RANI PRASAD WILL HAVE NO OBLIGATION AFTER THE DAY OF THE CLOSING.

7) THE TENANT MUST MAINTAIN THE HEATING AND AIRCONDITION SYSTEMS. THE MAINTANANCE OF THE HEATING AND AIRCONDITIONING SYSTEM MUST BE PERFORMED BY PASTOR REFRIGERATION, INC. OR ANY OTHER PROFESSIONAL HEATING AND AIRCONDITIONING COMPANY, WHICH MUST BE APPROVED BY THE LANDLORD. THE TENANT MUST PRESENT TO LANDLORD MAINTANCE CONTRACT FOR THE SYSTEM.

8) EXCEPT CHANGES MENTIONED IN THIS ADDENDUM, ALL TERMS AND CONDITIONS OF THE LEASE OF THE PLAINFIELD LIQUORS, INC. WILL BE ENFORCE AFTER CLOSING OF THE BUSINESS.

FOR SHREE JI INC.

_____
HARSHAD SHAH, PRESIDENT
6|6|01

FOR WATCHUNG LIQUORS, INC

_____  6/6/01
ANIL KUMAR, PRESIDENT

## ADDENDUM

FOLLOWING AMENDMENTS ARE TO THE LEASE OF PLAINFIELD LIQUORS, INC WITH SHREE JI INC. (LANDLORD) :

1) THIS ADDENDUM IS VALID ONLY IF THIS ADDENDUM IS SIGNED BEFORE JUNE 8TH, 2001, BY HARSHAD SHAH, PRESIDENT OF SHREE JI INC. (LANDLORD) AND ANIL KUMAR, PRESIDENT OF WATCHUNG LIQUORS, INC. AND ANIL KUMAR WILL DO CLOSING OF BUSINESS ON OR BEFORE 6/8/01.

2) ALL TERMS AND CONDITIONS OF THE LEASE OF PLAINFIELD LIQUORS, INC. WILL BE TAKEN OVER BY WATCHUNG LIQUORS, INC. EXCEPT CHANGES MENTIONED IN THIS ADDENDUM.

3) NOW THE TENANT NAME WILL BE WATCHUNG LIQUORS, INC. INSTEAD OF PLAINFIELD LIQUORS, INC.

4) NOW THE REAR ROOM, IN "AS IS" CONDITION, IS INCLUDED AND THERE WILL BE AN ADDITIONAL RENT OF $100.00 PER MONTH PLUS MONTHLY BASE RENT AS PER THE TERMS OF THE LEASE.

5) CLAUSE NO. 41ST OF THE LEASE NOW READ AS " THE ASSIGNMENT OF THE LEASE WILL NOT BE UNREASONABLY WITHHELD, HOWEVER ASSIGNEE MUST HAVE GOOD CREDIT AND SUFFICIENT BUSINESS EXPERIENCE. IN THE EVENT THAT ASSIGNMENT TAKES PLACE, BASE RENT SHALL BE INCREASED BY $200.00 PER MONTH. TRANSFER OF ANY PERCENTAGE SHARES OF WATCHUNG LIQUORS, INC. EXCEPT TRANSFER TO KAMAL KUMAR, CONSTISUES AN ASSIGNMENT. AFTER CLOSING, 100 % SHARES OF WATCHUNG LIQUORS, INC. WILL BE HELD BY ANIL KUMAR.

6) ANIL KUMAR IS ASSUMING THE RESPONSIBILITIESOF THE LEASE AND RANI PRASAD WILL HAVE NO OBLIGATION AFTER THE DAY OF THE CLOSING.

7) THE TENANT MUST MAINTAIN THE HEATING AND AIRCONDITION SYSTEMS. THE MAINTANANCE OF THE HEATING AND AIRCONDITIONING SYSTEM MUST BE PERFORMED BY PASTOR REFRIGERATION, INC. OR ANY OTHER PROFESSIONAL HEATING AND AIRCONDITIONING COMPANY, WHICH MUST BE APPROVED BY THE LANDLORD. THE TENANT MUST PRESENT TO LANDLORD MAINTANCE CONTRACT FOR THE SYSTEM.

8) EXCEPT CHANGES MENTIONED IN THIS ADDENDUM, ALL TERMS AND CONDITIONS OF THE LEASE OF THE PLAINFIELD LIQUORS, INC. WILL BE ENFORCE AFTER CLOSING OF THE BUSINESS.

FOR SHREE JI INC.                    FOR WATCHUNG LIQUORS, INC

_Shah_                               _Anil K_     6/6/01

HARSHAD SHAH, PRESIDENT              ANIL KUMAR, PRESIDENT
6/6/01

# Exhibit C

WILEY LAVENDER, P.C.
PANKAJ MAKNOOR, ESQ. (175292016)
216 AMBOY AVENUE
P.O. BOX 429
METUCHEN, NEW JERSEY 08840
(732) 494-6099
Attorney for Plaintiff

| | |
|---|---|
| **SHREE JI INC.** | ) SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | ) LAW DIVISION |
| | ) UNION COUNTY |
| -vs- | ) |
| | ) CIVIL ACTION |
| **WATCHUNG LIQUORS, INC.** | ) DOCKET NO: **UNN-L-1342-19** |
| Defendant | ) |
| | ) **ORDER** |
| | ) |

**THIS MATTER**, having been opening to the Court by Pankaj Maknoor, Esq. of the law firm of Wiley Lavender, P.C., attorneys for the plaintiff, Shree Ji Inc., by way of a Notice of Motion for Summary Judgment, and the Court having considered the papers and heard argument of counsel, ~~if applicable~~, and for good cause shown;

**IT IS** on this 8th day of November, 2019 hereby **ORDERED**:

1. That Shree Ji Inc.'s Motion for Summary Judgment is hereby **GRANTED in part;**

2. Judgment for possession over 108 Watchung Ave., Plainfield, NJ 07060 ("Rental Unit") shall be awarded to Shree Ji Inc. effective January 1, 2020;  Defendants shall make their November 2019 and December 2019 rent payments to Mr. Maknoor and said payments shall be held in his firm's trust account.

3. The rent payments currently on deposit with the Court shall be turned over to Pankaj Maknoor, Esq, counsel for plaintiff to be held in his firm's trust account pending the resolution of this matter.  Any withdrawal from the account must be made through an application to the court or by a submission of a consent order.

4. ~~A judgment for $39,829.08 shall be entered against defendant Watchung Liquors, Inc. and in favor of Shree Ji Inc;~~ **Denied**

5. ~~Shree Ji Inc. shall have the right to amend the judgment amount entered against Watchung Liquors, Inc. should additional damages resulting from Watchung Liquors Inc.'s failure to maintain be revealed once possession of the Rental Unit has been returned to Shree Ji Inc.;~~

   **Denied**

6. ~~Shree Ji Inc. shall have the right to submit a certification for additional attorney's fees and court costs arising from this dispute; and~~ **Denied**

7. ~~That~~ a copy of this Order shall be deemed served upon upload to eCourts. ~~served on all counsel within seven (7) days of the Order being posted to eCourts.~~

/s/ *Karen M. Cassidy*

A.J.S.C.

[ xx ] Opposed

[    ] Unopposed

**Oral Argument and reasons on the record.**

# Exhibit D



## PLAINFIELD POLICE DEPT
## PLAINFIELD, NJ

| INCIDENT # / REPORT # | OFFICER | RANK | REVIEW STATUS |
|---|---|---|---|
| 20001010 / 1 | ALAHWOL, O | POLICE OFFICER | APPROVED |

### INCIDENT #20001010 DATA
As Of 01/13/2020 20:05:33

#### BASIC INFORMATION

| CASE TITLE | LOCATION | APT/UNIT # |
|---|---|---|
| THEFT | 108 WATCHUNG AV | |

| DATE/TIME REPORTED | DATE/TIME OCCURRED |
|---|---|
| 01/07/2020 14:40:50 | 01/01/2020 12:00 to 01/07/2020 14:40 |

INCIDENT TYPE(S)/OFFENSE(S)
(2C:20-3A)THEFT OF MOVABLE PROPERTY
(2C:17-3B(1))CRIMINAL MISCHIEF - $2000 OR MORE

#### PERSONS

| ROLE | NAME | SEX | RACE | AGE | DOB | PHONE |
|---|---|---|---|---|---|---|
| OWNER/OPERATOR | SHAH, NIRAV | MALE | UNKNOWN | | | (HOME) |
| | ADDRESS: 30 THAMES ROAD   PISCATAWAY, NJ | | | | | (CELL) 8484826472 |

#### OFFENDERS

| STATUS | NAME | SEX | RACE | AGE | DOB | PHONE |
|---|---|---|---|---|---|---|
| SUSPECT | KUMAR, ANIL | MALE | ASIAN/PACIFIC ISLANDER | 52 | 07/08/1967 | (WORK) 908-412-9992 |
| | ADDRESS: 108 WATCHUNG AVE   PLAINFIELD, NJ | | | | | (CELL) |

**[ NO VEHICLES ]**

#### PROPERTY

| CLASS | DESCRIPTION | MAKE | MODEL | SERIAL # | VALUE |
|---|---|---|---|---|---|
| OTHER | REFRIGERATION WALK IN COOLER | | | | 30000 |
| OTHER | ELECTRICAL FIXTURES/WIRES | | | | 20000 |
| OTHER | STORAGE SHELVING | | | | 10000 |
| OTHER | PLUMBING LINES | | | | 7500 |
| OTHER | CAMERA SYSTEM | | | | 2500 |
| OTHER | CARPETING | | | | 7000 |
| OTHER | BROKEN WINDOWS AND AND STOREFRONT | | | | 6200 |
| OTHER | BROKEN DOORS | | | | 2000 |

| OTHER | DAMAGED LOCKS | 300 |
|-------|---------------|-----|

---

**OFFICER REPORT: 20001010 - 1 / ALAHWOL, O (10227)**

| **DATE/TIME OF REPORT** | **TYPE OF REPORT** | **REVIEW STATUS** |
|---|---|---|
| 01/07/2020 14:43:14 | INCIDENT | APPROVED |

---

**NARRATIVE**

07 January, 2020 (Tuesday):

On the above date, while assigned to the front desk of the Plainfield Police Department (119), I was approached by Mr. Nirav Shah (landlord) of (108 Watchung Avenue), who wished to report theft and criminal mischief that occurred at Watchung Liquors (108 Watchung Avenue).

Mr. Shah stated on 1 January, 2020 there was a court order for the current tenant, Mr. Anil Kumar to vacate the premise due to non rent payments. On 1 January, 2020 Mr. Kumar voluntarily returned his keys to Mr. Shah.

Upon, inspection of the property after the tenants left, there were several items that were stolen by the tenant that belonged to the landlord. Mr. Shah immediately requested those items be returned, and the tenant refused.

The following items were missing from the property:

Refrigeration Unit (Walk in cooler and associated system)
Electrical Fixtures/Wires
Shelving Units
Plumbing fixtures/Lines
Camera System
Carpeting

The following items were damaged:

Broken Windows including storefront
Broken Doors
Damage to Locks

Photos of damaged items have been attached to this report.

BWC not activated at time of this incident.

**REPORT OFFICERS**

| | | |
|---|---|---|
| Reporting Officer: | ALAHWOL, O | 10227 |
| Approving Officer: | BOWE, M | 10570 |

# Exhibit E



**TRAVELERS**

**Report Claims Immediately by Calling**
**1-800-238-6225**
*Speak directly with a claim professional*
*24 hours a day, 365 days a year*

*Unless Your Policy Requires **Written** Notice or Reporting

## OFFICE PAC

ACCOUNTING, AUDITING, AND BOOKKEEPING



**A Custom Insurance Policy Prepared for:**

HARSHAD SHAH AND SHREE JI INC.
30 THAMES ROAD
PISCATAWAY NJ 08854

Presented by: COMMERCIAL INS ASSOCS

PN U3 20 04 19

---

POLICY NUMBER: 680-0N725897-19-42          ISSUE DATE: 11-05-19

Dear Valued Policyholder:

We are excited to inform you about changes to the structure of your commercial general liability (CGL) insurance. We are implementing a new proprietary CGL Coverage Form that will update and further simplify our approach to that coverage. Our new CGL coverage form is more closely aligned with ISO's current CGL coverage form, and it includes numerous provisions previously contained in our proprietary mandatory endorsements and several coverage enhancements that have been provided in our commonly used XTEND™ endorsements. In addition, we have updated many of our CGL endorsements for improved readability and consistency across our portfolio of policy forms.

To complement these CGL policy form changes, we are also transitioning our Liquor Liability (LL) coverage to ISO's current LL coverage form, modified by a proprietary Liquor Liability Amendatory Endorsement. This transition will improve consistency and coordination of CGL and LL coverages.

Your new Travelers CGL policy will contain coverage terms and conditions substantially similar to those in your expiring Travelers CGL policy. Also, in order to make this transition to our new proprietary policy forms as easy as possible for you, we will adjust any claims for CGL coverage under your new policy based upon the terms and conditions of either your expiring policy or your new policy, **whichever are broader**. Likewise, if your expiring policy includes LL coverage and you are renewing that coverage with us, we will adjust any claims for LL coverage under your new policy based upon the terms and conditions of either your expiring policy or your new policy, **whichever are broader**. However, this approach to adjustment of claims for CGL and LL coverage **is subject to the following exceptions:**

- Any differences in the insured locations or insurance schedules, or the identity of named insureds or additional insureds.

- Any differences in coverage that have been requested by you or your agent or broker or to which you or your agent or broker have agreed during renewal negotiations, or any exposures you have elected to insure elsewhere.

- Any reduction in the amount of the limits of insurance shown in any Declarations or endorsement for your new policy from the amount shown for substantially similar coverage in any Declarations or endorsements for your expiring policy.

- Any increase in the amount of any deductible, self-insured retention, retrospective loss limitation, or coinsurance obligation shown in any Declarations or endorsement for your new policy from the amount shown for substantially similar coverage in any Declarations or endorsement for your expiring policy, or any change from a loss-sensitive to guaranteed-cost rating plan or vice versa.

- Any other exceptions shown below.

We will apply this approach to claims adjusted under your first new Travelers policy. Any claim adjusted under a subsequent Travelers policy will be adjusted based only upon the terms and conditions of that policy.

Please review your expiring and new Travelers policies carefully, retain your expiring policy, and contact your agent or broker if you have any questions about this letter. We appreciate your business and thank you for choosing to insure with us.

© 2019 The Travelers Indemnity Company. All rights reserved.          Page 1 of 2

---

**TRAVELERS**          One Tower Square, Hartford, Connecticut 06183

**RENEWAL CERTIFICATE**

| COMMON POLICY DECLARATIONS | POLICY NO.: 680-0N725897-19-42 |
|---|---|
| OFFICE PAC | ISSUE DATE: 11/05/2019 |
| BUSINESS: ACCOUNTING, AUD | |

**INSURING COMPANY:**
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

1. **NAMED INSURED AND MAILING ADDRESS:**
   HARSHAD SHAH AND SHREE JI INC.
   30 THAMES ROAD
   PISCATAWAY NJ 08854

2. **POLICY PERIOD:** From 12/15/2019 to 12/15/2020 12:01 A.M. Standard Time at your mailing address.

3. **LOCATIONS:**

| PREM. NO. | BLDG. NO. | OCCUPANCY | ADDRESS (same as Mailing Address unless specified otherwise) |
|---|---|---|---|
| 001 | 001 | ACCOUNTING, AUD | 106-112 WATCHUNG AVE |
| | | | PLAINFIELD      NJ 07060 |

4. **COVERAGE PARTS AND SUPPLEMENTS FORMING PART OF THIS POLICY AND INSURING COMPANIES**

| COVERAGE PARTS AND SUPPLEMENTS | INSURING COMPANY |
|---|---|
| Businessowners Coverage Part | ACJ |

5. The COMPLETE POLICY consists of this declarations and all other declarations, and the forms and endorsements for which symbol numbers are attached on a separate listing.

6. **SUPPLEMENTAL POLICIES:** Each of the following is a separate policy containing its complete provisions.

| POLICY | POLICY NUMBER | INSURING COMPANY |
|---|---|---|

DIRECT BILL

7. **PREMIUM SUMMARY:**

| | | |
|---|---|---|
| Provisional Premium | $ | 4,933.00 |
| Due at Inception | $ | |
| Due at Each | $ | |

NAME AND ADDRESS OF AGENT OR BROKER          COUNTERSIGNED BY:

COMMERCIAL INS ASSOCS          XW633
103 POWELL CT STE 200

BRENTWOOD          TN 37027          Authorized Representative
IL TO 25 08 01  (Page 1 of 01)                    DATE: 11/05/2019
Office: ELMIRA NY SRV CTR  DOWN

          © 2019 The Travelers Indemnity Company. All rights reserved.          PN U3 20 04 19

**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

BUSINESSOWNERS COVERAGE PART DECLARATIONS
OFFICE PAC

POLICY NO.:  680-0N725897-19-42
ISSUE DATE:  11/05/2019

INSURING COMPANY:
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

POLICY PERIOD:
From 12-15-19 to 12-15-20 12:01 A.M. Standard Time at your mailing address.

FORM OF BUSINESS:  INDIVIDUAL

COVERAGES AND LIMITS OF INSURANCE:  Insurance applies only to an item for which a
"limit" or the word "included" is shown.

COMMERCIAL GENERAL LIABILITY COVERAGE

| OCCURRENCE FORM | | LIMITS OF INSURANCE |
|---|---|---|
| General Aggregate (except Products-Completed Operations Limit) | $ | 4,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 4,000,000 |
| Personal and Advertising Injury Limit | $ | 2,000,000 |
| Each Occurrence Limit | $ | 2,000,000 |
| Damage to Premises Rented to You. | $ | 300,000 |
| Medical Payments Limit (any one person). | $ | 5,000 |

BUSINESSOWNERS PROPERTY COVERAGE

DEDUCTIBLE AMOUNT:  Businessowners Property Coverage:  $  500 per occurrence.
                    Building Glass:  $  500 per occurrence.

BUSINESS INCOME/EXTRA EXPENSE LIMIT:  Actual loss for 12 consecutive months

Period of Restoration-Time Period:  Immediately

ADDITIONAL COVERAGE:
    Fine Arts:  $  25,000

Other additional coverages apply and may be changed by an endorsement.  Please
read the policy.

SPECIAL PROVISIONS:

**COMMERCIAL GENERAL LIABILITY COVERAGE
IS SUBJECT TO A GENERAL AGGREGATE LIMIT**

MP T0 01 02 05  (Page 1 of 2 )

---

BUSINESSOWNERS PROPERTY COVERAGE

PREMISES LOCATION NO.:  001    BUILDING NO.:  001

| COVERAGE | | LIMIT OF INSURANCE | VALUATION | COINSURANCE | INFLATION GUARD |
|---|---|---|---|---|---|
| BUILDING | $ | 2,137,200 | RC* | N/A | 8.0% |
| *Replacement Cost | | | | | |
| BUSINESS PERSONAL PROPERTY | $ | 78,000 | RC* | N/A | 8.0% |
| *Replacement Cost | | | | | |

COVERAGE EXTENSIONS:
    Accounts Receivable    $   25,000
    Valuable Papers        $   25,000

Other  coverage extensions apply and may be changed by an endorsement.  Please read
the policy.

MP T0 01 02 05   (Page 2 of 2 )

---

**TRAVELERS**

TAXES AND SURCHARGES
OFFICE PAC                 PAC

POLICY NO.:  680-0N725897-19-42
EFFECTIVE DATE: 12/15/2019
ISSUE DATE:  11/05/2019

| DESCRIPTION | AMOUNT |
|---|---|
| NJ Prop-Liab Ins Guaranty Assoc Surcharge | $   25.00 |

OFFICE:  ELMIRA NY SRV CTR 700
PRODUCER NAME:  COMMERCIAL INS ASSOC.              28851

MP T0 21 01 89   (Page 1 of 1 )

---

POLICY NUMBER:  680-0N725897-19-42

EFFECTIVE DATE:  12/15/2019

ISSUE DATE:  11/05/2019

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS

|   | | |
|---|---|---|
| * | PN U3 20 04 15 | LIBERALIZATION LETTER - GENERAL LIABILITY PRODUCT MODERNIZATION |
|   | IL T0 19 02 05 | COMMON POLICY DECLARATIONS |
|   | IL T1 25 09 01 | RENEWAL CERTIFICATE |
| * | MP T0 01 02 05 | BUSINESSOWNERS COVERAGE PART DECLARATIONS |
|   | IL T6 01 01 01 | FORMS ENDORSEMENT AND SCHEDULE NUMBERS |
|   | IL T3 15 09 07 | COMMON POLICY CONDITIONS |

BUSINESSOWNERS

|   | | |
|---|---|---|
|   | MP T1 30 02 08 | TABLE OF CONTENTS - BUSINESSOWNERS COVERAGE PART - DELUXE PLAN |
|   | MP T1 02 02 05 | BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM |
|   | MP T1 03 02 05 | AMENDATORY PROVISIONS - OFFICES |
| * | MP T3 63 05 15 | POWER PAC PREMIER ENDORSEMENT |
|   | MP T3 06 02 07 | SEWER OR DRAIN BACK UP EXTENSION |
|   | MP T3 25 06 15 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE |
|   | MP T3 50 11 06 | EQUIPMENT BREAKDOWN - SERVICE INTERRUPTION LIMITATION |
|   | MP T3 56 02 08 | AMENDATORY PROVISIONS - GREEN BUILDING AND BUSINESS PERSONAL PROP DUV ENHANCEMENTS |
| * | MP T1 72 04 03 | BUILDING OWNERS ENDORSEMENT |

COMMERCIAL GENERAL LIABILITY

|   | | |
|---|---|---|
| * | CG T2 34 02 15 | TABLE OF CONTENTS - COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG T1 00 02 19 |
| * | CG T1 00 02 19 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| * | CG D3 09 02 19 | AMENDATORY ENDORSEMENT - PRODUCTS-COMPLETED OPERATIONS HAZARD |
|   | CG D0 03 12 97 | AMEND - MOB CUMULATION OF EACH OCC |
| * | CG D6 42 02 19 | XTEND ENDORSEMENT FOR SMALL BUSINESSES |
| * | MP T4 69 11 03 | HIRED AND NON-OWNED AUTO LIABILITY - NEW JERSEY |
|   | CG D4 31 07 08 | AMEND CONTRAL LIAB EXCL - EXC TO DAMED INS |
|   | CG D6 18 10 11 | EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS |
|   | CG D6 19 05 12 | EXCLUSION - PROFESSIONAL FINANCIAL SERVICES |
| * | CG D4 49 08 13 | AMEND LIQ EXCL-EXCEPT SCHED PREM/ACTIV |
| * | CG 01 43 02 19 | EXCLUSION - DISCRIMINATION |
| * | CG 26 20 10 93 | NEW JERSEY CHANGES - LOSS INFORMATION (OCCURRENCE VERSION) |

CYBERFIRST ESSENTIALS LIABILITY ENDORSEMENTS

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE.

IL T6 01 01 01                                    PAGE:  1  OF  3.

POLICY NUMBER:  680-0N725897-19-42
EFFECTIVE DATE:  12/15/2019
ISSUE DATE:  11/05/2019

CYBERFIRST ESSENTIALS LIABILITY ENDORSEMENTS (CONTINUED)

| | | |
|---|---|---|
| * | PR T9 22 02 12 | CYBERFIRST ESSENTIALS COVERAGE PART DECLARATIONS |
| | PR T1 13 02 12 | CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM |
| | PR T1 14 02 12 | CYBERFIRST ESSENTIALS INFORMATION SECURITY LIABILITY COVERAGE FORM |
| | PR T4 93 02 12 | AMENDMENT OF PROFESSIONAL SERVICES EXCLUSION-ACCOUNTANT |
| | PR T5 21 09 15 | COVG FOR FINANCIAL INTEREST IN FOREIGN INSURED ORGANIZATIONS-CYBERFIRST ESSENTIALS |
| * | PR T6 07 03 15 | BREACH ESSENTIALS ENDORSEMENT |
| | PR T3 14 01 15 | AMEND OF AI AND FI DEFINITIONS - INFORMATION SECURITY LIABILITY |
| | PR FI 07 02 12 | NEW JERSEY MANDATORY ENDORSEMENT |

EMPLOYMENT PRACTICES LIABILITY

| | | |
|---|---|---|
| * | PR T0 07 02 15 | EMPLOYMENT PRACTICES LIAB COVG PART DEC. |
| | PR T1 10 04 09 | EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM |
| | PR T5 23 03 15 | COVG FOR FINANCIAL INTEREST IN FOREIGN ORGANIZATIONS-EMPLOYMENT PRACTICES LIABILITY |

MULTIPLE SUBLINE ENDORSEMENTS

| | | |
|---|---|---|
| | CG T3 33 11 01 | LIMITATION WHEN TWO OR MORE POLICIES APPLY |

INTERLINE ENDORSEMENTS

| | | |
|---|---|---|
| | IL T3 58 01 15 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE |
| | IL T4 12 03 15 | AMNDT COMMON POLICY COND-PROHIBITED COVG |
| | IL T4 14 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| | IL T3 82 05 13 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| | IL 00 21 09 08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| | IL 01 11 11 03 | NEW JERSEY CHANGES |
| | IL 01 81 09 08 | NEW JERSEY CHANGES - CIVIL UNION |
| | IL 02 98 09 07 | NEW JERSEY CHANGES - CANCELLATION AND NONRENEWAL |

POLICY HOLDER NOTICES

| | | |
|---|---|---|
| | PH T4 54 01 08 | IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION |
| * | PH T5 86 04 09 | EPL - RISK MANAGEMENT LETTER |
| * | PN T3 55 02 03 | NEW JERSEY EARTHQUAKE INSURANCE AVAILABILITY NOTICE |
| * | PH T7 73 07 11 | IMPORTANT NOTICE - EMPLOYMENT PRACTICES LIABILITY HOTLINE |

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE

IL T8 01 01 01                                PAGE:  2  OF  3

---

POLICY NUMBER:  680-0N725897-19-42
EFFECTIVE DATE:  12/15/2018
ISSUE DATE:  11/05/2019

| | | |
|---|---|---|
| | PH MF 39 01 11 | IMPORTANT NOTICE - JURISDICTIONAL INSPECTIONS - NEW JERSEY |

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE

IL T8 01 01 01                                PAGE:  3  OF  3



TRAVELERS PROPERTY

TRAVELERS PROPERTY

POLICY NUMBER: 680-0B725897-19-42

BUSINESSOWNERS
ISSUE DATE: 11/09/2019

BUSINESSOWNERS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Power Pac Premier Endorsement

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

### SCHEDULE

Computer Fraud and Funds Transfer Fraud Limit of Insurance: $20,000

The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows.

1. The following **Additional Coverage** is added to paragraph A.6.:

**Blanket Coverage Limit of Insurance**

We will pay up to $250,000 in any one occurrence as a Blanket Coverage Limit of Insurance for the sum of all covered loss at each described premises under the coverages described in paragraphs a. through d. below. You may apportion this limit among these coverages as you choose.

Unless otherwise stated, this Blanket Coverage Limit of insurance is in addition to any other Limit of Insurance that may be provided by this policy for the following coverages.

**a. Accounts Receivable**

Within the Blanket Coverage Limit of Insurance, when a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, we will pay for direct physical loss of or damage to your records of accounts receivable (including those on electronic data processing media) on or away from each described premises, including while in transit, caused by or resulting from a Covered Cause of Loss. Credit card company media will be considered Accounts Receivable until delivered to the credit card company.

This coverage applies as described in Paragraphs **A.7.a.(2)** and **A.7.a.(3)** and is subject to the provisions that apply to those Paragraphs.

**b. Excess Debris Removal**

(1) Within the Blanket Coverage Limit of Insurance, we will pay your expense to remove debris of Covered Property, other

than outdoor trees, shrubs, plants and lawns as described in the Outdoor Trees, Shrubs, Plants and Lawns Coverage Extension, caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) When the debris removal expense exceeds the 25% limitation in **Additional Coverage – Debris Removal in Section A.6.c.(3)** or when the sum of the debris removal expense and the amount we pay for the direct physical loss of or damage to Covered Property exceeds the applicable Limit of Insurance, we will pay up to the Blanket Coverage Limit of Insurance for debris removal expense in any one occurrence, at each described premises.

**c. Spoilage Coverage**

(1) Within the Blanket Coverage Limit of Insurance, when a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to direct physical loss of or damage to Perishable Stock caused by or resulting from a covered cause of loss described in Paragraph (3) below and not excluded in Paragraph (4) below.

(2) This Additional Coverage does not apply to Perishable Stock while located:

(a) On buildings;

(b) In the open; or

(c) In vehicles.

(3) With respect to this Additional Coverage, covered cause of loss means the following:

(a) **Breakdown or Contamination**, meaning:

(i) Change in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at the described premises; or

(ii) Contamination by a refrigerant, only while the refrigerating apparatus or equipment is at the described premises; or

(b) **Power Outage**, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

(4) The following exclusions apply to this Additional Coverage:

(a) We will not pay for loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

(i) Manual disconnecting of any refrigeration, cooling or humidity control system from the source of electric power;

(ii) Terminating of electric power due to throwing or turning off any switch or other device usual to the shutting off of electric power on the described premises; or

(iii) Intentional decision of an electric utility company or other source of electric power not to provide sufficient power or the

inability of such company or source to provide sufficient power, due to lack of fuel, governmental order or lack of generating capacity to meet the demand.

(b) Paragraph **B.1.b.** Earth Movement;

(c) Paragraph **B.1.c.** Governmental Action;

(d) Paragraph **B.1.d.** Nuclear Hazard;

(e) Paragraph **B.1.f.** War and Military Action;

(f) Paragraph **B.1.g.** Water; and

(g) Paragraph **B.1.h.** Neglect.

No other exclusions in Paragraph **B.** Exclusions apply to this Additional Coverage. However, if any exclusions are added by endorsement to this Coverage Form, such exclusions will apply to this Additional Coverage.

(5) With respect to this Additional Coverage, Perishable Stock means personal property:

(a) Maintained under controlled conditions for its preservation; and

(b) Susceptible to loss or damage if the controlled temperature or humidity conditions change.

**d. Valuable Papers and Records**

Within the Blanket Coverage Limit of Insurance, when a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, we will pay for direct physical loss of or damage to "valuable papers and records" that:

(a) You own; or

(b) Are owned by others, but in your care, custody or control;

caused by or resulting from a Covered Cause of Loss.

This coverage applies as described in Paragraphs **A.7.a.(2)** and **A.7.a.(3)** and is subject to the provisions that apply to those Paragraphs.

With respect to property of others covered under this Additional Coverage, the owner may have their insurance covering the same

MP T3 63 03 15

Page 1 of 16

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 2 of 16

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

MP T3 63 03 15

---

BUSINESSOWNERS

BUSINESSOWNERS

property as this insurance. This insurance is intended to be primary and not to contribute with such other insurance.

2. With respect to **Extended Business Income**, the time frame referenced in Paragraph **A.3.c.(2)(b)** is increased from sixty consecutive days to ninety consecutive days.

3. The limit applicable to the **Additional Coverage – Arson and Theft Reward** is increased by $25,000.

4. The limit applicable to the **Additional Coverage – Claim Data Expense** is increased from $5,000 to $25,000.

5. The limit applicable to the **Additional Coverage – Newly Acquired or Constructed Property** for Building is increased from $500,000 to $1,000,000.

6. The limit applicable to the **Additional Coverage – Newly Acquired or Constructed Property** for Business Personal Property is increased from $250,000 to $500,000.

7. With respect to the **Additional Coverage – Ordinance or Law**, coverage is extended to include tenant improvements and betterments as described in Paragraph **A.1.b.(3)** if:

(1) You are a tenant, and

(2) A Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises.

8. The limit applicable to the **Additional Coverage – Outdoor Trees, Shrubs, Plants and Lawns** is increased from $3,000 to $5,000.

9. The following **Additional Coverages** are added to Paragraph **A.6.**:

**a. Brands or Labels**

If a limit of insurance is shown in the Declarations for Business Personal Property and if branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or part of the property at an agreed or appraised value. If so, you may:

(1) Stamp the word Salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands and labels, if doing so will not physically damage the merchandise or its containers to comply with the law.

We will pay reasonable costs you incur to perform the activity described in Paragraphs (1) and (2) above.

Payments under this Additional Coverage are subject to and not in addition to the applicable Limits of Insurance.

**b. Contract Penalty Clause**

(1) We will pay contract penalties you incur as a result of your failure to deliver your products or services within the time required under the terms of a written contract. But this Additional Coverage only applies if the failure is solely due to direct physical loss of or damage to property at the described premises caused by or resulting from a Covered Cause of Loss.

(2) The most we will pay under this Additional Coverage is $1,000 for the sum of all covered contract penalties arising out of all Covered Causes of Loss occurring during each separate 12 month period of this policy beginning with the effective date of this endorsement.

**c. Identity Fraud Expense**

(1) We will pay for Expenses incurred by an Insured Person as a direct result of any one Identity Fraud first discovered or learned of by such Insured Person during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are acting or abetting others against an Insured Person, is considered to be one Identity Fraud, even if a series of acts continues into a subsequent policy period.

(2) With respect to this Additional Coverage:

(a) Expenses means:

(i) Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

(ii) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(iii) Lost income resulting from:

a) Time taken off work to complete fraud affidavits; or

b) Meeting with or talking to law enforcement agencies, credit agencies or legal counsel;

up to a total payment of $5,000, subject to a maximum of $200 per day;

(iv) Loan application fees for reapplying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

(v) Reasonable attorney fees to:

a) Defend lawsuits brought against an Insured Person by merchants, vendors, suppliers, financial institutions or their collection agencies;

b) Remove any criminal or civil judgments wrongly entered against an Insured Person; or

c) Challenge the accuracy or completeness of any information in a consumer credit report;

(vi) Charges for long distance telephone calls to:

a) Merchants;

b) Law enforcement agencies;

c) Financial institutions or similar credit grantors; or

d) Credit agencies; or

(vii) Reasonable fees for professional financial advice or professional credit advice.

(b) Identity Fraud means:

The act of knowingly transferring or using, without lawful authority, a means of identification of an Insured Person with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law; and

(c) Insured Person means:

(i) For sole proprietorships:

The individual who is the sole proprietor of the Named Insured shown in the Declarations;

(ii) For partnerships:

Any individual that is a partner of the Named Insured shown in the Declarations;

(iii) For corporations or any other type of organization:

The Chief Executive Officer, and any individual who has an ownership interest of at least 20% of the Named Insured shown in the Declarations; or

(iv) For religious institutions:

The individual who is the senior pastoral "employee" of the Named Insured shown in the Declarations.

(3) The following additional exclusions apply to this Additional Coverage:

We will not pay for:

(a) Expenses incurred due to any fraudulent, dishonest or criminal act by:

(i) An Insured Person;

(ii) Any person aiding or abetting an Insured Person; or

(iii) Any authorized representative of an Insured Person;

whether acting alone or in collusion with others;

(b) Expenses incurred that are not related to the identity of an individual person or

(c) Loss other than Expenses. Account balances which arise out of fraudulent or unauthorized charges would be one example of Loss other than Expenses;

(d) An Identity Fraud discovered during such time that an individual was not an Insured Person.

(4) This Additional Coverage does not apply to Expenses otherwise covered under the Unauthorized Business Card Use Additional Coverage.

(5) Regardless of the amount of the Businessowners Property Coverage Deductible shown in the Declarations, the most we will deduct from any claim for Expenses under this Additional Coverage for any one Identity Fraud is $250.

(6) The most we will pay under this Additional

MP T3 63 03 15

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 3 of 16

Page 4 of 16

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

MP T3 63 03 15

**BUSINESSOWNERS**

Coverage is $15,000 for the sum of all covered Expenses arising out of all Identity Fraud against an Insured Person discovered during each separate 12 month period of this policy beginning with the effective date of this endorsement.

(7) In order for coverage to be provided under this Additional Coverage, you must:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for Expenses under Identity Fraud coverage.

**d. Lease Assessment**

(1) When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, we will pay for your share of any assessment charged:

(a) To all tenants by the building owner;

(b) Pursuant to a written lease agreement; and

(c) As a result of direct physical loss or damage by a Covered Cause of Loss to building property you occupy.

(2) The most we will pay for loss under this Additional Coverage is $2,500 in any one occurrence.

**e. Lost Key Consequential Loss**

(1) We will pay for consequential loss to keys and locks if a master key to buildings, rooms or compartments that are Covered Property, or house Covered Property, at the described premises is lost or damaged from a Covered Cause of Loss. We will pay for the necessary costs you incur to:

(a) Replace keys; and

(b) Either:

(i) Readjust existing locks to accept new keys; or

(ii) Replace existing locks, but only if necessary or less expensive than the cost of adjusting the existing locks.

(2) Paragraph B.2.h. does not apply to this Additional Coverage, except with respect to dishonest or criminal act by you or any of your partners, directors or trustees.

(3) Paragraph B.2.m. does not apply to this

**Additional Coverage:**

(4) The most we will pay for loss or damage under this Additional Coverage is $2,500 at each described premises.

**f. Unauthorized Business Card Use**

(1) We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of credit, debit or charge card accounts issued in your business name, including:

(a) Fund transfer cards;

(b) Charge plates; or

(c) Telephone cards.

(2) With respect to this Additional Coverage, occurrence means an act or series of related acts involving one or more persons, or an act or event, or a series of related acts or events not involving any person is considered one occurrence.

(3) The most we will pay under this Additional Coverage in any one occurrence is $5,000, regardless of the number of premises involved.

**g. Utility Services – Direct Damage**

(1) We will pay for loss of or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

(a) "Water Supply Services";

(b) "Communication Supply Services"; or

(c) "Power Supply Services".

(2) With respect to this Additional Coverage, Paragraphs G.3.b. and G.22.b are deleted.

(3) The most we will pay for loss or damage under this Additional Coverage is $25,000 at each described premises, but we will not pay more than $100,000 in any one occurrence, regardless of the number of premises involved.

(4) Payments under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.

10. The following Additional Coverage is added; but only with respect to described premises to which no Ordinance or Law – Coverage A applies other than as provided under Paragraph

**BUSINESSOWNERS**

**A.6.k.**

**Ordinance or Law – Coverage A – Coverage For Loss In the Undamaged Portion of the Building**

(1) If a Limit of Insurance is shown in the Declarations for Building, in the event of damage by a Covered Cause of Loss we will pay for loss in value of the undamaged portion of the building as a consequence of enforcement of the minimum requirements of any ordinance or law that requires the demolition of undamaged parts of the same building.

(2) The coverage provided by this Additional Coverage apply only if both (2)(a) and (2)(b) are satisfied and are then subject to the qualifications set forth in (3).

(a) The ordinance or law:

(i) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(ii) Is in force at the time of loss.

But coverage under this Additional Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

(b) (i) The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

(ii) The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

(iii) But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this Additional Coverage even if the building has

**BUSINESSOWNERS**

also sustained covered direct physical damage.

(3) In the situation described in (2)(b)(ii) above, we will not pay the full amount of loss otherwise payable under the terms of this Additional Coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of this Additional Coverage.

(4) We will not pay under this Additional Coverage for:

(a) Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot; or

(b) The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot.

(5) Specific or Blanket Insurance

(a) Specific Insurance

With respect to the building insured on a "specific insurance" basis that has sustained covered direct physical damage, we will pay under this Additional Coverage for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires removal of undamaged parts of the same building as described in paragraph (6)(b)(i) and (6)(b)(ii) below:

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

---

**BUSINESSOWNERS**

(b) Blanket Insurance

will not pay more than the lesser of:

a) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

b) The Limit of Insurance shown in the Declarations as applicable to the covered building.

(ii) If Replacement Cost coverage applies on a "specific insurance" basis and the property is not repaired or replaced, or if no optional Actual Cash Value is applicable on a "specific insurance" basis to real property, we will not pay more than the lesser of:

a) The actual cash value of the building at the time of loss; or

b) The Limit of Insurance shown in the Declarations as applicable to the covered building.

(c) Blanket Insurance

If Replacement Cost coverage applies on a "blanket insurance" basis and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

(i) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

(ii) The value individually stated for the covered building on the least statement of values on file with us. If, at the time of loss, there is no statement of values on file with us or the value for the covered

**BUSINESSOWNERS**

building or structure is not individually stated on the latest statement of values on file with us, the value of the building or structure will be determined by multiplying:

a) The total reported building and structure value; by

b) The proportion that the square footage of the individual building or structure bears to the total square footage of all buildings and structures contemplated in the total reported building and structure value.

(d) If Replacement Cost coverage applies on a "blanket insurance" basis and the property is not repaired or replaced, or if the optional Actual Cash Value is applicable on a "blanket insurance" basis to real property, we will not pay more than the lesser of:

(i) The actual cash value of the building at the time of loss; or

(ii) The value individually stated for the covered building on the latest statement of values on file with us. If, at the time of loss, there is no statement of values on file with us or the value for the building or structure is not individually stated on the latest statement of values on file with us, the value of the building or structure will be determined by multiplying:

a) The total reported building and structure value; by

b) The proportion that the square footage of the individual building or structure bears to the total square footage of all buildings and structures contemplated in the total reported building and structure value.

(7) The terms of this Additional Coverage apply separately to each building to which this Additional Coverage applies.

(8) Under this Additional Coverage we will not pay for loss due to any ordinance or law that:

(a) You were required to comply with before the loss, even if the building was undamaged; and

(b) You failed to comply with.

11. The following Coverage Extensions under Paragraph A.7. are changed as follows:

a. Business Income and Extra Expense From Dependent Property

(1) Paragraph A.7.d.(4)(a) is replaced by the following:

Applies to Dependent Property premises located worldwide, except within any country on which the United States government has imposed sanctions, embargoes, or any similar prohibition; and

(2) The limit applicable to the Coverage Extension – Business Income and Extra Expense From Dependent Property is increased from $10,000 to $50,000.

b. The limit applicable to the Coverage Extension – Business Income and Extra Expense – Newly Acquired Premises is increased from $250,000 to $500,000.

c. The expiration days applicable to the Coverage Extension – Newly Acquired or Constructed Property for Business Income and Extra Expense is increased from 90 days to 180 days.

d. Two of the limits applicable to the Coverage Extension – Electronic Data Processing are changed as follows:

(1) The limit applicable to "Electronic Data Processing Equipment" and to "Electronic Data Processing Data and Media" while in transit or at premises other than the described premises is increased from $25,000 to $75,000.

(2) The limit applicable to loss or damage to "Electronic Data Processing Data and Media" caused by or resulting from "electronic vandalism" is increased from $25,000 to $50,000.

e. The limit applicable to the Coverage Extension – Non-owned Detached Trailers is in-

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

BUSINESSOWNERS

Coverage is $15,000 for the sum of all covered Expenses arising out of all Identity Fraud against an Insured Person discovered during each separate 12 month period of this policy beginning with the effective date of this endorsement.

(7) In order for coverage to be provided under this Additional Coverage, you must:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for Expenses under Identity Fraud coverage.

**d. Lease Assessment**

(1) When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, we will pay for your share of any assessment charged:

(a) To all tenants by the building owner;

(b) Pursuant to a written lease agreement; and

(c) As a result of direct physical loss or damage by a Covered Cause of Loss to building property you occupy.

(2) The most we will pay for loss under this Additional Coverage is $2,500 in any one occurrence.

**e. Lost Key Consequential Loss**

(1) We will pay for consequential loss to keys and locks if a master key to buildings, rooms or compartments that are Covered Property, or house Covered Property, at the described premises is lost or damaged from a Covered Cause of Loss. We will pay for the necessary costs you incur to:

(a) Replace keys; and

(b) Either

(i) Readjust existing locks to accept new keys; or

(ii) Replace existing locks, but only if necessary or less expensive than the cost of adjusting the existing locks.

(2) Paragraph B.2.h. does not apply to this Additional Coverage, except with respect to dishonest or criminal act by you or any of your partners, directors or trustees.

(3) Paragraph B.2.m. does not apply to this

Additional Coverage:

(4) The most we will pay for loss or damage under this Additional Coverage is $2,500 at each described premises.

**f. Unauthorized Business Card Use**

(1) We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of credit, debit or charge card accounts issued in your business name, including:

(a) Fund transfer cards;

(b) Charge plates; or

(c) Telephone cards.

(2) With respect to this Additional Coverage, occurrence means an act or series of related acts involving one or more persons, or an act or event, or a series of related acts or events not involving any person is considered one occurrence.

(3) The most we will pay under this Additional Coverage in any one occurrence is $5,000, regardless of the number of occurrences.

**g. Utility Services – Direct Damage**

(1) We will pay for loss of or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

(a) "Water Supply Services";

(b) "Communication Supply Services"; or

(c) "Power Supply Services".

(2) With respect to this Additional Coverage, Paragraphs G.3.b. and G.22.b are deleted.

(3) The most we will pay for loss or damage under this Additional Coverage is $25,000 at each described premises, but we will not pay more than $100,000 in any one occurrence, regardless of the number of premises involved.

(4) Payments under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.

10. The following Additional Coverage is added, but only with respect to described premises to which no Ordinance or Law – Coverage A applies other than as provided under Paragraph

**A.6.k.**

**Ordinance or Law – Coverage A – Coverage For Loss to the Undamaged Portion of the Building**

(1) If a Limit of Insurance is shown in the Declarations for Building, in the event of damage by a Covered Cause of Loss we will pay for loss in value of the undamaged portion of the building as a consequence of enforcement of the minimum requirements of any ordinance or law that requires the demolition of undamaged parts of the same building.

(2) The coverage provided by this Additional Coverage apply only if both (2)(a) and (2)(b) are satisfied and are then subject to the qualifications set forth in (3).

(a) The ordinance or law:

(i) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(ii) Is in force at the time of loss.

But coverage under this Additional Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

(b) (i) The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

(ii) The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

(iii) But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this Additional Coverage even if the building has

also sustained covered direct physical damage.

(3) In the situation described in (2)(b)(iii) above, we will not pay the full amount of loss otherwise payable under the terms of this Additional Coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

However, if the covered direct physical damage alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of this Additional Coverage.

(4) We will not pay under this Additional Coverage for:

(a) Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot; or

(b) The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot.

(5) **Specific or Blanket Insurance**

(a) **Specific Insurance**

With respect to the building insured on a "specific insurance" basis that has sustained covered direct physical damage, we will pay under this Additional Coverage for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building as described in paragraph (6)(b)(i) and (6)(b)(ii) below.

© 2015 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.

© 2015 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.

---

BUSINESSOWNERS

(b) **Blanket Insurance**

With respect to the building insured on a "blanket insurance" basis that has sustained covered direct physical damage, we will pay under this Additional Coverage for the loss in value of the undamaged portion of the building that requires demolition of undamaged parts of the same building as described in paragraph (6)(c) and (6)(d) below.

(c) As used in this Additional Coverage, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance.

(d) This Additional Coverage is included in the Limit of Insurance shown in the Declarations as applicable to the covered building. This Additional Coverage does not increase the Limit of Insurance.

(6) **Loss Payment**

(a) The following loss payment provision is subject to the apportionment procedures set forth in Paragraphs (2) and (3) above.

(b) When there is a loss in value of an undamaged portion of a building to which this Additional Coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**Specific Insurance**

(i) If Replacement Cost coverage applies on a "specific insurance" basis and the property is being repaired or replaced, on the same or another premises, we

will not pay more than the lesser of:

a) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

b) The Limit of Insurance shown in the Declarations as applicable to the covered building.

(ii) If Replacement Cost coverage applies on a "specific insurance" basis and the property is not repaired or replaced, or if the optional Actual Cash Value is applicable on a "specific insurance" basis to real property, we will not pay more than the lesser of:

a) The actual cash value of the building at the time of loss; or

b) The Limit of Insurance shown in the Declarations as applicable to the covered building.

(c) **Blanket Insurance**

If Replacement Cost coverage applies on a "blanket insurance" basis and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

(i) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

(ii) The value individually stated for the covered building on file with us, if, at the time of loss, there is no statement of values on file with us or the value for the covered

building or structure is not individually stated on the latest statement of values on file with us, the value of the building or structure will be determined by multiplying:

a) The total reported building and structure value; by

b) The proportion that the square footage of the individual building or structure bears to the total square footage of all buildings and structures contemplated in that reported building and structure value.

(d) If Replacement Cost coverage applies on a "blanket insurance" basis and the property is not repaired or replaced, or if the optional Actual Cash Value is applicable on a "blanket insurance" basis to real property, we will not pay more than the lesser of:

(i) The actual cash value of the building at the time of loss; or

(ii) The value individually stated for the covered building on the latest statement of values on file with us. If, at the time of loss, there is no statement of values on file with us or the value for the covered building or structure is not individually stated on the latest statement of values on file with us, the value of the building or structure will be determined by multiplying:

a) The total reported building and structure value; by

b) The proportion that the square footage of the individual building or structure bears to the total square footage of all buildings and structures contemplated in the total reported building and structure value.

(7) The terms of this Additional Coverage apply separately to each building to which this Additional Coverage applies.

(8) Under this Additional Coverage we will not pay for loss due to any ordinance or law that:

(a) You were required to comply with before the loss, even if the building was undamaged; and

(b) You failed to comply with.

11. The following Coverage Extensions under Paragraph A.7. are changed as follows:

a. **Business Income and Extra Expense From Dependent Property**

(1) Paragraph A.7.d.(4)(a) is replaced by the following:

Applies to Dependent Property premises located worldwide, except within any country on which the United States government has imposed sanctions, embargoes, or any similar prohibition; and

(2) The limit applicable to the **Coverage Extension – Business Income and Extra Expense From Dependent Property** is increased from $10,000 to $50,000.

b. The limit applicable to the **Coverage Extension – Business Income and Extra Expense – Newly Acquired Premises** is increased from $250,000 to $500,000.

c. The expiration days applicable to the **Coverage Extension – Newly Acquired or Constructed Property** for Business Income and Extra Expense is increased from 90 days to 180 days.

d. Two of the limits applicable to the **Coverage Extension – Electronic Data Processing** are changed as follows:

(1) The limit applicable to "Electronic Data Processing Equipment" and to "Electronic Data Processing Data and Media" while in transit or at premises other than the described premises is increased from $25,000 to $75,000.

(2) The limit applicable to loss or damage to "Electronic Data Processing Data and Media" caused by or resulting from "electronic vandalism" is increased from $25,000 to $50,000.

e. The limit applicable to the **Coverage Extension – Non-owned Detached Trailers** is in-

© 2015 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.

© 2015 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.

BUSINESSOWNERS

creased from $5,000 to $25,000.

f. The limit applicable to the **Coverage Extension – Ordinance or Law – Increased "Period of Restoration"** is increased from $25,000 to $50,000.

12. The following **Coverage Extensions** are added to Paragraph **A.7.**:

a. **Business Income and Extra Expense at Client or Virtual Office Premises**

(1) When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur due to the "suspension" of your business activities occurring at a "client or virtual office premises" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage caused by or resulting from a Covered Cause of Loss at a "client or virtual office premises".

(2) With respect to this Coverage Extension, the "period of restoration" definition under Paragraph **G. PROPERTY DEFINITIONS** is replaced by the following:

"Period of Restoration" means the period of time that:

(a) Begins 24 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the "client or virtual office premises"; and

(b) Ends on the earlier of:

(i) The date when the property at the "client or virtual office premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) The date when "client or virtual office premises" is resumed at a new permanent location; and

(c) Does not include any increased period required due to the enforcement of any ordinance or law that:

(i) Regulates the construction, use or repair, or requires the tearing down of any property; or

(ii) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

(3) This Coverage Extension applies to "client or virtual office premises" located within the Coverage Territory.

(4) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume your business activities at a "client or virtual office premises" in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(5) This Coverage Extension does not apply to loss caused by or resulting from loss or damage to property:

(a) At the premises of a "dependent property";

(b) At any location to which the Business Income and Extra Expense Newly Acquired Premises Coverage Extension applies; or

(c) In the due course of transit.

(6) The most we will pay under this Coverage Extension for the sum of Business Income and Extra Expense you incur in any one occurrence is $25,000 regardless of the number of "client or virtual office premises" involved.

(7) Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.

b. **Business Personal Property at Client or Virtual Office Premises**

(1) When a Limit of Insurance is shown in the Declarations for Business Personal Property at any described premises, you may extend that insurance to apply to direct physical loss of or damage to Business Personal Property caused by or resulting from a Covered Cause of Loss while such property is located at a "client or virtual office premises".

---

BUSINESSOWNERS

(2) This Coverage Extension also applies to personal property that is:

(a) Owned by an "employee"; and

(b) Used for your business;

while such property is located at a "client or virtual office premises" and sustains direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

(3) This Coverage Extension does not apply to property:

(a) Otherwise covered under the following Additional Coverages:

(i) Blanket Coverage Limit of Insurance – Accounts Receivable;

(ii) Blanket Coverage Limit of Insurance Valuable Papers and Records; or

(iii) Fine Arts.

(b) Otherwise covered under the following Coverage Extensions:

(i) Accounts Receivable;

(ii) Business Personal Property Off Premises;

(iii) Electronic Data Processing;

(iv) Sales Representative's Samples; or

(v) Valuable Papers and Records.

(4) The most we will pay for loss or damage under this Coverage Extension in any one occurrence is $25,000 regardless of the number of "client or virtual office premises" involved.

(5) Payments under this Coverage Extension are in addition to the applicable Limits of Insurance.

c. **Civil Authority – Homicide or Suicide**

(1) When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises due to a homicide or suicide occurring at such premises.

(2) The coverage for Business Income and

---

Extra Expense will begin immediately after the time of that action and will apply for a period of one week after coverage begins.

d. **Computer Fraud and Funds Transfer Fraud**

(1) When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to:

(a) Loss of or damage to Business Personal Property resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the building at the described premises or "banking premises":

(i) To a person (other than a "messenger") outside those premises; or

(ii) To a place outside those premises.

(b) Loss of "money" and "securities" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" and "securities" from your "transfer account".

(2) With respect to the coverage provided by this Coverage Extension, Paragraph **B. Exclusions** is amended as follows:

(a) Paragraph **B.2.e.** does not apply.

(b) Paragraph **B.2.i.** does not apply.

(c) The following exclusion is added:

We will not pay for loss or damage caused by or resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

(3) With respect to this Coverage Extension, occurrence means an act or series of related acts involving one or more persons; or an act or event, or a series of related acts or events not involving any person is considered one occurrence.

(4) The most we will pay under this Coverage Extension in any one occurrence is the limit of insurance shown in the above schedule, regardless of the number of premises involved.

---

BUSINESSOWNERS

e. **Covered Leasehold Interest – Undamaged Improvements and Betterments**

(1) When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to your interest as tenant in improvements and betterments, as defined in Section **A.1.b.(3)** of this Coverage Form, which are not damaged or destroyed, but which you lose due to the cancellation of your lease by your landlord. The cancellation of your lease by your landlord must:

(a) Result from direct physical loss of or damage to property at the described premises where your improvements and betterments are located, caused by or resulting from a Covered Cause of Loss; and

(b) Be permitted in accordance with the conditions of your written lease agreement.

(2) The most we will pay in any one occurrence under this Coverage Extension is:

(a) The applicable Business Personal Property Limit of Insurance; or

(b) $25,000;

whichever is less.

f. **Deferred Payments**

(1) When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to your interest in such business personal property that is sold by you under an installment plan, conditional sale, trust agreement or other deferred payment plan when, as a result of direct physical loss of or damage to such property, you are:

(a) Occurring within the Coverage Territory at any location, or in transit; after delivery to buyers; and

(b) Caused by a Covered Cause of Loss;

the buyer refuses to continue payments owed to you for such property and, as a result, you repossess the remaining damaged property of value, if any.

(2) The value of your loss under this Coverage Extension will be determined as follows:

---

(a) In the event of partial loss to property, the value of your loss will be:

(i) The unpaid balance shown on your books as due from the buyer for such property, excluding any interest or fees due; minus

(ii) The actual cash value of the repossessed damaged property.

(b) In the event of a total loss to property, the value of your loss will be the unpaid balance shown on your books as due from the buyer for such property, excluding any interest or fees due.

(3) The following is added to **A.2. Property And Costs Not Covered**, but only with respect to this Coverage Extension.

Personal property sold by you under an installment plan, conditional sale, trust agreement or other deferred payment plan after delivery to the purchasers except as provided in the Deferred Payments Coverage Extension.

(4) The most we will pay in any one occurrence under this Coverage Extension is $25,000.

g. **Limited Building Coverage – Tenant Obligation**

(1) If:

(a) You are a tenant;

(b) A Limit of Insurance is shown in the Declarations for Business Personal Property; and

(c) You are contractually obligated to repair or replace that part of a building you occupy as a tenant;

at the described premises, you may extend that insurance to apply to direct physical loss of or damage to that part of a building you occupy as a tenant caused by or resulting from a Covered Cause of Loss other than "theft" or attempted "theft".

(2) This Coverage Extension does not apply to any otherwise covered:

(a) Building glass; or

(b) Tenants improvements and betterments as described in Paragraph **A.1.b.(3)**.

(3) The most we will pay under this Cover-

---

BUSINESSOWNERS

age Extension in any one occurrence is $50,000 at each described premises

h. **Personal Property In Transit Outside of the Coverage Territory**

(1) When the Declarations show that you have coverage for Business Personal Property you may extend that insurance to apply to direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss in transit anywhere in the world outside of the Coverage Territory provided that no sanction, embargo or similar regulation imposed by the United States of America prohibits us from covering the loss or damage.

(2) If property covered under this Coverage Extension is not delivered, we cover the return of the property to you, including while the property is temporarily held by the receiver or the carrier while awaiting return shipment to you.

(3) Subject to the Limit of Insurance indicated in paragraph **(10)** below we will also pay for:

(a) Any general average or salvage charges you incur with respect to losses to covered waterborne shipments;

(b) Your interest in covered shipments sold Free On Board if you cannot collect payment for the loss or damage from the consignee; and

(c) Loss of or damage to Covered Property resulting from the unintentional acceptance of any fraudulent Bill of Lading, order or shipping receipt by you, your "employees" or authorized representatives or by your agent, customer or consignee from anyone representing themselves to be the proper person to receive goods for shipment or accept goods for delivery.

(4) The following exclusion is added to paragraph **B.2.** but only with respect to coverage provided by this Coverage Extension:

Electrical and/or Mechanical Derangement.

(5) Paragraphs **B.1.b.** and **B.1.g.** do not apply to this Coverage Extension.

---

(6) The following is added to paragraph **B.2.h.** and **B.2.m.** but only with respect to coverage provided by this Coverage Extension:

This exclusion does not apply to property in the custody of a carrier for hire.

(7) The following is added to paragraph **B.2.l.** but only with respect to coverage provided by this Coverage Extension:

This exclusion does not apply to insurance covered under this Coverage Extension if the loss to Covered Property is caused by your acceptance, in good faith, of false bills of lading or shipping receipts.

(8) This Coverage Extension does not apply to property otherwise covered under the following:

(a) Overseas Fine Arts Additional Coverage;

(b) Electronic Data Processing Coverage Extension;

(c) Overseas Business Travel or Business Personal Property at Client or Virtual Office Premises Overseas Coverage Extension;

(d) Overseas Valuable Papers and Records Coverage Extension; or

(e) Personal Property In Transit Outside of the Coverage Territory Coverage Extension once the property has been accepted for delivery at its final destination.

(9) The following is added to **A.2. Property And Costs Not Covered**, but only with respect to this Coverage Extension. Covered Property does not include:

(a) Export and import shipments while covered under an ocean marine cargo or other insurance policy;

(b) Property of others for which you are responsible while acting as a common or contract carrier, car-loader, freight forwarder, freight consolidator, freight broker, shipping association or similar arranger of transportation, or as a public warehouseman;

(c) Property while in the following areas: Afghanistan, Burma (Myanmar), Cuba, Iran, Iraq, Jordan, Kenya, Lebanon, Libya, Nigeria, North Korea,

BUSINESSOWNERS

BUSINESSOWNERS

BUSINESSOWNERS

BUSINESSOWNERS

POLICY NUMBER: 680-0972S937-19-42

BUSINESSOWNERS
ISSUE DATE: 11/09/2015

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEWER OR DRAIN BACK UP EXTENSION

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

### SCHEDULE

**Limit of Insurance** $ 25000

The following is added to Paragraph A. 7. Coverage Extensions.

**Water or Sewage Back Up and Sump Overflow**

(1) When the Declarations show that you have coverage for Building or Business Personal Property, you may extend that insurance to apply to direct physical loss of or damage to Covered Property at the described premises caused by or resulting from water or sewage that backs up or overflows from a sewer, drain or sump.

(2) When the Declarations show that you have coverage for Business Income and Extra Expense.

you may also extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by or resulting from water or sewage that backs up or overflows from a sewer, drain or sump.

(3) Paragraph B.1.g.(2) does not apply to this Coverage Extension

(4) The most we will pay under this Coverage Extension in any one occurrence at each described premises is the Limit of Insurance shown in the Schedule above.

MP T3 06 02 07

©2007 The Travelers Companies, Inc.

Page 1 of 1

---

POLICY NUMBER: 680-0972S937-19-42

BUSINESSOWNERS
ISSUE DATE: 11/05/2015

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BUILDING OWNERS ENDORSEMENT

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

### SCHEDULE

| Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. |
|---|---|---|---|---|---|---|---|---|---|
| 001 | 001 | | | | | | | | |

Schedule of Limits of Insurance under Paragraph A.2: of this endorsement:

$  100,000 in any one occurrence at each described premises

$  250,000 in any one occurrence regardless of the number of described premises involved

A. The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:

1. The limit applicable to the Additional Coverage — Debris Removal, as referenced in Paragraph A.6.c.(4), is increased from $25,000 to $50,000.

2. Paragraph A.6.k.(6) is replaced by the following:

   (6) The most we will pay for loss under this Additional Coverage for the total of all coverages described in Paragraph (1) above in any one occurrence is the amount shown in the above Schedule, at each described premises. But, we will not pay more than the amount shown in the above Schedule, in any one occurrence regardless of the number of described premises involved.

3. The following Additional Coverages are added.

   a. Lessor's Leasehold Interest

      (1) We will pay for the cost of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by your tenants. The cancellation must result from direct physical loss of or damage to your Covered Property at

the premises described in the Schedule above caused by or resulting from a Covered Cause of Loss during the term of the policy.

(2) Covered Leasehold Interest:

   (a) Means the difference between the:

      (i) Rent you were collecting at the described premises prior to the loss; and

      (ii) "Rental Value" of the described premises after loss or damage has been repaired or rebuilt; and

   (b) Does not mean refunds or rebates of:

      (i) Prepaid rent;

      (ii) Security or other deposits made by your tenants; or

      (iii) Insurance, taxes or other payments made on your behalf by your tenants; or

(3) The most we will pay under this Additional Coverage is the smallest of:

   (a) Your Covered Leasehold Interest for the 12 months immediately

MP T1 71 04 09

Copyright, The Travelers Indemnity Company. 2009

Page 1 of 2

---

BUSINESSOWNERS

following the "Period of Restoration" plus the 60 days of Extended Business Income but ending with the normal expiration date of each canceled lease; or

(b) $25,000 for all Covered Leasehold Interest of all your tenants canceling their leases arising out of an occurrence at a described premises.

b. Tenant Move Back Expenses

(1) We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at the premises described in the Schedule above. The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct physical loss of or damage to your Covered Property caused by or resulting from a Covered Cause of Loss during the term of the policy. The move back must take place within 60 days after the portion of the building rented by your tenant has been repaired or re-built and is ready for occupancy.

(2) Covered Move Back Costs means only documented, reasonable and necessary costs of:

   (a) Packing, insuring and transporting business personal property;

   (b) Re-establishing electric utility and communication services, less refunds from discontinued services;

   (c) Assembling and setting up fixtures and equipment; or

(d) Unpacking and reshelving stock and supplies.

(3) If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

(4) The most we will pay under this Additional Coverage is $25,000 for the sum of all such expenses arising out of an occurrence at a described premises.

c. Utility Services – Direct Damage

(1) We will pay for loss of or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

   (a) "Water Supply Services";

   (b) "Communication Supply Services"; or

   (c) "Power Supply Services".

(2) The most we will pay for loss or damage under this Additional Coverage in any one occurrence is $10,000 at each described premises.

(3) Payments under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.

4. The limit applicable to the Coverage Extension – Ordinance or Law – Increased "Period of Restoration" is increased by $50,000.

Copyright, The Travelers Indemnity Company. 2009

MP T1 71 04 09

---

**GENERAL LIABILITY**

**GENERAL LIABILITY**

---

TABLE OF CONTENTS

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### CG T1 00 02 19

SECTION I – COVERAGES

Coverage A –
  Bodily Injury and Property
  Damage Liability          Insuring Agreement ................................................. 1
                            Exclusions ............................................................ 2
Coverage B –
  Personal and Advertising
  Injury Liability          Insuring Agreement ................................................. 6
                            Exclusions ............................................................ 6
Coverage C –
  Medical Payments          Insuring Agreement ................................................. 9
                            Exclusions ............................................................ 9
Supplementary Payments ................................................................................. 10
SECTION II – WHO IS AN INSURED ............................................................... 11
SECTION III – LIMITS OF INSURANCE ........................................................... 11
SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS ................ 13
  Bankruptcy .................................................................................................. 13
  Duties In The Event Of Occurrence, Offense, Claim Or Suit ...................... 13
  Legal Action Against Us ............................................................................. 14
  Other Insurance ......................................................................................... 14
  Premium Audit ............................................................................................ 15
  Representations .......................................................................................... 16
  Separation Of Insureds .............................................................................. 16
  Transfer Of Rights Of Recovery Against Others To Us .............................. 16
  When We Do Not Renew ............................................................................ 16
SECTION V – DEFINITIONS ............................................................................ 16

CG T0 34 02 19

---

COMMERCIAL GENERAL LIABILITY

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### SECTION I – COVERAGES

#### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract", provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "bodily injury" or "property damage", provided that:

        (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    (1) Causing or contributing to the intoxication of any person;

    (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

    (1) An "employee" of the insured arising out of and in the course of:

        (a) Employment by the insured; or

        (b) Performing duties related to the conduct of the insured's business; or

    (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

            (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that

COMMERCIAL GENERAL LIABILITY

COMMERCIAL GENERAL LIABILITY

COMMERCIAL GENERAL LIABILITY

COMMERCIAL GENERAL LIABILITY

CG T1 00 02 19

Page 3 of 21

Page 4 of 21

CG T1 00 02 19

CG T1 00 02 19

Page 5 of 21

Page 6 of 21

CG T1 00 02 19

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

This exclusion does not apply to "personal injury" caused by malicious prosecution.

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Or Used Prior To Policy Period**

(1) "Personal and advertising injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period; or

(2) "Personal injury" arising out of infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Because of "personal injury" assumed by you in a contract or agreement that is an "insured contract", provided that the "personal injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal injury", provided that:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party

against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**f. Breach Of Contract**

"Advertising injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Intellectual Property**

"Personal and advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

(1) Copyright;
(2) Patent;
(3) Trade dress;
(4) Trade name;
(5) Trademark;
(6) Trade secret; or
(7) Other intellectual property rights or laws.

This exclusion does not apply to:

(1) "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

(2) Any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" caused by an offense committed by an insured whose business is:

(1) Advertising, "broadcasting" or publishing;

COMMERCIAL GENERAL LIABILITY

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs a.(1), (2) and (3) of the definition of "personal injury".

For the purposes of this exclusion:

(1) Creating and producing correspondence written in the conduct of your business, bulletins, financial or annual reports, or newsletters about your goods, products or services will not be considered the business of publishing; and

(2) The placing of frames, borders or links, or advertising, for you or others anywhere on the Internet will not, by itself, be considered the business of advertising, "broadcasting" or publishing.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts or owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or

neutralizing, or in any way responding to or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury" arising out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Unsolicited Communication**

"Personal and advertising injury" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

**q. Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**r. Asbestos**

(1) "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the "personal and advertising injury" is caused or contributed to by the hazardous properties of asbestos.

(2) "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, and that are part of any claim or "suit" which also alleges any "personal and advertising injury" described in Paragraph (1) above.

(3) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or

COMMERCIAL GENERAL LIABILITY

assess the effects of, asbestos, asbestos fibers or products containing asbestos; or

(b) Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, asbestos fibers or products containing asbestos.

**s. Employment-Related Practices**

"Personal injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practice, policy, act or omission, such as coercion, demotion, evaluation, reassignment, discipline, failure to promote or advance, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment applied to or directed at that person, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person to whom any of the employment-related practices described in Paragraph (a), (b), or (c) above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "personal injury".

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

COMMERCIAL GENERAL LIABILITY

**SUPPLEMENTARY PAYMENTS**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been

assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverages – Coverage A – Bodily Injury And Property Damage Liability or Paragraph 2.e. of Section I – Coverages – Coverage B – Personal And Advertising Injury Liability, such payments will not be deemed to be damages for "bodily injury", "property damage" or "personal injury", and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

COMMERCIAL GENERAL LIABILITY

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer

   workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   Unless you are in the business or occupation of providing professional health care services, Paragraphs (1)(a), (b), (c) and (d) above do not apply to "bodily injury" arising out of providing or failing to provide first aid or "Good Samaritan services" by any of your "employees" or "volunteer workers", other than an employee or volunteer doctor. Any such "employees" or "volunteer workers" providing or failing to provide first aid or "Good Samaritan services" during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

   e. Any person or organization that, with your express or implied consent, either uses or is responsible for the use of a watercraft that you do not own that is:

      (1) 50 feet long or less; and

      (2) Not being used to carry any person or property for a charge.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and of which you are the sole owner or in which you maintain an ownership interest of more than 50%, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

For the purposes of Paragraph 1. of Section II – Who Is An Insured, each such organization will be deemed to be designated in the Declarations as:

   a. An organization, other than a partnership, joint venture or limited liability company; or

   b. A trust;

as indicated in its name or the documents that govern its structure.

4. Any person or organization that is a premises owner, manager or lessor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part as an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" that:

   a. Is "bodily injury" or "property damage" that occurs, or is "personal and advertising injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement, and

   b. Arises out of the ownership, maintenance or use of that part of any premises leased to you.

The insurance provided to such premises owner, manager or lessor is subject to the following provisions:

   a. The limits of insurance provided to such premises owner, manager or lessor will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

   b. The insurance provided to such premises owner, manager or lessor does not apply to:

      (1) Any "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense that is committed, after you cease to be a tenant in that premises; or

      (2) Structural alterations, new construction or demolition operations performed by or on behalf of such premises owner, manager or lessor.

5. Any person or organization that is an equipment lessor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" that:

   a. Is "bodily injury" or "property damage" that occurs, or is "personal and advertising injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement; and

   b. Is caused, in whole or in part, by your acts or omissions in the maintenance, operation or use of equipment leased to you by such equipment lessor.

The insurance provided to such equipment lessor is subject to the following provisions:

   a. The limits of insurance provided to such equipment lessor will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

   b. The insurance provided to such equipment lessor does not apply to any "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense that is committed, after the equipment lease expires.

No person (or organization) is an insured with respect to the conduct of any current or past partnership, joint

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

---

COMMERCIAL GENERAL LIABILITY

venture or limited liability company that is not shown as a Named Insured in the Declarations. This paragraph does not apply to any such partnership, joint venture or limited liability company that otherwise qualifies as an insured under Section II – Who Is An Insured.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and "advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in providing or failing to provide first aid or "Good Samaritan services" to any one person will be deemed to be one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "premises damage" to any one premises. The Damage To Premises Rented To You Limit will be:

   a. The amount shown for the Damage To Premises Rented To You Limit in the Declarations of this Coverage Part; or

   b. $300,000 if no amount is shown for the Damage To Premises Rented To You Limit in the Declarations of this Coverage Part.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

   e. The following provisions apply to Paragraph a. above, but only for purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph 1. or 2. of Section II – Who Is An Insured:

      (1) Notice to us of such "occurrence" or offense must be given as soon as practicable only after the "occurrence" or offense is known to you (if you are an individual), any of your partners or members who is an individual (if you are a partnership or joint venture), any of your managers who is an individual (if you are a limited liability company), any of your "executive officers" or directors (if you are an organization other than a partnership, joint venture, or limited liability company), any of your trustees who is an individual (if you are a trust) or any "employee" authorized by you to give notice of an "occurrence" or offense.

      (2) If you are a partnership, joint venture, limited liability company or trust, and none of your partners, joint venture members, managers or trustees are individuals, notice to us of such "occurrence" or offense must be given as soon as practicable only after the "occurrence" or offense is known by:

      (a) Any individual who is a partner or member of any partnership or joint venture;

      (b) Any manager of any limited liability company;

      (iii) An executive officer or director of any other organization; or

      (iv) A trustee of any trust;

      that is your partner, joint venture member, manager or trustee; or

      (b) Any employee authorized by such partnership, joint venture, limited liability company, trust or other organization to give notice of an "occurrence" or offense.

      (3) Notice to us of such "occurrence" or offense will be deemed to be given as soon as practicable if it is given in good faith as soon as practicable to your workers' compensation insurer. This applies only if you subsequently give notice to us of the "occurrence" or offense as soon as practicable after any of the persons described in Paragraph e.(1) or (2) above discovers that the "occurrence" or offense may result in sums to which the insurance provided under this Coverage Part may apply.

      However, if this policy includes an endorsement that provides limited coverage for "bodily injury" or "property damage" or pollution costs arising out of a discharge, release or escape of "pollutants" which contains a requirement that the discharge, release or escape of "pollutants" must be reported to us within a specific number of days after its abrupt commencement, this Paragraph e. does not affect that requirement.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**4. Other Insurance**

If valid and collectible other insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

(1) Another insurance company;

(2) Us or any of our affiliated insurance companies, except when the Non cumulation of Each Occurrence Limit provision of Paragraph 5. of Section III – Limits Of Insurance or the Non cumulation of Personal and Advertising Injury Limit provision of Paragraph 4. of Section III – Limits of Insurance applies because the Amendment – Non Cumulation Of Each Occurrence Limit Of Liability And Non Cumulation Of Personal And Advertising Injury Limit endorsement is included in this policy;

(3) Any risk retention group; or

(4) Any self-insurance method or program, in which case the insured will be deemed to be the provider of other insurance.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

As used anywhere in this Coverage Part, other insurer means a provider of other insurance. As used in Paragraph c. below, insurer means a provider of insurance.

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below, except when Paragraph **d.** below applies.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is insurance for "premises damage";

(iii) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to any exclusion in this Coverage Part that applies to aircraft, "autos" or watercraft;

(iv) That is insurance available to a premises owner, manager or lessor that qualifies as an insured under Paragraph 4. of Section II – Who Is An Insured, except when Paragraph d. below applies; or

(v) That is insurance available to an equipment lessor that qualifies as an insured under Paragraph 5. of Section II – Who Is An Insured, except when Paragraph d. below applies.

(b) Any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

COMMERCIAL GENERAL LIABILITY

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**d. Primary And Non-Contributory Insurance If Required By Written Contract**

If you specifically agree in a written contract or agreement that the insurance afforded to an insured under this Coverage Part must apply on a primary basis, or a primary and non-contributory basis, this insurance is primary to other insurance that is available to such insured which covers such insured as a named insured, and we will not share with that other insurance, provided that:

(1) The "bodily injury" or "property damage" for which coverage is sought occurs; and

(2) The "personal and advertising injury" for which coverage is sought is caused by an offense that is committed;

subsequent to the signing of that contract or agreement by you.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

CG T1 00 02 19    © 2017 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 15 of 21

Page 16 of 21    © 2017 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CG T1 00 02 19

COMMERCIAL GENERAL LIABILITY

2. "Advertising injury":

**a.** Means injury caused by one or more of the following offenses:

(1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

(2) Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

(a) Appropriates a person's name, voice, photograph or likeness; or

(b) Unreasonably places a person in a false light; or

(3) Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

3. "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

4. "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person; or

**b.** Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

5. "Broadcasting" means transmitting any audio or visual material for any purpose.

**a.** By radio or television; or

**b.** In, by or with any other electronic means of communication, such as the Internet, if that material is part of:

(1) Radio or television programming being transmitted;

(2) Other entertainment, educational, instructional, music or news programming being transmitted; or

(3) Advertising transmitted with any of such programming.

6. "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above, or in a settlement we agree to.

7. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

COMMERCIAL GENERAL LIABILITY

10. "Good Samaritan services" means any emergency medical services for which no compensation is demanded or received.

11. "Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

12. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

13. "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "premises damage" is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle,

tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection, architectural or engineering activities.

14. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

15. "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

16. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

CG T1 00 02 19    © 2017 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 17 of 21

Page 18 of 21    © 2017 The Travelers Indemnity Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CG T1 00 02 19

COMMERCIAL GENERAL LIABILITY

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged. Such land vehicles are considered "autos".

**17.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** An act or omission committed in providing or failing to provide first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

**18.** "Personal and advertising injury" means "personal injury" or "advertising injury".

**19.** "Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

**(5)** Oral or written publication, including publication by electronic means, of material that:

**(a)** Appropriates a person's name, voice, photograph or likeness; or

**(b)** Unreasonably places a person in a false light.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

**20.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

COMMERCIAL GENERAL LIABILITY

**21.** "Premises" means:

**a.** With respect to the first paragraph of the exceptions in Exclusion **j.** of Section I – Coverage A – Bodily Injury And Property Damage Liability, "property damage" to any premises while rented to you for a period of seven or fewer consecutive days, including the contents of such premises; or

**b.** With respect to the exception to Exclusions **c.** through **n.** in the last paragraph of Paragraph **2.** of Section I – Coverage A – Bodily Injury And Property Damage Liability, "property damage" to any premises while rented to you for a period of more than seven consecutive days, or while temporarily occupied by you with permission of the owner, caused by:

**(1)** Fire;

**(2)** Explosion;

**(3)** Lightning;

**(4)** Smoke resulting from fire, explosion or lightning; or

**(5)** Water.

But "premises damage" under this Paragraph **b.** does not include "property damage" to any premises caused by:

**(1)** Rupture, bursting, or operation of pressure relief devices;

**(2)** Rupture or bursting due to expansion or swelling of the contents of any building or structure caused by or resulting from water; or

**(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines.

**22.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your

contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**(3)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured.

**(3)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**23.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**24.** "Slogan":

**a.** Means a phrase that others use for the purpose of attracting attention in their advertising.

**b.** Does not include a phrase used as, or in, the name of:

**(1)** Any person or organization, other than you; or

**(2)** Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

---

COMMERCIAL GENERAL LIABILITY

**25.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**26.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**27.** "Title" means a name of a literary or artistic work.

**28.** "Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

**29.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**30.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**31.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

---

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDATORY ENDORSEMENT – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces Paragraph **b.(3)** of the definition of "products-completed operations hazard" in the DEFINITIONS Section:

**(3)** Products or operations for which the classification, listed in the Declarations, in a policy Schedule or in the manual of rules, states that the products-completed operations are subject to the General Aggregate Limit.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# XTEND ENDORSEMENT FOR SMALL BUSINESSES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

A.  Who Is An Insured – Unnamed Subsidiaries.

B.  Who Is An Insured – Employees And Volunteer Workers – Bodily Injury To Co-Employees And Co-Volunteer Workers

C.  Who Is An Insured – Newly Acquired Or Formed Limited Liability Companies

D.  Incidental Medical Malpractice

E.  Blanket Waiver Of Subrogation

## PROVISIONS

### A.  WHO IS AN INSURED – UNNAMED SUBSIDIARIES

The following is added to **SECTION II – WHO IS AN INSURED**:

Any of your subsidiaries, other than a partnership or joint venture, that is not shown as a Named Insured in the Declarations is a Named Insured if:

a.  You are the sole owner of, or maintain an ownership interest of more than 50% in, such subsidiary on the first day of the policy period; and

b.  Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal and advertising injury" caused by an offense committed:

a.  Before you maintained an ownership interest of more than 50% in such subsidiary; or

b.  After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

For purposes of Paragraph 1. of Section II – Who Is An Insured, each such subsidiary will be deemed to be designated in the Declarations as:

a.  A limited liability company;

b.  An organization other than a partnership, joint venture or limited liability company; or

c.  A trust;

as indicated in its name or the documents that govern its structure.

### B.  WHO IS AN INSURED – EMPLOYEES AND VOLUNTEER WORKERS – BODILY INJURY TO CO-EMPLOYEES AND CO-VOLUNTEER WORKERS

The following is added to Paragraph 2.a.(1) of **SECTION II – WHO IS AN INSURED**:

Paragraphs (1)(a), (b) and (c) above do not apply to "bodily injury" to a co-"employee" while in the course of the co-"employee's" employment by you or performing duties related to the conduct of your business, or to "bodily injury" to your other "volunteer workers" while performing duties related to the conduct of your business.

### C.  WHO IS AN INSURED – NEWLY ACQUIRED OR FORMED LIMITED LIABILITY COMPANIES

1.  The following replaces the first sentence of Paragraph 3. of **SECTION II – WHO IS AN INSURED**:

Any organization you newly acquire or form, other than a partnership or joint venture, and of which you are the sole owner or in which you maintain an ownership interest of more than 50%, will qualify as a Named Insured if

---

COMMERCIAL GENERAL LIABILITY

there is no other similar insurance available to that organization.

2.  The following replaces the last sentence of Paragraph 3. of **SECTION II – WHO IS AN INSURED**:

For the purposes of Paragraph 1. of Section II – Who Is An Insured, each such organization will be deemed to be designated in the Declarations as:

a.  A limited liability company;

b.  An organization other than a partnership, joint venture, or limited liability company; or

c.  A trust;

as indicated in its name or the documents that govern its structure.

### D.  INCIDENTAL MEDICAL MALPRACTICE

1.  The following replaces Paragraph b. of the definition of "occurrence" in the **DEFINITIONS** Section:

b.  An act or omission committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

2.  The following replaces the last paragraph of Paragraph 2.a.(1) of **SECTION II – WHO IS AN INSURED**:

Paragraphs (1)(a), (b) and (d) above do not apply to "bodily injury" arising out of providing or failing to provide:

(a)  "Incidental medical services" by any of your "employees" who is a nurse, nurse assistant, emergency medical technician, paramedic, athletic trainer, audiologist, dietician, nutritionist, occupational therapist or occupational therapy assistant, physical therapist or speech-language pathologist; or

(b)  First aid or "Good Samaritan services" by any of your "employees" or "volunteer workers", other than an employed or volunteer doctor. Any such "employees" or "volunteer workers" providing or failing to provide first aid or "Good Samaritan services" during their work hours for you will be deemed to be acting within the

scope of their employment by you or performing duties related to the conduct of your business.

3.  The following replaces the last sentence of Paragraph 5. of **SECTION II – LIMITS OF INSURANCE**:

For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to any one person will be deemed to be one "occurrence".

4.  The following exclusion is added to Paragraph 2., **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Sale Of Pharmaceuticals**

"Bodily injury" or "property damage" arising out of the violation of a penal statute or ordinance relating to the sale of pharmaceuticals committed by, or with the knowledge or consent of, the insured.

5.  The following is added to the **DEFINITIONS** Section:

"Incidental medical services" means:

a.  Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages; or

b.  The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances.

6.  The following is added to Paragraph 4.b., **Excess Insurance**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

This insurance is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to any of your "employees" for "bodily injury" that arises out of providing or failing to provide "incidental medical services" to any person to the extent not subject to Paragraph 2.a.(1) of Section II – Who Is An Insured.

### E.  BLANKET WAIVER OF SUBROGATION

The following is added to Paragraph 8., **Transfer Of Rights Of Recovery Against Others To Us**,

---

COMMERCIAL GENERAL LIABILITY

of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of:

a.  "Bodily injury" or "property damage" that occurs; or

b.  "Personal and advertising injury" caused by an offense that is committed;

subsequent to the execution of the contract or agreement.

---

POLICY NUMBER: 680-08729897-19-42

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 11/05/2019

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NONOWNED AUTO LIABILITY – NEW JERSEY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown.

| COVERAGE | ADDITIONAL PREMIUM |
|---|---|
| Hired Auto Liability | $ INCLUDED |
| Nonowned Auto Liability | $ INCLUDED |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## PROVISIONS

### A.  COVERAGE

If a premium charge is shown in the SCHEDULE above, the insurance provided under **Section I – Coverage A – Bodily Injury And Property Damage Liability** applies to "bodily injury" and "property damage" arising out of the maintenance or use of a "hired auto" or "nonowned auto". Maintenance or use of a "nonowned auto" includes test driving in connection with an "auto business".

### B.  EXCLUSIONS

With respect to the insurance provided by this endorsement:

1.  The exclusions under **Section I – Coverage A – Bodily Injury And Property Damage Liability**, other than exclusions a., b., d., e., f. and i. and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

a.  "Bodily injury" to:

(1)  Any fellow "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; or

(b)  Performing duties related to the conduct of the insured's business;

b.  "Property damage" to:

(1)  Property owned or being transported by, or rented or loaned to the insured; or

(2)  Property in the care, custody or control of the insured.

### C.  WHO IS AN INSURED

**Section II – Who Is An Insured** is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

1.  You;

2.  Anyone else including any partner or "executive officer" of yours, while using with your permission a "hired auto" or a "nonowned auto" except:

a.  The owner or lessee of whom you are a sublessee) of a "hired auto" or the owner or lessee of a "nonowned auto" or any agent or "employee" of any such owner or lessee;

b.  Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household;

c.  Your "employee" if the covered "auto" is leased, hired or rented by him or her or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

COMMERCIAL GENERAL LIABILITY

**d.** Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

**e.** Any partner or "executive officer" with respect to any "auto" leased or rented to such partner or officer or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

**f.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**g.** Anyone other than your "employees", partners, a lessee or borrower or any of their "employees", while moving property to or from a "hired auto" or a "non-owned auto"; or

**3.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under **1.** or **2.** above.

**D. AMENDED DEFINITIONS**

The Definition of "insured contract" of **Section V – Definitions** is amended by the addition of the following exceptions to paragraph f.

Paragraph **f.** does not include that part of any contract or agreement:

**(4)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(5)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**E. ADDITIONAL DEFINITIONS**

**Section V – Definitions** is amended by the addition of the following definitions:

**1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include:

**a.** Any "auto" you lease, hire or rent under a lease or rental agreement for a period of 180 days or more, or

**b.** Any "auto" you lease, hire, rent or borrow from any of your "employees", partners, stockholders, or members of their households.

**3.** "Nonowned auto" means any "auto" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business at the time of an "occurrence". This includes "autos" owned by your "employees" or partners or members of their households but only while being used in the course and scope of your business at the time of an "occurrence".

If you are a sole proprietor, "nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business or personal affairs at the time of an "occurrence".

**F. EXCLUSION EXCEPTION**

With respect to coverage provided by this endorsement for "hired autos" or "nonowned autos" licensed or principally garaged in New Jersey, Exclusion **f.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A.39:6B-1.

**G. LIMITS OF INSURANCE**

**Section III – Limits Of Insurance**, paragraph **2.b.** is changed to read:

**b.** Damages under **Section I – Coverage A – Bodily Injury And Property Damage Liability** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" or the use of "autos" to the extent not subject to Exclusion **g.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**; and

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
MP T4 69 11 03

---

POLICY NUMBER: 680-0B725897-19-42
COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 11/05/2019

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION – EXCEPTION FOR SCHEDULED PREMISES OR ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE OF PREMISES OR ACTIVITIES**

Description of Premises or Activities:

ALL ACTIVITIES WHICH DO NOT GENERATE REVENUE TO ANY INSURED.

**PROVISIONS**

The following replaces Exclusion **c.**, Liquor Liability, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

  **(a)** Requires a license;

  **(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

---

COMMERCIAL GENERAL LIABILITY

This exclusion does not apply to "bodily injury" or "property damage" arising out of:

**(i)** The selling, serving or furnishing of alcoholic beverages at any specified activities described in the Schedule Of Premises Or Activities; or

**(ii)** Permitting any person to bring any alcoholic beverages on any premises described in the Schedule Of Premises Or Activities, for consumption on any premises described in the Schedule Of Premises Or Activities.

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

---

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Discrimination**

"Bodily injury" arising out of discrimination based upon a person's sex, sexual orientation, marital status, pregnancy, race, color, creed, religion, national origin, citizenship, veteran status, age, genetic information or physical or mental disability, or any other characteristic, attribute, trait, condition or status that qualifies a person for protection against discrimination under federal, state or local law.

**2.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Discrimination**

"Personal injury" arising out of discrimination based upon a person's sex, sexual orientation, marital status, pregnancy, race, color, creed, religion, national origin, citizenship, veteran status, age, genetic information or physical or mental disability, or any other characteristic, attribute, trait, condition or status that qualifies a person for protection against discrimination under federal, state or local law.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.



CYBERFIRST ESSENTIALS                    CYBERFIRST ESSENTIALS

---

**TRAVELERS**                    One Tower Square, Hartford, Connecticut 06183

CYBERFIRST ESSENTIALS                              POLICY NO.: 680-0B725897-19-42
COVERAGE PART DECLARATIONS                         ISSUE DATE: 11-05-19

**THIS COVERAGE IS PROVIDED ON A CLAIMS-MADE BASIS. DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE.**

INSURING COMPANY: TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

Policy Period:  From  12-15-19 to 12-15-20   12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

Information Security Retroactive Date:  12-15-15

The CyberFirst Essentials Coverage Part consists of these Declarations, the CyberFirst Essentials General Provisions Form and the Coverage Form shown below.

ITEM 1.   COVERAGE
          CYBERFIRST ESSENTIALS INFORMATION SECURITY LIABILITY COVERAGE FORM

ITEM 2.   LIMITS OF INSURANCE:
          Aggregate Limit                                          $ 25,000
          Each Wrongful Act Limit                                  $ 25,000

ITEM 3.   DEDUCTIBLE:
          Each Wrongful Act Deductible                             $ 0

ITEM 4.   NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.

---

POLICY NUMBER: 680-0B725897-19-42                     CYBER LIABILITY
                                                      ISSUE DATE: 11-05-19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BREACH ESSENTIALS ENDORSEMENT

This endorsement modifies insurance provided under the following:

CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM
CYBERFIRST ESSENTIALS INFORMATION SECURITY LIABILITY COVERAGE FORM

**SCHEDULE OF CYBER FIRST-PARTY LIMIT AND DEDUCTIBLE**

|  | Limit | Deductible |
|---|---|---|
| Cyber First-Party Limit and Deductible | $ 10,000 | $ 0 |

**PROVISIONS**

**A. INTRODUCTION**

The following is added to the Introductory Note in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

**THE LIMITS OF INSURANCE WILL BE REDUCED BY THE PAYMENT OF YOUR SECURITY BREACH NOTIFICATION AND REMEDIATION EXPENSES, YOUR PAYMENT CARD EXPENSES AND YOUR CRISIS MANAGEMENT SERVICE EXPENSES COVERED BY YOUR CYBERFIRST ESSENTIALS INFORMATION SECURITY LIABILITY COVERAGE FORM.**

**B. CYBER FIRST-PARTY COVERAGES**

1. The following is added to Paragraph **1., Insuring Agreement, of SECTION I – INFORMATION SECURITY LIABILITY COVERAGE** in the **CYBERFIRST ESSENTIALS INFORMATION SECURITY LIABILITY COVERAGE FORM**:

   **Security Breach Notification And Remediation Expenses And Payment Card Expenses Coverage**

   We will reimburse you for loss to which this insurance applies that is "your security breach notification and remediation expenses" or "your payment card expenses" directly attributed to a "security breach" that:

   (1) Is caused by an "information security wrongful act" committed on or after the Information Security Retroactive Date shown in the Declarations of this Coverage Part and before the end of the policy period;

   (2) Occurs during the policy period; and

   (3) Is first reported to us during the policy period or within 90 days after the end of the policy period.

   But we will not reimburse you for "your payment card expenses" that are "payment card contract penalties" or "chargebacks" unless you have agreed to pay such "payment card contract penalties" or "chargebacks" in a "merchant service agreement" you entered into before such "security breach" occurred.

   Each "security breach" in a series of "related security breaches" will be deemed to occur on the date the first "security breach" in that series occurs.

   A "security breach" will be deemed to have been first reported to us on the date that we first receive a written notice of such "security breach" from any insured or any authorized government entity.

   In the event of a "foreign cyber first-party loss" that is "your security breach notification and remediation expenses" or "your payment card expenses" incurred and paid by a "foreign insured organization", we will reimburse the first Named Insured, or any other Named Insured that is not a "foreign insured organization", for such "foreign cyber first-party loss" because of its "financial interest" in that "foreign insured organization". For purposes of this insurance:

   (1) "Your security breach notification and remediation expenses" and remediation expenses as "foreign cyber first-party loss" will be deemed to be "your security breach notification and remediation expenses";

CYBER LIABILITY

**(2)** "Your payment card expenses" that we reimburse as "foreign cyber first-party loss" will be deemed to be "your payment card security expenses"

under this **Security Breach Notification and Remediation Expenses And Payment Card Expenses Coverage**.

**Crisis Management Service Expenses Coverage**

We will reimburse you for "your crisis management service expenses" that:

**(1)** Arise out of loss to which this insurance applies that is caused by an "information security wrongful act" committed on or after the Information Security Retroactive Date shown in the Declarations of this Coverage Part and before the end of the policy period;

**(2)** Are first incurred by you during the policy period; and

**(3)** Are reported to us during the policy period or within 60 days after the end of the policy period.

Each "information security wrongful act" in a series of "related information security wrongful acts" will be deemed to have been committed on the date the first "information security wrongful act" in that series is committed.

Any of "your crisis management service expenses" that:

**(1)** Are first incurred by you after the end of the policy period; and

**(2)** Relate to any of "your crisis management service expenses" that are first incurred by you during the policy period;

will be deemed to have been incurred by you during the policy period.

In the event of a "foreign cyber first-party loss" that is "your crisis management service expenses" incurred and paid by a "foreign insured organization", we will reimburse the first Named Insured, or any other Named Insured that is not a "foreign insured organization", for such "foreign cyber first-party loss" because of its "financial interest" in that "foreign insured organization". For purposes of this insurance, "your crisis management service expenses" that we reimburse as "foreign cyber first-party loss" will be deemed to be "your crisis management service expenses"

under this Crisis Management Service Expenses Coverage.

**2.** The following replaces the third paragraph of Paragraph **1.a. Defense Of Claims Or Suits** of **SECTION I – COVERAGE** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

We may, at our discretion, investigate any "wrongful act" or "claim" and settle any "claim" or "suit". But our right and duty to defend ends when we have used up the:

**a.** Aggregate Limit in the payment of:
   **(1)** Judgments, settlements or "defense expenses"; and
   **(2)** Loss that is "your cyber first-party loss"; or

**b.** Each Wrongful Act Limit in the payment of judgments, settlements or "defense expenses".

**3.** The following replaces the last paragraph of Paragraph **2. Supplementary Payments** of **SECTION I – COVERAGE** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

Our duty to make such payments ends when we have used up the:

**a.** Aggregate Limit in the payment of:
   **(1)** Judgments, settlements or "defense expenses"; and
   **(2)** Loss that is "your cyber first-party loss"; or

**b.** Each Wrongful Act Limit in the payment of judgments, settlements or "defense expenses".

**4.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – INFORMATION SECURITY LIABILITY COVERAGE** in the **CYBERFIRST ESSENTIALS INFORMATION SECURITY LIABILITY COVERAGE FORM**:

**PCI Attestation Of Compliance**

"Your payment card expenses" if:

**(1)** You have not attested compliance with the "payment card security standards" by completing and signing a "PCI attestation of compliance" within the twelve months immediately preceding the "security breach"; or

**(2)** You fraudulently or intentionally misrepresent that you are in compliance with the "payment card security standards" in completing the "PCI attestation of compliance".

**C. LIMITS OF INSURANCE**

**1.** The following is added to **SECTION III – LIMITS OF INSURANCE** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

Subject to the Aggregate Limit, the Cyber First-Party Limit shown in the Schedule Of Cyber First-Party Limit And Deductible is the most we will pay for the sum of all loss that is "your cyber first-party loss".

**2.** The following replaces the first paragraph of Paragraph **2.** of **SECTION III – LIMITS OF INSURANCE** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

The Aggregate Limit is the most we will pay for the sum of all:

**a.** "Damages" and "defense expenses" for the combined total of all "claims" or "suits" for loss; and

**b.** Loss that is "your cyber first-party loss";

to which the insurance provided under one of more of "your cyber liability coverage forms" applies.

**D. DEDUCTIBLE**

**1.** The following is added to the last sentence of Paragraph **1.** of **SECTION IV – DEDUCTIBLE** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

The Each Wrongful Act Deductible does not apply to payments we make for loss that is "your cyber first-party loss".

**2.** The following is added to **SECTION IV – DEDUCTIBLE** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

We will not reimburse you for any of "your cyber first-party loss" to which this insurance applies until the amount of such loss exceeds the deductible shown in the Schedule Of Cyber First-Party Limit And Deductible. We will then reimburse you for the amount of such loss in excess of the deductible, up to the limit of insurance shown in the Schedule.

**E. CYBER LIABILITY CONDITIONS**

**1.** The following is added to Paragraph **14. Currency** of **SECTION V – CYBER LIABILITY**

**CONDITIONS** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

Payments for loss that is "cyber first-party loss" will be in the currency of the United States of America. At our sole option, we may make these payments in a different currency. Any necessary currency conversion for such payments will be calculated based on the rate of exchange published in the Wall Street Journal immediately preceding the date the payment is processed.

**2.** The following is added to **SECTION V – CYBER LIABILITY CONDITIONS** in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

**Duties In The Event Of A Security Breach**

**a.** You must see to it that we are notified in writing as soon as practicable of a "security breach" which may result in "your security breach notification and remediation expenses" or "your payment card expenses". Such notice should include:

**(1)** How, when and where the "security breach" occurred; and

**(2)** The nature and extent of fees, costs or expenses incurred and paid by you which can be directly attributed to a "security breach".

**b.** You must:

**(1)** Authorize us to obtain records and other information;

**(2)** Cooperate with us in the investigation of the "security breach"; and

**(3)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply.

**Duties In The Event Of An Information Security Wrongful Act That Causes A Foreign Cyber First-Party Loss**

In the event an "information security wrongful act" causes a "foreign cyber first-party loss", the first Named Insured must comply with all conditions of this policy as if the insured incurred and paid such "foreign cyber first-party loss" is not a "foreign insured organization".

Page 2 of 6

© 2014 The Travelers Indemnity Company. All rights reserved.

PR T4 97 03 15

PR T4 97 03 15

© 2014 The Travelers Indemnity Company. All rights reserved.

Page 3 of 6

CYBER LIABILITY

**F. DEFINITIONS**

The following is added to the **DEFINITIONS** Section in the **CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM**:

"Chargebacks":

**a.** Means "payment card" charge reversals because of the fraudulent use of "payment cards" or "identity information".

**b.** Includes transaction fees assessed to process such "payment card" charge reversals.

"Merchant service agreement" means a contract between you and an acquiring bank or other acquiring institution that establishes the terms and conditions for accepting and processing "payment card" transactions.

"Payment card" means a credit card, debit card or charge card issued by a financial institution.

"Payment card contract penalties":

**a.** Means fines or penalties incurred by you after a "security breach" because of non-compliance with the "payment card security standards".

**b.** Does not include:

   **(1)** Fines or penalties assessed because of not promptly reporting a "security breach";

   **(2)** Fines or penalties assessed because of failure to properly validate system security according to the "payment card security standards"; or

   **(3)** Any interchange fees or changes in interchange fee schedules.

"Payment card security standards" means:

**a.** The most current edition of security standards contained in:
   **(1)** The Payment Card Industry Data Security Standards program (PCI DSS);
   **(2)** Visa's Cardholder Information Security Program (CISP);
   **(3)** MasterCard's Site Data Protection program (SDP);
   **(4)** American Express's Data Security Operating Policy; or
   **(5)** Discover's Information Security and Compliance program (DISC); or

**b.** Other security standards similar to those in Paragraphs **a.(1)** through **a.(5)** above that

you have agreed to in a "merchant service agreement" with a financial institution

that apply to you.

"PCI attestation of compliance" means the declaration of compliance status with the Payment Card Industry Data Security Standards program found in the "PCI self-assessment questionnaire" that applies to you.

"PCI forensic investigator" means a professional review of your computer systems by a "qualified forensic investigator" to determine your compliance with the "payment card security standards".

"PCI self-assessment questionnaire" means the questionnaire, developed by the Payment Card Industry Security Standards Council, that assists you in self-evaluation of your compliance with the "payment card security standards".

"Qualified forensic investigator" means an organization approved by the applicable "payment card" issuing bank to conduct forensic investigations after a "security breach".

"Qualified security assessor" means a person or organization certified by the Payment Card Industry Security Standards Council to assess compliance with "payment card security standards".

"Related security breaches" means two or more "security breaches" that have as a common connection, tie, or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situation, events, transactions, or causes.

"Security breach" means unauthorized access to, or acquisition of, "identity information" owned, licensed, maintained or stored by you.

"Security breach notification law" means any law or regulation that requires an organization to notify persons that their nonpublic personal information was or may have been accessed or acquired without their authorization.

"Software and hardware upgrade and scanning services expenses" means:

**a.** Fees, costs or expenses for a "PCI forensic investigation" arising out of a written notification by a "payment card" issuing bank, merchant bank, acquiring bank or other acquiring institution that you are a likely common point of purchase source of a "security breach" or otherwise involved in a "security breach" to determine if you are in compliance with the "payment card security standards";

**b.** Costs or expenses to purchase and install anti-virus software, point-of-sale systems software, firewall protection software, or firewall protection hardware that satisfies the requirements of the "payment card security standards", if, after a "security breach", it is determined through a "PCI forensic investigation" that you are out of compliance with the "payment card security standards"; or

**c.** Costs for the scanning services of a "qualified security assessor" to certify that your upgraded software and hardware systems meet the requirements of the "payment card security standards", but only for the first such scanning services after your software or hardware systems, or both, are upgraded.

"Your crisis management service expenses":

**a.** Means the reasonable fees, costs or expenses incurred and paid by you in:
   **(1)** Retaining a public relations consultant or firm, or a crisis management consultant or firm; or
   **(2)** Planning or executing your public relations campaign;

to mitigate any actual or potential negative publicity generated from loss to which this insurance applies.

**b.** Does not include fees, costs or expenses you incur to comply with any law or regulation.

"Your cyber first-party loss" means loss that is:

**a.** "Your security breach notification and remediation expenses";

**b.** "Your payment card expenses"; or

**c.** "Your crisis management service expenses".

"Your payment card expenses":

**a.** Means any of the following reasonable fees, costs or expenses incurred and paid by you which are directly attributed to a "security breach":
   **(1)** "Software and hardware upgrade and scanning services expenses";
   **(2)** "Payment card contract penalties"; or
   **(3)** "Chargebacks".

**b.** Does not include:
   **(1)** Remuneration paid to your regular "employees" for work beyond their normal scheduled hours;

   **(2)** Fees, costs or expenses of outside consultants retained by you unless we agree to reimburse you for such fees, costs, or expenses;

   **(3)** Amounts that you voluntarily agree to pay to any person whose "identity information" was accessed or acquired without his or her authorization;

**c.** Fees, costs, or expenses in:
   **(1)** Retaining a public relations consultant or firm, or a crisis management consultant or firm; or
   **(2)** Planning or executing your public relations campaign;

to mitigate any actual or potential negative publicity generated from the "security breach"; or

   **(3)** "Your security breach notification and remediation expenses".

"Your security breach notification and remediation expenses":

**a.** Means any of the following reasonable fees, costs or expenses incurred and paid by you which can be directly attributed to a "security breach":
   **(1)** Forensic fees, costs or expenses to determine the cause of the "security breach" and the persons whose "identity information" was accessed or acquired without their authorization.
   **(2)** Fees, costs or expenses to develop documents or materials to notify the persons whose "identity information" was accessed or acquired without their authorization.
   **(3)** Costs of mailings or other communications required to notify the persons whose "identity information" was accessed or acquired without their authorization.
   **(4)** Costs of providing 365 days of credit monitoring services to persons whose "identity information" was accessed or acquired without their authorization, starting with the date that you first notify such persons of the "security breach".
   **(5)** Costs of establishing and maintaining a call center to be used by persons whose "identity information" was accessed or acquired without their authorization.

Page 4 of 6

© 2014 The Travelers Indemnity Company. All rights reserved.

PR T4 97 03 15

PR T4 97 03 15

© 2014 The Travelers Indemnity Company. All rights reserved.

Page 5 of 6

CYBER LIABILITY

(6) Any other fees, costs, or expenses necessary to comply with any "security breach notification law" that applies to you.

**b.** Does not include:

(1) Remuneration paid to your regular "employees" for work beyond their normal scheduled hours;

(2) Fees, costs, or expenses of outside consultants retained by you, unless we agree

to reimburse you for such fees, costs, or expenses.

(3) Fines or penalties imposed by law or that any insured has agreed to pay for any reason;

(4) Amounts that you voluntarily agree to pay to any person whose "identity information" was accessed or acquired without his or her authorization;

(5) "Your" crisis management service expenses".

**EMPLOYMENT PRACTICES LIABILITY⁺**

**EMPLOYMENT PRACTICES LIABILITY⁺**

**TRAVELERS**                       One Tower Square, Hartford, Connecticut  06183

EMPLOYMENT PRACTICES LIABILITY⁺
WITH IDENTITY FRAUD EXPENSE
REIMBURSEMENT COVERAGE PART
DECLARATIONS

POLICY NO.: 680-0N725897-19-42
ISSUE DATE:11/05/2019

THIS FORM PROVIDES CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY FOR EMPLOYMENT PRACTICES LIABILITY COVERAGE

INSURING COMPANY:TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

POLICY PERIOD: From 12/15/2019 to 12/15/2020 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Employment Practices Liability⁺ With Identity Fraud Expense Reimbursement Coverage Part consists of these Declarations and the Coverage Form shown below:

**ITEM 1.** LIMIT OF INSURANCE AND RETENTION FOR EMPLOYMENT PRACTICES LIABILITY COVERAGE

Limit of Insurance:   $ 10,000
(Defense Expenses are included within the Limit of Insurance)

Retention Amount applicable to each Employment Practices Liability Claim: $ 500

**ITEM 2.** LIMIT OF INSURANCE AND DEDUCTIBLE FOR IDENTITY FRAUD EXPENSE REIMBURSEMENT COVERAGE

Limit of Insurance:   $ 2,500

Deductible Amount applicable to Identity Fraud Expense Reimbursement:  $ 0

**ITEM 3.** EMPLOYMENT PRACTICES LIABILITY COVERAGE EXTENDED REPORTING PERIOD

Subject to the terms and conditions of the Employment Practices Liability Coverage, an optional Extended Reporting Period may be purchased for  12 months for  75% % of the Premium for the **Policy Period**

**ITEM 4.** EMPLOYMENT PRACTICES LIABILITY CONTINUITY DATE

Continuity Date: 12/15/2015

**ITEM 5.** PREMIUM: INCLUDED

**ITEM 6.** NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.



POLICYHOLDER NOTICES                          POLICYHOLDER NOTICES

## IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

NO COVERAGE IS PROVIDED BY THIS NOTICE. THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, call our toll-free telephone number 1-866-904-8348, or request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

## IMPORTANT NOTICE – RISK MANAGEMENT PLUS+ ONLINE® FROM TRAVELERS BOND & FINANCIAL PRODUCTS

NO COVERAGE IS PROVIDED BY THIS NOTICE. THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT, BROKER OR LOCAL COMPANY REPRESENTATIVE IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.

Thank you for choosing Travelers for your insurance needs. Travelers Select Accounts and Bond & Financial Products have partnered to offer you Employment Practices Liability with Identity Fraud Expense Reimbursement. Travelers Bond & Financial Products is a market leader in providing management liability coverage that is in-synch with your private company. As your risks evolve, so do we through our ability to provide you with responsive risk management services.

With your purchase of Employment Practices Liability with Identity Fraud Expense Reimbursement, Travelers is pleased to provide you with Risk Management PLUS+ Online, the industry's most comprehensive program for mitigating your management liability exposures. The site includes risk management tools for Employment Practices Liability, Identity Fraud Expense Reimbursement, and many other liability coverage related exposures.

Risk Management PLUS+ Online is a flexible, comprehensive loss prevention program specifically designed for Travelers customers and is available to you at no additional cost. Included in the site is a library of articles, checklists and training on relevant risk mitigation topics for the management liability areas mentioned above.

Highlights of Risk Management PLUS+ Online services include:

· Web-based risk management training

· Weekly articles on current issue

· Model policies and forms for downloading or printing that cover major risks associated with the workplace

The attached Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your Risk Management PLUS+ Online representative. It's that simple.

We strongly encourage you to take full advantage of this program. Once again, thank you for choosing Travelers.

Instructions for Registration & Orientation to Risk Management PLUS+ Online®

*Registration for Site Administrators*

The Site Administrator is the person in your organization who will oversee Risk Management PLUS+ Online for the organization. The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities.

To register:

1) Go to www.rmplusonline.com.
2) In the Sign-in box, click **Register**.
3) Enter the password/passcode: TRVP180000 (Please note there are 4 letters followed by 6 numbers in the code)
4) Fill in the Registration Information and click **Submit**.
5) Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*

1) Go to www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2) If you have any questions, just click on **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3) You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.

## NEW JERSEY EARTHQUAKE INSURANCE AVAILABILITY NOTICE

All insureds and applicants are cautioned that homeowners/commercial fire and extended coverage insurance policies do not provide coverage for earthquake damage.

The definition of an **earthquake:**

- is a shaking or trembling of the earth that is geologic or tectonic in nature;
- includes shock waves or tremors before, during or after a volcanic eruption; and
- can also include after-shocks that occur within a seventy-two hour period following an **earthquake**.

A typical homeowners or commercial fire and extended coverage insurance policy:

- **does not** cover the cost to replace or repair your damaged dwelling, premises or structures, such as garages, resulting from an **earthquake;**
- **does not** cover the cost to replace or repair the contents of your home or business if the damages result from an **earthquake;** and
- **does not** pay for any additional living or business expenses if your property is badly damaged or destroyed by an **earthquake.**

**Earthquake insurance is available through an endorsement to your policy for an additional premium. The decision to purchase earthquake insurance is one that should be carefully considered based on individual circumstances.**

Historically, an earthquake in New Jersey is a rare event, although the possibility exists that it could happen. Over the five-year period from 1997 to 2002, for every $1 of **earthquake** insurance premium, 3/10 of one cent has been paid out for losses.

**Please contact your agent if you have any questions or want additional information on how you can obtain earthquake insurance.**

This notice is a general description of coverage and does not change, modify or invalidate any of the provisions, terms or conditions of your policy or endorsements.

## IMPORTANT NOTICE – RISK MANAGEMENT PLUS+ ONLINE® FROM TRAVELERS BOND & FINANCIAL PRODUCTS – EMPLOYMENT PRACTICES LIABILITY HOTLINE

**NO COVERAGE IS PROVIDED BY THIS NOTICE. THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT, BROKER OR LOCAL COMPANY REPRESENTATIVE IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.**

**Employment Practices Liability Hotline**
As part of the services provided through Risk Management PLUS+ Online®, Travelers is pleased to provide its Employment Practices Liability+ with Identity Fraud Expense Reimbursement coverage policyholders with unlimited access to a toll-free hotline designed to provide quick, practical guidance on day-to-day workplace issues.

To utilize the hotline, call **1-866-EPL-TRAV (1-866-375-8728).**

Through this hotline, policyholders are eligible to receive free general guidance from the national employment law firm of Jackson Lewis, LLP. The hotline is available toll-free from anywhere in the United States.

We have developed this program in conjunction with Jackson Lewis LLP, one of the largest law firms in the country, exclusively dedicated to representing management on workplace issues. With more than 650 attorneys in 46 offices countrywide, the firm has both a recognized expertise in workplace-related issues and a sensitivity to regional business environments.

From reviewing the proper steps for a sexual harassment investigation to discussing general factors to consider before you make day-to-day employment decisions, the firm's attorneys are available to assist policyholders in managing their workplace risk and minimizing employment related claims. As part of this program, policyholders are also eligible to receive a 10 percent discount on Jackson Lewis' regular fees for matters beyond the scope of the hotline, such as those dealing with specific employees or areas not within the scope of their policy. Similarly the hotline cannot be used to report a claim regardless of any disclosure made to Jackson Lewis.

We encourage policyholders to take advantage of this no-cost hotline. For more information about the hotline, go to www.rmplusonline.com/EPLhotline.

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers. It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond. Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law. Availability of coverage referenced in this document can depend on underwriting qualifications and state regulations.


TRAVELERS

## IMPORTANT INFORMATION FOR MASTER PAC POLICYHOLDERS

Dear Policyholder:

Enclosed is your Travelers Master Pac Renewal Certificate. An asterisk on the Listing of Forms, Endorsements and Schedule Numbers, IL T8 01, indicates forms that are included with this year's renewal. Any forms previously attached to your policy that are not shown on that listing no longer apply.

Please put this Certificate and the attached forms with your policy as soon as possible. If you have misplaced your policy, please contact your agent for a copy.

# Exhibit F



| | | |
|---|---|---|
| Customer: | HARSHAD SHAH AND SHREE JI INC. | Cell:   (848) 482-6472 |
| Property: | 108 WATCHUNG AVE | |
| | PLAINFIELD, NJ 07060 | |
| Home: | 30 THAMES ROAD | |
| | PISCATAWAY, NJ 08854 | |

| | | |
|---|---|---|
| Claim Rep.: | Jennifer Wooten | |
| Company: | TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA | |
| Business: | P.O. Box 650293 | Business:   (877) 872-8228 x 3 |
| | Richardson, TX 75265-0293 | E-mail:   NCCenter@travelers.com |

| | | |
|---|---|---|
| **Claim Number:** CFY4040001H | **Policy Number:** 680    0N725897 | **Type of Loss:** VANDALISM/MALICIOUS MISCHIEF |
| **Date of Loss:** 1/2/2020 | **Date Completed:** 2/14/2020 3:48 PM | **Price List:** NJNE8X_JAN20 |

| Coverage | Deductible | Policy Limit |
|---|---|---|
| Building 01 | $500.00 | $2,137,200.00 |

Dear HARSHAD SHAH AND SHREE JI INC.:

We have prepared an estimate of damages which will serve as the basis for our determination of benefits. Therefore, you and/or your contractor should review this estimate carefully and let us know immediately if you have any questions prior to beginning any work. A letter with an explanation of benefits and coverage will be provided to you separately.

Thank you for allowing us to be of service, and thank you for choosing TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA for your insurance needs. If you have any questions regarding this estimate or any aspect of your claim, please contact Jennifer Wooten at (877) 872-8228 x 3.

You can check the status of your claim, view your policy and much more at www.mytravelers.com.

Answers to commonly asked questions can be found at https://www.travelers.com/claims/individuals/home-insurance-claims.aspx.

You can also upload documents directly to your claim at www.travelers.com/claimuploadcenter.

*For more information about how the claim process works and where to find services to help you recover, visit travelers.com/claim.*



**HARSHAD_SHAH_AND_SHR**

### Temporary Repairs

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | |
| 1.  R&R Board-up windows | 102.80  SF | 2.23 | 15.19 | 0.00 | 244.43 | (0.00) | 244.43 |
| **Building 01 Totals:** | | | **15.19** | **0.00** | **244.43** | | **244.43** |
| **Totals:  Temporary Repairs** | | | **15.19** | **0.00** | **244.43** | **0.00** | **244.43** |

### Entrance

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | |
| 2.  Lighted sign - wall mtd. - custom logo - 4' x 10' | 2.00  EA | 4,290.47 | 682.19 | 1,716.18 | 10,979.31 | (5,489.67) | 5,489.64 |
| 3.  Scissor lift - 20' platform height (per day) | 1.00  DA | 173.00 | 13.75 | 34.60 | 221.35 | (0.00) | 221.35 |
| 4.  Additional charge for a retrofit exterior door - large | 1.00  EA | 235.11 | 18.70 | 47.02 | 300.83 | (0.00) | 300.83 |
| Allowance to adjust storefront door | | | | | | | |
| 5.  Clean with pressure/chemical spray - Heavy | 300.00  SF | 0.46 | 10.97 | 27.60 | 176.57 | (0.00) | 176.57 |
| **Building 01 Totals:** | | | **725.61** | **1825.40** | **11,678.06** | **(5,489.67)** | **6,188.39** |
| **Totals:  Entrance** | | | **725.61** | **1,825.40** | **11,678.06** | **5,489.67** | **6,188.39** |

### Front

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|



**CONTINUED - Front**

| DESCRIPTION | QTY | | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | | |
| 6.  Reglaze 3/8" annealed/float glass - 40 sf maximum | 24.00 | SF | 14.15 | 27.00 | 67.92 | 434.52 | (86.90) | 347.62 |
| FRONT WINDOW | | | | | | | | |
| 7.  Reglaze 3/8" annealed/float glass - 40 sf maximum | 36.80 | SF | 14.15 | 41.40 | 104.14 | 666.26 | (133.24) | 533.02 |
| FRONT LEFT WINDOW | | | | | | | | |
| 8.  Window Glazing/Repair - per hour | 4.00 | HR | 76.54 | 24.34 | 61.24 | 391.74 | (0.00) | 391.74 |
| Allowance for additional labor for access and installation of glass | | | | | | | | |
| 9.  Window Glazing - General Laborer - per hour | 4.00 | HR | 47.27 | 15.04 | 37.82 | 241.94 | (0.00) | 241.94 |
| Allowance for general labor to assist with access and installation of glass | | | | | | | | |
| 10.  Clean & prep walls for painting | 64.64 | SF | 0.24 | 1.24 | 3.10 | 19.85 | (0.00) | 19.85 |
| 11.  Paint walls - one coat | 64.64 | SF | 0.63 | 3.24 | 8.14 | 52.10 | (34.73) | 17.37 |
| **Building 01 Totals:** | | | | **112.26** | **282.36** | **1,806.41** | **(254.87)** | **1,551.54** |
| **Totals:  Front** | | | | **112.26** | **282.36** | **1,806.41** | **254.87** | **1,551.54** |

**Store**

| DESCRIPTION | QTY | | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | | |
| 12.  R&R Suspended ceiling tile - 2' x 4' | 80.00 | SF | 1.96 | 12.46 | 31.36 | 200.62 | (11.87) | 188.75 |
| 13.  R&R Exit sign - wired in | 1.00 | EA | 117.22 | 9.32 | 23.46 | 150.00 | (63.28) | 86.72 |
| 14.  Drywall Installer / Finisher - per hour | 16.00 | HR | 86.27 | 109.74 | 276.06 | 1,766.12 | (117.74) | 1,648.38 |
| Allowance for 2 workers to patch holes in drywall | | | | | | | | |
| 15.  Seal the surface area w/PVA primer - one coat | 150.00 | SF | 0.57 | 6.79 | 17.10 | 109.39 | (72.92) | 36.47 |
| 16.  Clean & prep walls for painting | 2196.30 | SF | 0.24 | 41.90 | 105.42 | 674.43 | (0.00) | 674.43 |
| 17.  Paint walls - 2 coats | 2196.30 | SF | 0.91 | 158.89 | 399.72 | 2,557.24 | (1,704.82) | 852.42 |
| 18.  Clean floor - Heavy | 1992.69 | SF | 0.55 | 87.13 | 219.20 | 1,402.31 | (0.00) | 1,402.31 |
| Allowance to clean and prep floor for paint | | | | | | | | |
| 19.  Epoxy finish - two coats over concrete floor | 1992.69 | SF | 3.58 | 567.14 | 1,426.76 | 9,127.73 | (3,042.57) | 6,085.16 |
| 20.  R&R Cove base molding - rubber or vinyl, 4" high | 287.83 | LF | 2.31 | 52.86 | 132.98 | 850.73 | (145.10) | 705.63 |
| 21.  Final cleaning - construction - Commercial | 83.72 | SF | 0.18 | 1.20 | 3.02 | 19.29 | (0.00) | 19.29 |
| **Building 01 Totals:** | | | | **1047.43** | **2635.08** | **16,857.86** | **(5,158.30)** | **11,699.56** |


**TRAVELERS**

CONTINUED - Store

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Store** | | | **1,047.43** | **2,635.08** | **16,857.86** | **5,158.30** | **11,699.56** |

### Rear Room

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | |
| 22.  Reglaze window, 10 - 16 sf | 3.00 EA | 132.75 | 31.66 | 79.66 | 509.57 | (101.93) | 407.64 |
| 23.  Seal & paint wood window (per side) | 6.00 EA | 53.41 | 25.48 | 64.10 | 410.04 | (273.36) | 136.68 |
| 24.  R&R Exit sign - wired in | 1.00 EA | 117.22 | 9.32 | 23.46 | 150.00 | (63.28) | 86.72 |
| 25.  Final cleaning - construction - Commercial | 269.58 SF | 0.18 | 3.85 | 9.70 | 62.07 | (0.00) | 62.07 |
| **Building 01 Totals:** | | | **70.31** | **176.92** | **1,131.68** | **(438.57)** | **693.11** |
| **Totals:  Rear Room** | | | **70.31** | **176.92** | **1,131.68** | **438.57** | **693.11** |

### General

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | |
| 26.  Taxes, insurance, permits & fees | 1.00 EA | | | | | | AS INCURRED |
| 27.  General clean - up | 8.00 HR | 38.51 | 24.49 | 61.62 | 394.19 | (0.00) | 394.19 |
| 28.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 176.35 | 14.02 | 35.28 | 225.65 | (0.00) | 225.65 |
| **Building 01 Totals:** | | | **38.51** | **96.90** | **619.84** | | **619.84** |
| **Totals:  General** | | | **38.51** | **96.90** | **619.84** | **0.00** | **619.84** |

### Labor Minimums Applied

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| BUILDING 01 | | | | | | | |
| 29.  Acoustic ceiling tile labor minimum | 1.00 EA | 180.66 | 14.36 | 36.14 | 231.16 | (0.00) | 231.16 |
| 30.  Temporary repair services labor minimum | 1.00 EA | 14.82 | 1.18 | 2.96 | 18.96 | (0.00) | 18.96 |
| **Building 01 Totals:** | | | **15.54** | **39.10** | **250.12** | | **250.12** |

2/14/2020          Page: 4



### CONTINUED - Labor Minimums Applied

| DESCRIPTION | QTY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Labor Minimums Applied** | | | 15.54 | 39.10 | 250.12 | 0.00 | 250.12 |
| **Area Building 01 Total:** | | | 2,024.85 | 5,055.76 | 32,588.40 | (11,341.41) | 21,246.99 |
| **Line Item Totals:  HARSHAD_SHAH_AND_SHR** | | | 2,024.85 | 5,055.76 | 32,588.40 | 11,341.41 | 21,246.99 |



## Summary for
### Building 01

### Summary for All Items

| | |
|---|---:|
| Line Item Total | 25,507.79 |
| Overhead | 2,527.88 |
| Profit | 2,527.88 |
| Total Tax(Rep-Maint) | 2,024.85 |
| **Replacement Cost Value** | **$32,588.40** |
| Less Depreciation | (11,341.41) |
| **Actual Cash Value** | **$21,246.99** |
| Less Deductible | (500.00) |
| **Net Claim** | **$20,746.99** |
| Total Depreciation | 11,341.41 |
| Total Recoverable Depreciation | 11,341.41 |
| **Net Claim if Depreciation is Recovered** | **$32,088.40** |

Jennifer Wooten



## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Total Tax(Rep-Maint) (6.625%) | Mat Tax (Cap Impr) (6.625%) | Clothing Acc Tax (6.625%) | Storage Rental Tax (6.625%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 2,527.88 | 2,527.88 | 2,024.85 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | |
| | **2,527.88** | **2,527.88** | **2,024.85** | **0.00** | **0.00** | **0.00** |



## Recap by Room

**Estimate: HARSHAD_SHAH_AND_SHR**

| | | |
|---|---:|---:|
| Temporary Repairs | 229.24 | 0.90% |
| Entrance | 9,127.05 | 35.78% |
| Front | 1,411.79 | 5.53% |
| Store | 13,175.35 | 51.65% |
| Rear Room | 884.45 | 3.47% |
| General | 484.43 | 1.90% |
| Labor Minimums Applied | 195.48 | 0.77% |
| **Subtotal of Areas** | **25,507.79** | **100.00%** |
| **Total** | **25,507.79** | **100.00%** |

2/14/2020          Page: 8

 **TRAVELERS**

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| ACOUSTICAL TREATMENTS | 319.86 | 9.28 | 310.58 |
| CLEANING | 2,148.27 | | 2,148.27 |
| GENERAL DEMOLITION | 328.51 | | 328.51 |
| DOORS | 235.11 | | 235.11 |
| DRYWALL | 1,380.32 | 92.02 | 1,288.30 |
| MISC. EQUIPMENT - COMMERCIAL | 8,580.94 | 4,290.47 | 4,290.47 |
| HEAVY EQUIPMENT | 173.00 | | 173.00 |
| FLOOR COVERING - VINYL | 567.03 | 113.41 | 453.62 |
| LIGHT FIXTURES | 197.74 | 98.88 | 98.86 |
| PAINTING | 9,579.14 | 4,008.15 | 5,570.99 |
| TEMPORARY REPAIRS | 14.82 | | 14.82 |
| WINDOW REGLAZING & REPAIR | 1,753.81 | 251.71 | 1,502.10 |
| **O&P Items Subtotal** | **25,278.55** | **8,863.92** | **16,414.63** |

| Non-O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| GENERAL DEMOLITION | 60.65 | | 60.65 |
| TEMPORARY REPAIRS | 168.59 | | 168.59 |
| **Non-O&P Items Subtotal** | 229.24 | 0.00 | 229.24 |
| O&P Items Subtotal | 25,278.55 | 8,863.92 | 16,414.63 |
| Overhead | 2,527.88 | 886.40 | 1,641.48 |
| Profit | 2,527.88 | 886.40 | 1,641.48 |
| Total Tax(Rep-Maint) | 2,024.85 | 704.69 | 1,320.16 |
| **Total** | **32,588.40** | **11,341.41** | **21,246.99** |

# Exhibit G

# *RECON GROUP, INC.*

*52 Paterson Ave.*
*Newton, NJ  07860*
*Tel: (973) 948-3331*
*Fax: (973) 383-0429*
*Disaster Restoration Specialists*



January 29, 2020

Jennifer Wooten                                      Re: Harshad Shah & Shree Ji Inc.
Travelers Insurance                                      108 Watchung Ave
PO Box 1900                                              Plainfield, NJ 07060
Morristown, NJ 07962                                      Claim # CFY-4040

Dear Ms. Wooten,

Pursuant to your request, an on-site inspection was performed at the above location on 1/22/2020.  The purpose of your assignment was to inspect and write an estimate for the extent of damages of specialty items missing or damaged due to the prior tenant removal.

At the time of our inspection we were able to discuss the loss with Nirav Shah. The tenant was there for 20 years and had been evicted.  Mr. Shah has concerns with damages to the building and the theft of items that were supposed to remain after the tenant left.
**Inspections/Observations:**

**Front entry doors:** It was stated that the doors had been detached then re attached while the items were being removed.

- No damage was noticed to the door. It is difficult to lock. Recommend to have the door adjusted.

**Front of the building:**

- The two liquor signs on the front of the building have been removed.
- Two broken window panes noticed. Recommend replacing the glass in the broken windows
- Water stains on the ceiling above the windows. The water damage to the ceiling was not caused by the tenant.

**Store:** It was stated that the ceiling tiles had been damaged, the security cameras removed, the counter and glass showcase removed, the shelving removed, the carpet removed, heat registers damaged, exit sign removed, electric panel damaged.

- The cameras had been removed with the wires cut in the vault that went to the recorder.

1

- The counter had been removed. The counter did not appear to be installed permanently. No damage to the walls or floor where the counter was standing. It appeared to be made by the tenant with 2x4 and plywood with paneling on the front and a plywood countertop free standing.
- The glass showcase in the front was also freestanding and movable. Not permanent.
- The shelving was also freestanding and moveable. No holes noticed in the walls where the shelving was standing.
- Mr. Shah stated that the carpet was removed years ago when the tenant was told by the health department to remove the carpet because it collects dust. The tenant then painted the floor after the carpet was removed.
- Heat registers had been replaced years ago with a new system run through the ceiling. The shelving was covering the old registers.
- We allowed for some of the missing or damaged ceiling tiles. There are several different kinds of ceiling tiles.
- One exit sign was removed with the wires capped above the front door. The exit sign above the rear door was still there.
- No damage was noticed to the electric panel. The panel is a very old Westinghouse model. It is very difficult to find circuit breakers for the panel. No missing or damaged breakers were noticed.

**Walk in Cooler: The cooler had been removed along with the condenser outside.**

**Rear Room:**
- The exit sign was removed.
- The single pane window was broken.
- The steel door to the rear hall entrance had many dents and holes from previous repairs. The dents appeared to be very old with rust on the dents.

**Bathroom:**
- No damage was noticed to the bathroom. The tank was empty and the bowl had water in it. The sink was off also. Water was turned off for the unit.

**Break/ Lunch Room:** It was stated the electric was vandalized.
- The electric panel is very old with broken circuit breakers. It did not appear to be vandalized but wear and tear. It is recommended to have the panel replaced for safety reasons.

**Vault:**
- No damage noticed to this room.
- The alarm system was not damaged. All wires were hooked up.
- The wires that were cut were for the camera security system.

2

**Conclusion:**

Based upon my inspection and the above described observations, it is my opinion within a reasonable degree of construction certainty that the building was not vandalized. There was damage to the windows that appeared to be accidental. It appeared the tenant took the items that he had purchased while being the tenant.

If additional information or documentation becomes known Recon Group Inc. reserves the right to amend and/or supplement this report.

Sincerely,
James Somers

# Exhibit H



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

| | | | |
|---|---|---|---|
| Insured: | Harshad Shah & Shree Ji Inc. | Cellular: | (848) 482-6472 |
| Property: | 106-112 Watchung Ave | E-mail: | nirav@tenantmanagers.com |
| | Plainfield, NJ 07060 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Brandon Lewis | Business: | (404) 307-8307 |
| | | E-mail: | brandonslewis@gmail.com |

| | | | |
|---|---|---|---|
| Estimator: | Phil Grandchamp | Business: | (770) 845-7214 |
| Company: | Strategic Claim Consultants | E-mail: | pg@strongclaims.com |
| Business: | 3050 Amwiler Rd. Suite 200-B | | |
| | Atlanta, GA 30360 | | |

**Claim Number:** CFY4040          **Policy Number:** 680-0N725897-19-42          **Type of Loss:** Vandalism

| | | | |
|---|---|---|---|
| Date Contacted: | 2/19/2020 12:00 AM | | |
| Date of Loss: | 1/2/2020 12:00 AM | Date Received: | 2/19/2020 12:00 AM |
| Date Inspected: | 2/29/2020 12:00 AM | Date Entered: | 4/6/2020 8:34 AM |

| | |
|---|---|
| Price List: | NJAC8X_APR20 |
| | Restoration/Service/Remodel |
| Estimate: | 02-20SHAH |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

### 02-20SHAH
### Main Level

**Entrance**                                                                                                    Height: 8'

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 1.  R&R Storefront - aluminum anodized frame - Single pane | 70.00 | SF @ | 25.85 | = | 1,809.50 |
| 2.  R&R Storefront door - alum. anodized frame, 3'x7' -Single pane | 3.00 | EA @ | 1,342.18 | = | 4,026.54 |
| 3.  R&R Door closer - hydraulic - Premium grade | 3.00 | EA @ | 240.65 | = | 721.95 |
| 4.  R&R Deadbolt - Deluxe grade | 2.00 | EA @ | 202.09 | = | 404.18 |
| 5.  R&R Exit sign - wired in | 1.00 | EA @ | 132.44 | = | 132.44 |
| 6.  Clean glazed store front - glass and aluminum - Heavy | 386.67 | SF @ | 0.48 | = | 185.60 |
| 7.  R&R Recessed light fixture | 2.00 | EA @ | 146.39 | = | 292.78 |
| 8.  Clean the ceiling | 29.17 | SF @ | 0.31 | = | 9.04 |
| 9.  Seal/prime then paint the ceiling (2 coats) | 29.17 | SF @ | 1.09 | = | 31.80 |
| 10.  Clean floor - tile | 29.17 | SF @ | 0.53 | = | 15.46 |
| 11.  R&R Comm. security system - contact w/wire (per opening) | 7.00 | EA @ | 123.83 | = | 866.81 |

**Front**                                                                                                    Height: 8'

**Missing Wall**                        13' 3" X 8'                        Opens into STORE

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 12.  R&R Underlayment - 1/4" BC plywood | 196.44 | SF @ | 3.34 | = | 656.11 |
| 13.  R&R Tile - vinyl composition | 196.44 | SF @ | 3.29 | = | 646.29 |
| 14.  R&R Cove base molding - rubber or vinyl, 4" high | 53.92 | LF @ | 2.33 | = | 125.63 |
| 15.  Clean more than the room length | 247.50 | SF @ | 0.31 | = | 76.73 |
| 16.  Seal/prime then paint more than the room length (2 coats) | 247.50 | SF @ | 1.09 | = | 269.78 |
| 17.  R&R Suspended ceiling tile - 2' x 2' | 196.44 | SF @ | 1.97 | = | 386.99 |

**Walk-in Cooler**                                                                                                    Height: 8'

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 18.  R&R Sheathing - plywood - 3/4" CDX | 379.67 | SF @ | 2.95 | = | 1,120.03 |
| 19.  R&R Underlayment - 1/4" BC plywood | 379.67 | SF @ | 3.34 | = | 1,268.10 |
| 20.  R&R Tile - vinyl composition | 379.67 | SF @ | 3.29 | = | 1,249.12 |
| 21.  R&R Cove base molding - rubber or vinyl, 4" high | 90.33 | LF @ | 2.33 | = | 210.47 |
| 22.  Clean more than the room length | 340.00 | SF @ | 0.31 | = | 105.40 |
| 23.  Seal/prime then paint more than the room length (2 coats) | 340.00 | SF @ | 1.09 | = | 370.60 |
| 24.  Walk-in Cooler - wall/ceiling panels and floor | 379.67 | SF @ | 95.76 | = | 36,357.20 |
| 25.  Walk-in Cooler - cooling unit | 1.00 | EA @ | 2,796.34 | = | 2,796.34 |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

**CONTINUED - Walk-in Cooler**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 26.  R&R Display Door for Walk-in Cooler/Freezer - 23"-26" wide | 12.00 | EA @ | 1,673.16 = | | 20,077.92 |
| 27.  Walk-in Cooler - door | 1.00 | EA @ | 1,106.65 = | | 1,106.65 |
| 28.  R&R Suspended ceiling tile - 2' x 2' | 379.67 | SF @ | 1.97 = | | 747.95 |

**Store**  Height: 8'

**Missing Wall**  13' 3" X 8'  Opens into FRONT

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 29.  R&R Underlayment - 1/4" BC plywood | 1,898.99 | SF @ | 3.34 = | | 6,342.63 |
| 30.  R&R Tile - vinyl composition | 1,898.99 | SF @ | 3.29 = | | 6,247.68 |
| 31.  R&R Cove base molding - rubber or vinyl, 4" high | 207.08 | LF @ | 2.33 = | | 482.50 |
| 32.  Clean the walls | 1,656.67 | SF @ | 0.31 = | | 513.57 |
| 33.  Seal/prime then paint the walls (2 coats) | 1,656.67 | SF @ | 1.09 = | | 1,805.77 |
| 34.  R&R Suspended ceiling tile - 2' x 2' | 1,898.99 | SF @ | 1.97 = | | 3,741.01 |
| 35.  R&R 1/2" drywall - hung, taped, floated, ready for paint | 128.00 | SF @ | 2.44 = | | 312.32 |
| 36.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 10.00 | HR @ | 75.53 = | | 755.30 |
| 37.  Bookcase - built in - 12" - (SF of face area) | 546.67 | SF @ | 13.87 = | | 7,582.31 |
| 38.  Seal & paint bookcase | 546.67 | SF @ | 2.89 = | | 1,579.88 |
| 39.  Service counter | 57.00 | LF @ | 248.26 = | | 14,150.82 |
| 40.  Electrician - per hour - inspect the electrical panel and replace the cover | 8.00 | HR @ | 117.89 = | | 943.12 |
| 41.  R&R Surveillance system - cameras, monitors, etc. | 1.00 | EA @ | 4,867.37 = | | 4,867.37 |
| 42.  R&R Surveillance camera - color - extra cameras needed to complete system | 4.00 | EA @ | 670.82 = | | 2,683.28 |
| 43.  R&R Thermostat | 2.00 | EA @ | 143.73 = | | 287.46 |
| 44.  R&R Safety glass - 1 1/4" laminated glass - double pane | 171.00 | SF @ | 41.72 = | | 7,134.12 |
| 45.  Reglaze 1/4" glass - double pane | 32.00 | SF @ | 15.56 = | | 497.92 |
| 46.  Security mirror | 2.00 | EA @ | 185.23 = | | 370.46 |
| 47.  R&R Outlet | 14.00 | EA @ | 23.02 = | | 322.28 |

**Right Side Hall**  Height: 8'



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

**Subroom:  Stairs (1)**                                                                                          **Height: 15' 11"**

| Missing Wall | 2' 11" X 15' 10 1/2" | | Opens into RIGHT_SIDE_H | |

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 48.  Clean more than the walls | 727.45  SF @ | 0.31 = | 225.51 |
| 49.  Seal/prime then paint the walls (2 coats) | 590.38  SF @ | 1.09 = | 643.51 |
| 50.  R&R Comm. security system - contact w/wire (per opening) | 1.00  EA @ | 123.83 = | 123.83 |
| 51.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 2.00  HR @ | 75.53 = | 151.06 |
| 52.  Paint door slab only - 2 coats (per side) | 2.00  EA @ | 42.23 = | 84.46 |
| 53.  Paint door trim & jamb - 2 coats (per side) | 2.00  EA @ | 36.12 = | 72.24 |

**Vault**                                                                                                              **Height: 8'**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 54.  Clean more than the walls | 383.38  SF @ | 0.31 = | 118.85 |
| 55.  Seal/prime then paint the walls (2 coats) | 297.33  SF @ | 1.09 = | 324.09 |
| 56.  R&R Commercial security system - control panel | 1.00  EA @ | 662.58 = | 662.58 |
| 57.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 2.00  HR @ | 75.53 = | 151.06 |

**Furnace 1**                                                                                                        **Height: 8'**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 58.  Clean more than the walls | 170.11  SF @ | 0.31 = | 52.73 |
| 59.  Seal/prime then paint the walls (2 coats) | 149.33  SF @ | 1.09 = | 162.77 |
| 60.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 2.00  HR @ | 75.53 = | 151.06 |
| 61.  Air handler - with heat element and A/C coil - 3 ton | 1.00  EA @ | 2,278.72 = | 2,278.72 |
| 62.  Finish Carpenter - per hour install new vent in door | 4.00  HR @ | 75.49 = | 301.96 |
| 63.  R&R Tile - vinyl composition | 20.78  SF @ | 3.29 = | 68.37 |
| 64.  Paint door slab only - 2 coats (per side) | 2.00  EA @ | 42.23 = | 84.46 |
| 65.  Paint door trim & jamb - 2 coats (per side) | 2.00  EA @ | 36.12 = | 72.24 |

**Furnace 2**                                                                                                        **Height: 8'**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 66.  Clean more than the walls | 152.08  SF @ | 0.31 = | 47.14 |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

## CONTINUED - Furnace 2

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 67.  Seal/prime then paint the walls (2 coats) | 134.67 | SF @ | 1.09 = | | 146.79 |
| 68.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 2.00 | HR @ | 75.53 = | | 151.06 |
| 69.  Air handler - with heat element and A/C coil - 3 ton | 1.00 | EA @ | 2,278.72 = | | 2,278.72 |
| 70.  Finish Carpenter - per hour install new vent in door | 4.00 | HR @ | 75.49 = | | 301.96 |
| 71.  R&R Tile - vinyl composition | 17.42 | SF @ | 3.29 = | | 57.32 |
| 72.  Paint door slab only - 2 coats (per side) | 2.00 | EA @ | 42.23 = | | 84.46 |
| 73.  Paint door trim & jamb - 2 coats (per side) | 2.00 | EA @ | 36.12 = | | 72.24 |

**Rear Room**                                                                                                       **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 74.  R&R Tile - vinyl composition | 269.58 | SF @ | 3.29 = | | 886.92 |
| 75.  R&R Cove base molding - rubber or vinyl, 4" high | 76.17 | LF @ | 2.33 = | | 177.48 |
| 76.  Clean the walls | 609.33 | SF @ | 0.31 = | | 188.89 |
| 77.  Seal/prime then paint the walls (2 coats) | 609.33 | SF @ | 1.09 = | | 664.17 |
| 78.  R&R Suspended ceiling tile - 2' x 2' | 269.58 | SF @ | 1.97 = | | 531.07 |
| 79.  R&R 1/2" drywall - hung, taped, floated, ready for paint | 128.00 | SF @ | 2.44 = | | 312.32 |
| 80.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 10.00 | HR @ | 75.53 = | | 755.30 |
| 81.  HVAC Technician - per hour - service and clean radiator system | 16.00 | HR @ | 115.49 = | | 1,847.84 |
| 82.  Paint door slab only - 2 coats (per side) | 4.00 | EA @ | 42.23 = | | 168.92 |
| 83.  Paint door trim & jamb - 2 coats (per side) | 4.00 | EA @ | 36.12 = | | 144.48 |
| 84.  R&R Replace sash only - double hung, 9-12 sf | 1.00 | EA @ | 364.64 = | | 364.64 |
| 85.  Seal & paint wood window (per side) - Large | 4.00 | EA @ | 86.78 = | | 347.12 |

**Bathroom**                                                                                                         **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 86.  R&R Tile - vinyl composition | 44.10 | SF @ | 3.29 = | | 145.09 |
| 87.  R&R Cove base molding - rubber or vinyl, 4" high | 32.55 | LF @ | 2.33 = | | 75.84 |
| 88.  Clean the walls | 260.38 | SF @ | 0.31 = | | 80.72 |
| 89.  Seal/prime then paint the walls (2 coats) | 260.38 | SF @ | 1.09 = | | 283.81 |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

**CONTINUED - Bathroom**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 90.  R&R Suspended ceiling tile - 2' x 2' | 44.10 | SF @ | 1.97 | = | 86.87 |
| 91.  Drywall Installer / Finisher - per hour - point up all holes created by tennant | 3.00 | HR @ | 75.53 | = | 226.59 |
| 92.  Paint door slab only - 2 coats (per side) | 2.00 | EA @ | 42.23 | = | 84.46 |
| 93.  Paint door trim & jamb - 2 coats (per side) | 2.00 | EA @ | 36.12 | = | 72.24 |
| 94.  Vanity - Detach & reset | 2.00 | LF @ | 52.92 | = | 105.84 |
| 95.  R&R Toilet | 1.00 | EA @ | 500.55 | = | 500.55 |
| 96.  R&R Toilet seat | 1.00 | EA @ | 70.12 | = | 70.12 |

**Rear Entrance**                                                                                     **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 97.  R&R Tile - vinyl composition | 94.56 | SF @ | 3.29 | = | 311.10 |
| 98.  R&R Cove base molding - rubber or vinyl, 4" high | 47.50 | LF @ | 2.33 | = | 110.68 |
| 99.  Clean the walls | 380.00 | SF @ | 0.31 | = | 117.80 |
| 100.  Seal/prime then paint the walls (2 coats) | 380.00 | SF @ | 1.09 | = | 414.20 |
| 101.  Paint door slab only - 2 coats (per side) | 4.00 | EA @ | 42.23 | = | 168.92 |
| 102.  Paint door trim & jamb - 2 coats (per side) | 4.00 | EA @ | 36.12 | = | 144.48 |
| 103.  R&R Exit sign - wired in | 1.00 | EA @ | 132.44 | = | 132.44 |
| 104.  R&R Emergency lighting - battery - Commercial | 1.00 | EA @ | 324.81 | = | 324.81 |
| 105.  R&R Door closer - hydraulic - Premium grade | 1.00 | EA @ | 240.65 | = | 240.65 |
| 106.  R&R Steel door, 3' x 7' | 1.00 | EA @ | 304.62 | = | 304.62 |
| 107.  R&R Lockset - keyed - Medium duty - Commercial grade | 1.00 | EA @ | 147.00 | = | 147.00 |
| 108.  R&R Breaker panel - 150 amp | 1.00 | EA @ | 1,342.84 | = | 1,342.84 |

**Break Room**                                                                                       **Height: 8'**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 109.  Clean more than the walls | 753.92 | SF @ | 0.31 | = | 233.72 |
| 110.  Seal/prime then paint the walls (2 coats) | 553.33 | SF @ | 1.09 | = | 603.13 |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

**General Conditions**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 111.  Dumpster load - Approx. 30 yards, 5-7 tons of debris | 1.00 | EA @ | 767.20 | = | 767.20 |
| 112.  R&R Central air conditioning system - 3 ton - up to 13 SEER | 2.00 | EA @ | 3,309.98 | = | 6,619.96 |
| 113.  Commercial Supervision / Project Management - per hour | 160.00 | HR @ | 69.69 | = | 11,150.40 |
| 114.  R&R Smoke detector | 6.00 | EA @ | 72.14 | = | 432.84 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 115.  Floor cleaning labor minimum | 1.00 | EA @ | 111.91 | = | 111.91 |
| 117.  Plumbing labor minimum | 1.00 | EA @ | 36.57 | = | 36.57 |
| 116.  Window labor minimum | 1.00 | EA @ | 57.41 | = | 57.41 |
| 118.  Door labor minimum | 1.00 | EA @ | 118.47 | = | 118.47 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 5,978.76 | SF Walls | 3,348.09 | SF Ceiling | 9,326.85 | SF Walls and Ceiling |
| 3,374.40 | SF Floor | 374.93 | SY Flooring | 740.57 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 736.05 | LF Ceil. Perimeter |
| | | | | | |
| 3,374.40 | Floor Area | 3,526.82 | Total Area | 5,538.38 | Interior Wall Area |
| 2,852.23 | Exterior Wall Area | 316.91 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 177,568.83 |
| Overhead | 17,756.90 |
| Profit | 17,756.90 |
| Total Tax(Rep-Maint) | 18,378.32 |
| **Replacement Cost Value** | **$231,460.95** |
| Less Depreciation | (24,704.15) |
| **Actual Cash Value** | **$206,756.80** |
| Less Deductible | (500.00) |
| **Net Claim** | **$206,256.80** |
| Total Recoverable Depreciation | 24,704.15 |
| **Net Claim if Depreciation is Recovered** | **$230,960.95** |

Phil Grandchamp



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

### Recap of Taxes, Overhead and Profit

|  | Overhead (10%) | Profit (10%) | Total Tax(Rep-Maint) (8.625%) | Clothing Acc Tax (8.625%) | Storage Rental Tax (8.625%) |
|---|---|---|---|---|---|
| **Line Items** | 17,756.90 | 17,756.90 | 18,378.32 | 0.00 | 0.00 |
| **Total** | **17,756.90** | **17,756.90** | **18,378.32** | **0.00** | **0.00** |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

## Recap by Room

**Estimate: 02-20SHAH**

**Area: Main Level**

| | | |
|---|---:|---:|
| Entrance | 8,496.10 | 4.78% |
| Front | 2,161.53 | 1.22% |
| Walk-in Cooler | 65,409.78 | 36.84% |
| Store | 60,619.80 | 34.14% |
| Right Side Hall | 1,300.61 | 0.73% |
| Vault | 1,256.58 | 0.71% |
| Furnace 1 | 3,172.31 | 1.79% |
| Furnace 2 | 3,139.69 | 1.77% |
| Rear Room | 6,389.15 | 3.60% |
| Bathroom | 1,732.13 | 0.98% |
| Rear Entrance | 3,759.54 | 2.12% |
| Break Room | 836.85 | 0.47% |
| | | |
| **Area Subtotal:  Main Level** | 158,274.07 | 89.13% |
| **General Conditions** | 18,970.40 | 10.68% |
| **Labor Minimums Applied** | 324.36 | 0.18% |
| **Subtotal of Areas** | 177,568.83 | 100.00% |
| **Total** | 177,568.83 | 100.00% |



**Strategic Claim Consultants**

3050 Amwiler Rd. Suite 200-B
Atlanta, GA 30360

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| ACOUSTICAL TREATMENTS | 4,824.58 | 723.69 | 4,100.89 |
| CABINETRY | 14,256.66 | 2,138.50 | 12,118.16 |
| CLEANING | 2,083.07 | | 2,083.07 |
| GENERAL DEMOLITION | 12,505.90 | | 12,505.90 |
| DOORS | 405.56 | 43.06 | 362.50 |
| DRYWALL | 2,845.75 | 426.87 | 2,418.88 |
| ELECTRICAL | 2,703.68 | 405.55 | 2,298.13 |
| ELECTRICAL - SPECIAL SYSTEMS | 8,779.64 | 1,316.93 | 7,462.71 |
| MISC. EQUIPMENT - COMMERCIAL | 59,465.49 | 8,919.83 | 50,545.66 |
| FLOOR COVERING - RESILIENT | 5,959.94 | 893.99 | 5,065.95 |
| FLOOR COVERING - VINYL | 5,618.79 | 842.83 | 4,775.96 |
| FINISH CARPENTRY / TRIMWORK | 8,186.23 | 1,227.93 | 6,958.30 |
| FINISH HARDWARE | 1,412.90 | 211.94 | 1,200.96 |
| FRAMING & ROUGH CARPENTRY | 827.68 | 124.15 | 703.53 |
| GLASS, GLAZING, & STOREFRONTS | 12,881.81 | 1,932.28 | 10,949.53 |
| HEAT, VENT & AIR CONDITIONING | 12,993.14 | 1,948.98 | 11,044.16 |
| LABOR ONLY | 11,150.40 | | 11,150.40 |
| LIGHT FIXTURES | 807.21 | 121.07 | 686.14 |
| PLUMBING | 570.48 | 80.09 | 490.39 |
| PAINTING | 8,901.02 | 1,335.19 | 7,565.83 |
| WINDOWS - WOOD | 388.90 | 49.72 | 339.18 |
| O&P Items Subtotal | 177,568.83 | 22,742.60 | 154,826.23 |
| Overhead | 17,756.90 | | 17,756.90 |
| Profit | 17,756.90 | | 17,756.90 |
| Total Tax(Rep-Maint) | 18,378.32 | 1,961.55 | 16,416.77 |
| Total | 231,460.95 | 24,704.15 | 206,756.80 |

Main Level

02-20SHAH



4/14/2020

Main Level

Page: 12

# Exhibit I

# *RECON GROUP, INC.*

*52 Paterson Ave.*
*Newton, NJ  07860*
*Tel: (973) 948-3331*
*Fax: (973) 383-0429*
*Disaster Restoration Specialists*



April 19, 2021

Corey McClane                                    Re: Harshad Shah & Shree Ji Inc.
Travelers Insurance                                   108 Watchung Ave.
P.O. Box 1900                                         Plainfield, NJ 07060
Morristown, NJ 07962                                Claim #CFY-4040


Dear Mr. McClane,


Pursuant to your request, an on-site inspection was performed at the above location on March 29th, 2021 @ 9:00 am.



The purpose of your assignment was to review all of the supporting documentation provided by the insured and Travelers Insurance and then meet with the insured and his building expert and inspect the condition of the property and review the damages.

I met with the owner Nirav Shah and his building expert Phil Grandchamp at the loss location, 108 Watchung Ave. Plainfield NJ on March 29th @ 9am. The results of the reviews and inspection are as follows:


## INSPECTION/OBSERVATIONS

1.   Prior to my site visit I reviewed photos, reports, proposals and estimates provided to me.

2.  **The police report from the Plainfield Police Department** dated 1/13/2020 was reported on 1/7/2020 by Nirav Shah. The incident type was theft of movable property and criminal mischief- $2000 or more.

3.   The police report indicates theft and damages to the Refrigeration Walk In Cooler, Electrical Fixtures/wires, Storage Shelving, Plumbing Lines, Camera System, Carpeting, Broken Windows and Storefront, Broken Doors

1

and Damaged Locksets. The following items were reported missing from the property: refrigeration unit (walk in cooler), electrical fixtures/wires, shelving units, plumbing fixtures/lines, camera system and carpeting. The windows, doors and locks were listed as damaged. The total reported value in this report for the above listed items was $85,500.

4. **The report and photos from Recon Group Inc**. dated 1/29/2020 and inspected by Jim Somers with Nirav Shah on 1/22/2020 show the following items missing from the property at that time: the walk in cooler along with the condenser unit from outside the building, two liquor store signs from the front exterior façade, several security cameras and recorder, store shelving, glass display cases, the countertops, 2 emergency exit signs and the carpeting from the store area floor. The following items from his report were damaged: The store front glass, some of the acoustical ceiling tiles, drywall walls and partial ceiling, the window glass in the rear storage room and the steel doors. During this inspection Mr. Shah stated that the carpet had been removed years prior by the tenant due to an inspection from the health department with concerns of the carpet holding dust. The floors were painted after the carpet was removed. Mr. Somers indicates in his report that the damages to the windows and doors were from accidental damages over the course of years. Mr. Somers also states that the glass display cases, shelving and countertops were free standing and moveable. In regards to the electrical fixtures missing Mr. Somers photos show the electrical boxes where the two missing emergency exit signs were located to still be intact with the wires disconnected and protected with wire nuts and not cut. Mr. Somers report indicates that the water was shut off to this space at the time of his inspection but did not observe any missing plumbing fixtures or lines.

5. **Steven H. Mazer Associates estimate** dated January 27, 2020 for the cost to replace the missing walk in cooler. This proposal indicates that the walk in cooler was 35' x 12' x 9' in size with 12 hinged insulated glass doors with led lighting, heated frames and built in merchandise shelving. The total estimate for replacement is $52,110.

6. **Travelers Insurance repair estimate** prepared by Jennifer Wooten dated 2/14/2020. In reviewing this estimate it includes material, labor and equipment for replacing the 2 signs on the front façade, replacing the broken glass on the store front and the rear storage room windows, replacing the damaged ceiling tiles, replacing the two missing exit signs, repairing the drywall walls and painting the walls, prepping the floors and painting the floors and replacing the cove base in the entire store area. The total of this estimate is $32,599.40.

7. **Strategic Claim Consultants estimate** dated 4/6/2020. This estimate indicates that the property was inspected on 2/29/2020 and entered on 4/6/2020 by Phil Grandchamp. This estimate includes the materials, equipment and labor for the replacement or repairs of the glass storefront, windows, doors ,door hardware, electrical wiring and fixtures, suspended ceiling system, plywood subfloor, underlayment, VCT flooring, cove base, drywall repairs, painting of the walls and trim, HVAC equipment, Walk In Cooler, shelving, countertops, security equipment, toilet and fire protection

equipment. The total of this estimate including 10% overhead, 10% profit and repair maintenance tax is $231,460.95.

8. **Steven H. Mazer Associates report** to James Cory McClane from Travelers Insurance dated 4/24/2020. This report was specific to the missing Walk in Cooler. This report states that the Missing Cooler was most likely bought used and installed in this location and then disassembled and moved to a new location. In this report Mr. Mazer concludes that this walk in box was a trade fixture and not part of the building.

9. **First Choice Heating & Air Conditionings proposal** dated September 10, 2020. This proposal is to replace and upgrade the two existing furnaces, coils, condensers, ductwork and thermostats. The total estimate for this work is $32,975.00.

The following are my findings and observations from my onsite inspection on March 29th 2021 in regards to each building item that is mentioned in any report, estimate or proposal as being missing or damaged under this claim number.

1. **Walk in Cooler**. This item is missing from the property. From the paint marks   on the floor I measured and determined that this walk in Cooler was approximately 34' in length 12' in depth and 9' in height. There were three 1 inch holes drilled through the floor towards the right side of where this cooler was located. Two of the holes showed the remains of ¾ inch PVC pipe at the sub floor height and one hole adjacent to them was empty. It is my opinion that the ¾ inch PVC pipes were condensation lines from the removed walk in cooler and the third hole was most likely for electrical wiring that had been disconnected. There was also a 2 foot long piece of aluminum angle iron attached to the floor to the far left rear side of where the missing walk in cooler was located. Most of the VCT tiles that were either under or inside the walk in cooler are missing or loose and the underlayment plywood in this area is delaminated and in need of replacement. The value of this item was listed at $30,000 in the police report, $52,110 in the estimate from Steven H. Mazer Associates and $72,405.73 in the estimate frim Strategic Claim Consultants.

2. **Electrical Fixtures& Wiring**. The two exterior lighted signs on the front façade were missing. I could see where the signs were mechanically attached to the front exterior of the structure above the glass storefront and where the electrical wires were disconnected at the box. There were two missing lighted emergency exit signs missing one in the front store area and the other in the rear storage room. The boxes and wires are still intact and the electrical wires were safe offed with wire nuts when they were removed. All the other light fixtures are still in place including the 2'x4' four bulb fluorescent lights, recessed lights and track lights. There were multiple illegal wire connections not in junction boxes above the drop ceiling tiles in the main store area. These connections were made to add additional lighting and outlets over many years and do not meet electric code requirements indicating that this work was performed without permits or inspections. It should be noted that these wires were recently exposed when the insured removed the ceiling tiles. There are two electrical panels located in this space both are antiquated Westinghouse

3

panels over 60 years in age. One was located in the rear fuel side of the main store area and the second one was located in the rear office. The one in the rear office was missing the panel cover. The breakers and wires did not appear to be tampered with.

3. **Storage Shelving & Display Cases**. There were no shelving or display cases present at the time of my inspection and none present in the photos taken by Jim Somers of Recon Group Inc. dated 1/22/2020. Mr. Shah and Mr. Grandchamp showed me numerous small punctures in the drywall walls which could have been made by staples, tacks, picture hangers, finishing nails or screws that had been removed. In my photos you can see red circles that Mr. Shah made around these punctures. In discussion with Mr. Shah he claimed there was built in wood shelving stained and finished on the majority of the left elevation store area wall approximately 54 feet in length 20 inches deep and 7 feet high as well as a section 20 feet in length 20 inches deep and 7 feet high on the rear right wall behind the area where the walk in cooler was located. He also claimed there were glass display cases located in the front of the store area 14 linear feet in length 24 inches deep and 42 inches high. These were free standing on the floor. He also claims that there were commercial Slatwall panels on an area approximately 25 square feet on the wall area behind the glass display cases.

4. **Carpeting & Floor Coverings**. There was no carpet present at the time of my inspection or in the photos taken by Jim Somers from Recon Group Inc. during his inspection on 1/22/2020. The Floors in the Main Store Area consisted of old VCT flooring that had been painted over with epoxy paint. The area of the flooring that was located under the Walk in Cooler had multiple missing VCT tiles and the underlayment was delaminated. The Rear Storage Room, Rear Entry, Furnace Room and Vault had old VCT floors that showed heavy wear and tear from their age. The carpet and subfloor in the Rear Office/Break Room had been removed which the owner Mr. Shah stated had been removed by him for inspection of electric and plumbing. I confirmed with Mr. Shah in my meeting that the carpet in the Main Store Area had been removed by the tenant several years earlier due to an order from the local health inspector. The floor was epoxy coated at that time.

5. **Store Front and Windows**. There was cracked glass on two of the store front panels approximately 62 square feet in size. These cracks appeared to be from accidental damages. There were also three single glazed double hung windows located in the rear storage room that had broken glass and were boarded up. The wood double hung window frames of this structure show heavy wear and tear and are past their useful life.

6. **Camera Surveillance System.** There were four motion sensors mounted to the walls in the Main Store Area as well as a security alarm box and wiring remaining in the Vault Room. Mr. Shah stated that there were nine security cameras, one monitor and one recorder removed by the tenant. The rebuild estimate from Strategic Claim Consultants includes contact wiring for the window and doors, cameras, monitor, recorder and security mirrors.

7. **Plumbing Fixtures and Lines.** The only plumbing related item missing was the lid for the toilet tank in the Restroom. All the drain lines, water supplies, toilet, faucet and sink were still intact. The plumbing lines and fixtures were over 30 years in age and show heavy wear and tear. There were exposed drain and supply lines in the rear left corner of the Main Store Area that were exposed and showed water damages to the ceiling, wall and floor in this area.

The owner Mr. Shah stated that these pipes were supplied for a separate area above this store and these damages were unrelated to this claim.

8. **Doors and Locks.** The three store front doors had damage to the hardware and frames. The owner Mr. Shah and his building consultant Mr. Grandchamp claim that these damages were caused by the tenant while he was removing items from the store. These doors are more than 30 years in age and show damages consistent from heavy use and deliveries for many years. There were two steel doors one in the rear entrance and the second going from the Main Store Area to the Rear Storage Room. These doors had multiple dents, rust and scratches as well as broken latches and hardware. These damages appear to be from many years of heavy use and do not appear to be from one recent event.

9. **Drywall and Paint.** The owner had marked multiple punctures on the walls throughout the Main store Area with red circles. These punctures appear to be from multiple staples, tacks, picture hangers, finishing nails or screws over many years. These punctures and small holes can easily be repaired with spackle and paint. There was one area located on the front wall where I observed water damage drywall on the front soffit and wall. This damage shows earlier attempts to spackle repair these damages. It is my opinion that this leak was caused by improper flashing above the first floor store front windows and below where the missing signs were previously attached. I observed additional caulking on this flashing from an earlier attempt to stop this leak. There was a second area of water damage located on the left rear wall in the Main Store Area. Some of this drywall was removed exposing plumbing lines to a second floor bathroom. Mr. Shah informed me that this was caused by a prior leak from the bathroom of the unit above the store and is unrelated to this claim. The paint on the walls in the rear storage room and bathroom is peeling and in poor condition from wear and tear and age. The Rear Entry Hall had several holes cut in the drywall walls that were not present at the time of Recon Groups first inspection on January 22, 2020. Mr. Shah stated that he had those wholes cut to try and locate electrical wires.

10. **Suspended Ceiling.** At the time of my inspection all of the ceiling tiles in the Main Store Area had been removed and some of the tracks. Phil Grandchamp and Nirav Shah stated that Mr. Shah had the suspended ceiling removed to inspect the additional electric items added by the tenant. This ceiling was in place after the tenant left and on January 22, 2020 when this property was inspected by Jim Somers of Recon Group Inc. Mr. Grandchamp stated that this type of ceiling material is no longer available and therefore he estimated for the complete replacement of the suspended ceiling system in his estimate. It should be noted that Travelers allowed for a partial repair of this ceiling in their rebuild estimate.

11. **HVAC.** At the time of my inspection all of the HVAC equipment, ductwork, thermostats, piping and wiring are intact. There are two gas fired furnaces with AC coils approximately 30 years in age. The estimate from First Choice Heating & Air Conditioning is for a full replacement of the furnaces, coils, ductwork, thermostats and removal of the existing systems. I asked Mr. Shah why he had included this proposal under the claim for missing and damaged items and he stated that the HVAC contractor told him that one electrical disconnect box was removed by the HVAC equipment on the roof and it could not be repaired. Mr. Grandchamp stated that they would supply a report

5

from First Choice Heating & Air Conditioning in accordance with their findings and proposal.

12. **Cove Base.** There were multiple areas throughout this store space that had missing or loose Rubber cove base. Both Travelers estimate and Strategic Claim Consultants estimate include replacement of the 4 inch rubber cove base.


## Conclusion


As a New Jersey Licensed General Contractor with over 40 years of experience in the building and insurance restoration industry and with my review of photos, reports, estimates, proposals and my onsite inspection, the following are my opinions and conclusions for the twelve building categories listed above.

1. **Walk in Cooler**. The walk in cooler was removed from the property. In past insurance claims that I have been involved with these items are normally considered a trade item. Judging from the picture and report this was a used walk in cooler that was purchased and installed inside of the Main Store Area. There were three holes drilled through the flooring and subflooring that compromised the finish of the floor as well as delamination of a 400 square foot area of the plywood underlayment due to moisture exposure from the walk in cooler over a 20 year span. The Sub floor, underlayment and VCT would need to be replaced to bring the flooring back to its pre loss condition. It is very common for this type of cooler to be bought and sold as well as disassembled and reassembled in different locations.

2. **Electrical Fixtures & Wiring**. The electric fixtures that were missing were the two lighted store front signs and two emergency exit signs. These items were disconnected and the wiring and boxes are still intact, Replacement of these fixtures would be required and were included in Travelers rebuild estimate. The electric panels and wiring inside the walls are over 60 years in age and would date way prior to the beginning of the lease with the tenant. The wires that were exposed after the owner removed the suspended ceiling in the store area vary in age and as stated in this report do not meet code. It is possible that some of these wires were added during the 20 year lease with the tenant. These wires should be put into junction boxes or removed by a licensed electrician for safety and fire prevention reasons. The missing electric panel cover should be replaced.

3. **Storage Shelving & Display Cases**. There were no display cases or shelving left on the property at the time of my inspection or at the time of Jim Somers from Recon Group Inc inspection on January 22, 2020. The glass display cases with tops were confirmed in my meeting with Mr. Shah and Mr. Grandchamp to be free standing and movable and were not attached to the property. The wood wall shelving was stated to be attached to the walls with nails or screws. There are only small puncture marks left in the drywall walls from this possible attachment and an allowance for spackling and painting of the walls would bring the property back to prelease condition.

**Carpeting & Floor Covering**. Mr. Shah confirmed in our meeting the carpet that was reported as stolen in the Police report was actually removed several years prior by the tenant due to an order from the local health department for dust and mold issues. There was an abandon layer of vinyl composite tile under the carpet and shortly after the carpet was removed the VCT floor was painted over with an epoxy paint finish. This paint is now considered the finished floor. The subfloor and underlayment under the area of the floor where the walk in cooler was removed needs to be replaced and then the floor repainted to bring the floor back to an acceptable finish. The carpet and underlayment in the break room was removed by Mr. Shah and should not be part of this claim.

5. **Store Front& Windows**. The Cracked glass on the storefront and the broken glass on the double hung windows located in the rear storage room appear to be from accidental damages. These pieces of glass need to be replaced and are included in both Travelers Insurance and Strategic Claim Consultants rebuild estimates.

6. **Camera Surveillance System**. There are several motion detectors, alarm wiring and an alarm panel left on the property. Mr. Shah stated that the tenant removed nine cameras and a monitor. There were marks in several locations where Mr. Shah stated that cameras were mounted. There are small holes in the face of the drywall walls in these locations. The spackle repair and painting of the walls would bring the walls back to a pre loss condition. Travelers Insurance and Strategic Claim Consultants both have allowed for drywall repair and painting of the walls in their rebuild estimates.

7. **Plumbing Fixtures and Lines**. All the plumbing lines and fixtures were intact at the time of my inspection. Only the tank lid for the toilet was missing. Due to the age of the toilet a matching tank lid may be difficult to locate. Replacement of the entire toilet may be required if a match can't be found.

8. **Doors & Locks**. There was extensive damage to the doors including dents, scratches and holes. These damages appear to be from extensive wear and tear and age consistent for a commercial building with numerous deliveries and customers over many years.

9. **Drywall and Paint**. The two areas where I observed that had water damage to the drywall are from prior events and unrelated to this claim. The multiple puncture marks and small holes throughout the main Store Area are from prior items hung and mounted to the walls over many years. To repair these walls would require spackle repairs and repainting of the walls. Both Travelers Insurance and Strategic Claim Consultants estimates allow for the spackle repair and painting of these walls.

10. **Suspended Ceiling**. At the time of my inspection the ceiling tiles had been removed and were left in stacks on the floor. Mr. Shah stated that he had the tiles removed in order to inspect the electric wiring above the finished ceiling. This is when the numerous illegal wire connections were discovered. In the photos dated 1/22/2020 taken by Jim Somers the ceiling tiles had not been removed. These tiles were not removed by the tenant.

11. **HVAC**. All of the HVAC equipment and components were intact and had no physical damage at the time of my inspection. I believe that the HVAC system is over 30 years in age and shows normal wear and tear for its age.

7

19. **Cove Base**: There were many areas where the rubber cove base was missing, loose, or damaged from age. Travelers Insurance and Strategic claim Consultants both allowed for the replacing of the cove bade in their estimates.

I have included photographic evidence from my inspection for your review.

If additional information or documentation becomes known Recon Group, Inc. reserves the right to amend and/or supplement this report.

Sincerely,

James P. Schlaffer

**PHOTOGRAPHIC DOCUMENTATION**

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



1-IMG_20210329_092645647
Date Taken: 3/29/2021
Taken By:   James Schlaffer



2-IMG_20210329_092651202
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



3-IMG_20210329_092655738
Date Taken: 3/29/2021
Taken By:   James Schlaffer



4-IMG_20210329_092700207
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



5-IMG_20210329_092705773
Date Taken: 3/29/2021
Taken By:   James Schlaffer



6-IMG_20210329_092714560
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



7-IMG_20210329_092723268
Date Taken: 3/29/2021
Taken By:   James Schlaffer



8-IMG_20210329_092730103
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



9-IMG_20210329_092808062
Date Taken: 3/29/2021
Taken By: James Schlaffer



10-IMG_20210329_092816474
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



11-IMG_20210329_092837285
Date Taken: 3/29/2021
Taken By: James Schlaffer



12-IMG_20210329_092846610
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



13-IMG_20210329_092857408
Date Taken: 3/29/2021
Taken By: James Schlaffer



14-IMG_20210329_092909499
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



15-IMG_20210329_092914286
Date Taken: 3/29/2021
Taken By: James Schlaffer



16-IMG_20210329_093034681
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



17-IMG_20210329_093042241
Date Taken: 3/29/2021
Taken By:   James Schlaffer



18-IMG_20210329_093059345
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



19-IMG_20210329_093106027
Date Taken: 3/29/2021
Taken By:   James Schlaffer



20-IMG_20210329_093109735
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



21-IMG_20210329_093114276
Date Taken: 3/29/2021
Taken By:   James Schlaffer



22-IMG_20210329_093117872
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



23-IMG_20210329_093123721
Date Taken: 3/29/2021
Taken By:   James Schlaffer



24-IMG_20210329_093126991
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



25-IMG_20210329_093137186
Date Taken: 3/29/2021
Taken By:   James Schlaffer



26-IMG_20210329_093248158
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



27-IMG_20210329_093253831
Date Taken: 3/29/2021
Taken By:   James Schlaffer



28-IMG_20210329_093300337
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



29-IMG_20210329_093304364
Date Taken: 3/29/2021
Taken By:   James Schlaffer



30-IMG_20210329_093854539
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



31-IMG_20210329_093857967
Date Taken: 3/29/2021
Taken By:   James Schlaffer



32-IMG_20210329_093901514
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



33-IMG_20210329_093912719
Date Taken: 3/29/2021
Taken By:   James Schlaffer



34-IMG_20210329_093915873
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



35-IMG_20210329_093919631
Date Taken: 3/29/2021
Taken By:   James Schlaffer



36-IMG_20210329_094006057
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



37-IMG_20210329_094011642
Date Taken: 3/29/2021
Taken By:   James Schlaffer



38-IMG_20210329_094017325
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



39-IMG_20210329_094251167
Date Taken: 3/29/2021
Taken By:   James Schlaffer



40-IMG_20210329_094546116
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



41-IMG_20210329_094837827
Date Taken: 3/29/2021
Taken By:  James Schlaffer



42-IMG_20210329_094847819
Date Taken: 3/29/2021
Taken By:  James Schlaffer

**Photo Sheet**

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



43-IMG_20210329_094909808
Date Taken: 3/29/2021
Taken By:  James Schlaffer



44-IMG_20210329_094917795
Date Taken: 3/29/2021
Taken By:  James Schlaffer

**Photo Sheet**

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



45-IMG_20210329_095030543
Date Taken: 3/29/2021
Taken By:  James Schlaffer



46-IMG_20210329_095033484
Date Taken: 3/29/2021
Taken By:  James Schlaffer

**Photo Sheet**

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



47-IMG_20210329_095039560
Date Taken: 3/29/2021
Taken By:  James Schlaffer



48-IMG_20210329_095044812
Date Taken: 3/29/2021
Taken By:  James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



**49-IMG_20210329_095051458**
Date Taken: 3/29/2021
Taken By: James Schlaffer



**51-IMG_20210329_095100896**
Date Taken: 3/29/2021
Taken By: James Schlaffer



**50-IMG_20210329_095058568**
Date Taken: 3/29/2021
Taken By: James Schlaffer



**52-IMG_20210329_095106180**
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



**53-IMG_20210329_095108616**
Date Taken: 3/29/2021
Taken By: James Schlaffer



**55-IMG_20210329_095117776**
Date Taken: 3/29/2021
Taken By: James Schlaffer



**54-IMG_20210329_095114896**
Date Taken: 3/29/2021
Taken By: James Schlaffer



**56-IMG_20210329_095129013**
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**57-IMG_20210329_095136337**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**58-IMG_20210329_095140211**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**59-IMG_20210329_095144584**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**60-IMG_20210329_095148158**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**61-IMG_20210329_095151298**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**62-IMG_20210329_095153930**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**63-IMG_20210329_095218313**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**64-IMG_20210329_095223554**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

--

### Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



65-IMG_20210329_095243972
Date Taken: 3/29/2021
Taken By:   James Schlaffer



66-IMG_20210329_095254469
Date Taken: 3/29/2021
Taken By:   James Schlaffer

### Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



67-IMG_20210329_095314822
Date Taken: 3/29/2021
Taken By:   James Schlaffer



68-IMG_20210329_095319853
Date Taken: 3/29/2021
Taken By:   James Schlaffer

--

### Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



69-IMG_20210329_095324970
Date Taken: 3/29/2021
Taken By:   James Schlaffer



70-IMG_20210329_095327810
Date Taken: 3/29/2021
Taken By:   James Schlaffer

--

### Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



71-IMG_20210329_095339801
Date Taken: 3/29/2021
Taken By:   James Schlaffer



72-IMG_20210329_095357571
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**73-IMG_20210329_095403410**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**74-IMG_20210329_095410093**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**75-IMG_20210329_095414704**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**76-IMG_20210329_095422385**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**77-IMG_20210329_095426921**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**78-IMG_20210329_095431838**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**79-IMG_20210329_095439328**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**80-IMG_20210329_095444914**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



81-IMG_20210329_095450551
Date Taken: 3/29/2021
Taken By:   James Schlaffer



82-IMG_20210329_095455154
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



83-IMG_20210329_095503618
Date Taken: 3/29/2021
Taken By:   James Schlaffer

84-IMG_20210329_095509412
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



85-IMG_20210329_095522004
Date Taken: 3/29/2021
Taken By:   James Schlaffer



86-IMG_20210329_095528873
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



87-IMG_20210329_095532954
Date Taken: 3/29/2021
Taken By:   James Schlaffer



88-IMG_20210329_095537760
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



89-IMG_20210329_095555543
Date Taken: 3/29/2021
Taken By:   James Schlaffer



90-IMG_20210329_095602479
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



91-IMG_20210329_095606937
Date Taken: 3/29/2021
Taken By:   James Schlaffer



92-IMG_20210329_095611271
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



93-IMG_20210329_095615468
Date Taken: 3/29/2021
Taken By:   James Schlaffer



94-IMG_20210329_095621265
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



95-IMG_20210329_095657630
Date Taken: 3/29/2021
Taken By:   James Schlaffer



96-IMG_20210329_095701648
Date Taken: 3/29/2021
Taken By:   James Schlaffer

# Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



97-IMG_20210329_095706746
Date Taken: 3/29/2021
Taken By:   James Schlaffer



98-IMG_20210329_095716200
Date Taken: 3/29/2021
Taken By:   James Schlaffer

# Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



99-IMG_20210329_095724698
Date Taken: 3/29/2021
Taken By:   James Schlaffer



100-IMG_20210329_095730475
Date Taken: 3/29/2021
Taken By:   James Schlaffer

# Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



101-IMG_20210329_095735660
Date Taken: 3/29/2021
Taken By:   James Schlaffer



102-IMG_20210329_095746467
Date Taken: 3/29/2021
Taken By:   James Schlaffer

# Photo Sheet

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



103-IMG_20210329_095751375
Date Taken: 3/29/2021
Taken By:   James Schlaffer



104-IMG_20210329_095755713
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**105-IMG_20210329_095801621**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**106-IMG_20210329_095805208**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**107-IMG_20210329_095814276**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**108-IMG_20210329_095822008**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**109-IMG_20210329_095826216**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**110-IMG_20210329_100152108**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**111-IMG_20210329_100156737**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**112-IMG_20210329_100211942**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



113-IMG_20210329_100218881
Date Taken: 3/29/2021
Taken By: James Schlaffer



114-IMG_20210329_100602897
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



115-IMG_20210329_100606271
Date Taken: 3/29/2021
Taken By: James Schlaffer



116-IMG_20210329_100611322
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



117-IMG_20210329_100619780
Date Taken: 3/29/2021
Taken By: James Schlaffer



118-IMG_20210329_101708400
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



119-IMG_20210329_101710774
Date Taken: 3/29/2021
Taken By: James Schlaffer



120-IMG_20210329_101713676
Date Taken: 3/29/2021
Taken By: James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**121-IMG_20210329_101717972**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**122-IMG_20210329_101851284**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**123-IMG_20210329_101855061**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**124-IMG_20210329_101857735**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**125-IMG_20210329_101901876**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**126-IMG_20210329_101905342**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**127-IMG_20210329_101908276**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**128-IMG_20210329_101920111**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



129-IMG_20210329_101931203
Date Taken: 3/29/2021
Taken By:   James Schlaffer



130-IMG_20210329_101933608
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



131-IMG_20210329_101940527
Date Taken: 3/29/2021
Taken By:   James Schlaffer



132-IMG_20210329_103912871
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



133-IMG_20210329_103917846
Date Taken: 3/29/2021
Taken By:   James Schlaffer



134-IMG_20210329_103922307
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



135-IMG_20210329_103924609
Date Taken: 3/29/2021
Taken By:   James Schlaffer



136-IMG_20210329_103929765
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



137-IMG_20210329_103933356
Date Taken: 3/29/2021
Taken By:   James Schlaffer



138-IMG_20210329_103945442
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



139-IMG_20210329_104032411
Date Taken: 3/29/2021
Taken By:   James Schlaffer



140-IMG_20210329_104038813
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



141-IMG_20210329_104041664
Date Taken: 3/29/2021
Taken By:   James Schlaffer



142-IMG_20210329_104139877
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



143-IMG_20210329_104142220
Date Taken: 3/29/2021
Taken By:   James Schlaffer



144-IMG_20210329_104147737
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



145-IMG_20210329_104150611
Date Taken: 3/29/2021
Taken By: James Schlaffer



146-IMG_20210329_104154896
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



147-IMG_20210329_104200869
Date Taken: 3/29/2021
Taken By: James Schlaffer



148-IMG_20210329_104203634
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



149-IMG_20210329_104207540
Date Taken: 3/29/2021
Taken By: James Schlaffer



150-IMG_20210329_104210756
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured: Harshad Shaw & Shree Ji Inc.
Claim #: CFY-4040
Policy #:



151-IMG_20210329_104215550
Date Taken: 3/29/2021
Taken By: James Schlaffer



152-IMG_20210329_104217747
Date Taken: 3/29/2021
Taken By: James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**153-IMG_20210329_104220214**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**154-IMG_20210329_104225296**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**155-IMG_20210329_104230283**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**156-IMG_20210329_104234132**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**157-IMG_20210329_104236505**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**158-IMG_20210329_104242248**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

**Photo Sheet**

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**159-IMG_20210329_104249867**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**160-IMG_20210329_104254799**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



161-IMG_20210329_104257710
Date Taken: 3/29/2021
Taken By:   James Schlaffer



162-IMG_20210329_104427080
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



163-IMG_20210329_104430129
Date Taken: 3/29/2021
Taken By:   James Schlaffer



164-IMG_20210329_104437286
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



165-IMG_20210329_104442408
Date Taken: 3/29/2021
Taken By:   James Schlaffer



166-IMG_20210329_104510307
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



167-IMG_20210329_104531657
Date Taken: 3/29/2021
Taken By:   James Schlaffer



168-IMG_20210329_104537820
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet



Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



169-IMG_20210329_104822633
Date Taken: 3/29/2021
Taken By:   James Schlaffer



170-IMG_20210329_104827666
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet



Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



171-IMG_20210329_104832966
Date Taken: 3/29/2021
Taken By:   James Schlaffer



172-IMG_20210329_104837272
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



173-IMG_20210329_104843246
Date Taken: 3/29/2021
Taken By:   James Schlaffer



174-IMG_20210329_104847201
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



175-IMG_20210329_104851668
Date Taken: 3/29/2021
Taken By:   James Schlaffer



176-IMG_20210329_104855671
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**177-IMG_20210329_104859668**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**178-IMG_20210329_104903535**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**179-IMG_20210329_105157701**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**180-IMG_20210329_105206830**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**181-IMG_20210329_105546977**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**182-IMG_20210329_105551502**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:   Harshad Shaw & Shree Ji Inc.
Claim #:   CFY-4040
Policy #:



**183-IMG_20210329_105558412**
Date Taken: 3/29/2021
Taken By:   James Schlaffer



**184-IMG_20210329_105604491**
Date Taken: 3/29/2021
Taken By:   James Schlaffer

## Photo Sheet

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



185-IMG_20210329_105618128
Date Taken: 3/29/2021
Taken By:  James Schlaffer



186-IMG_20210329_105826642
Date Taken: 3/29/2021
Taken By:  James Schlaffer

## Photo Sheet

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



187-IMG_20210329_105854203
Date Taken: 3/29/2021
Taken By:  James Schlaffer



188-IMG_20210329_110134790
Date Taken: 3/29/2021
Taken By:  James Schlaffer

## Photo Sheet

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



189-IMG_20210329_110142205
Date Taken: 3/29/2021
Taken By:  James Schlaffer



190-IMG_20210329_110151941
Date Taken: 3/29/2021
Taken By:  James Schlaffer

## Photo Sheet

Insured:  Harshad Shaw & Shree Ji Inc.
Claim #:  CFY-4040
Policy #:



191-IMG_20210329_112020906
Date Taken: 3/29/2021
Taken By:  James Schlaffer

# Exhibit J



# CONNECT
## PLUMBING & HVAC

License/Registration/Certificate    PLUMBING#36BIO1338000 HVAC#19HC00748100 HI#13VH11371200

415 Old Silverton Rd,
Brick, NJ, 08723
Office: (732) 610-6767
connectplumbingnj@gmail.com

Nick: (908) 910-2406
Mike: (732) 278-7589

To:
Shree Ji Inc.
30 Thames Avenue
Piscataway, NJ 08854

Job Site:
108 Watchung Avenue
Plainfield, NJ 07060

April 22, 2021

To whom it may concern,

Upon inspecting the existing HVAC system after the previous tenant moved out of the space, we concluded the HVAC units and ductwork need to be fully replaced because they are beyond repair and violate building code requirements.

- Upon trying to power-on the existing units, the HVAC system did not work thus leaving the space without any heat and air-conditioning.
- The system's wiring (Picture 1) is faulty and dangerous, and the piping (Picture 8) is dismantled and fixed with duct tape. This compromised the functionality of the condenser and compressor.
- There is irreparable damage to the ductwork (Picture 4, 5, 6, and 7).
- The thermostats are tampered with and do not work (Picture 9 and 10).

Given the current state of the HVAC system, as outlined above and in the pictures below, replacement is the only viable option.

Please see our quote for the removal, materials and labor to reinstall a new HVAC system that meets code requirements for the space. These technical and system specifications are provided by a licensed mechanical engineer and approved by the building department for the City of Plainfield, NJ.

Sincerely,

Nick Zukas

1 | P a g e

Picture 1:



Picture 2:



Picture 2:



Picture 3:



Picture 4:

Picture 5:

Picture 6:

Picture 7:



Picture 8:

Picture 9:

Picture 10:

